**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND ETHICS)
IN WASHINGTON,                          )
                                        )
    Plaintiff,                     )
                                        )   Case No. 1:07CV00963-RMU
    v.                             )
                                        )
UNITED STATES DEPARTMENT OF             )
EDUCATION,                              )
                                        )
    Defendant.                     )
_____)

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF
JURISDICTION**

**INTRODUCTION**

Plaintiff's Opposition to Defendant's Motion to Dismiss is more telling for what it does

not say than for what it says. The declaration submitted in support of that Opposition makes

clear that Plaintiff was never told that Department of Education employees use personal email

accounts to conduct official business. Instead, under penalty of perjury, the declarant admits that

he was only told that "people often use private email addresses." *See* Declaration of Daniel C.

Roth ("Roth Decl.") ¶ 10. As Defendant's motion explained, that statement was part of the

Department's explanation for why it could not process Plaintiff's Freedom of Information Act

request for communications between Department personnel and employees of educational

publishers. Specifically, because the latter might communicate from private email accounts, the

Department's search could not capture all such communications without the specific names of

those publishers' employees. Although it is clear from the record that the above-quoted

statement did not refer to Department employees – a fact confirmed by Plaintiff's subsequently

providing such names – Plaintiff has predicated this action on its obvious misinterpretation of that statement.  Even though at the pleadings stage this Court must accept as true the factual allegations in the Complaint – however erroneous – this Court cannot allow such an action to proceed where, as here, this Court's jurisdiction has been improperly invoked.  Since nothing in Plaintiff's Opposition dispels that conclusion, this action should be dismissed for lack of jurisdiction.

**ARGUMENT**

I.    **PLAINTIFF HAS NOT ESTABLISHED STANDING TO MAINTAIN THIS ACTION CHALLENGING THE DEPARTMENT'S PRACTICES UNDER THE FEDERAL RECORDS ACT.**

Although Plaintiff's Opposition correctly sets forth the requirements of Article III standing, Plaintiff erroneously contends that those requirements are satisfied here.  *See* Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") at 7 (noting that to invoke this Court's jurisdiction, Plaintiff must demonstrate an injury-in-fact that is traceable to the challenged conduct and likely to be redressed by the relief requested).  Specifically, Plaintiff urges this Court to find standing to bring this action under the *Federal Records Act* ("FRA") based on Plaintiff's failure to receive certain records it requested under the *Freedom of Information Act* ("FOIA").  *See* Pl. Opp. at 8 (alleging that "CREW was frustrated in achieving its mission when it sought and was denied the requested information").  While under *FOIA*, such a denial is sufficient to confer standing, that is no basis for finding standing here.  *See Sargeant v. Dixon*, 130 F.3d 1067, 1070 (D.C. Cir. 1997) ("anyone denied access to information under FOIA has standing to sue regardless of reason for wanting information" (citation omitted)).

### A.    Plaintiff's Alleged Injury Is Based Solely on Its Speculation that the Department Is Not Properly Maintaining Records Plaintiff Purports to Need.

In actions such as this one purporting to challenge an agency's compliance with the FRA, D.C. courts have regarded as "questionable" whether organizations such as Plaintiff "whose goals and purposes are alleged to require access to [government ] files and records . . . in order to enable them to disseminate information for organizational, educational, and political purposes"[1] have standing. *American Friends Serv. Comm. v. Webster*, 485 F. Supp. 222, 226 (D.D.C. 1980); *see also American Friends Serv. Comm. v. Webster*, 720 F.2d 29, 46 (D.C. Cir. 1983). The *American Friends* court, however, did not decide whether such organizations' claim that "if files [earmarked for destruction] are destroyed, they will be deprived of raw material for primary research in the areas of their activities" met "the requisite injury-in-fact standard" because other plaintiffs in the case "ha[d] adequately shown injury for standing purposes." *American Friends*, 485 F. Supp. at 227. But even if such a claim were sufficient, Plaintiff here clearly could not make that claim.

As Defendant's motion demonstrated, the Department has not begun to process Plaintiff's FOIA requests for communications between the Department and White House staff concerning the Reading First Program and communications between the Department and educational publishers. *See* Defendant's Motion to Dismiss for Lack of Jurisdiction ("Def. Mot.") at 11. Therefore, the Department has not determined what records are responsive to those requests, and accordingly Plaintiff can only speculate that records it needs are not being maintained in

---

[1]  Plaintiff selectively reads out of this description the words "organizational" and "educational" and notes only that, as a 501(c)(3) organization, it "does not engage in political activity." Pl. Opp. at 8 n.1.

accordance with the FRA.  Such speculation, however, is an insufficient basis for standing.  *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44 (1976) ("unadorned speculation will not suffice to invoke the federal judicial power").

Plaintiff's Opposition effectively skirts that aspect of Defendant's argument and instead complains that Defendant analogized Plaintiff to the wrong plaintiffs' category in *American Friends*.  *See* Pl. Opp. at 9.  According to Plaintiff, it is more "[l]ike the first group of plaintiffs" in *American Friends* because Plaintiff "has made FOIA requests in the past, has FOIA requests pending with Education, and intends to request documents in the future."  Pl. Opp. at 9.  That contention, however, selectively reads from that group's description in *American Friends*.  While noting that the group's members frequently used FOIA, the court described them as "individuals and organizations whose claimed need for FBI documents arises out of their professions as historians, journalists, teachers, film writers, or attorneys."  *American Friends*, 485 F. Supp. at 226.

Plaintiff, however, has not alleged that it is a professional organization of historians, journalists, teachers, film writers, or attorneys.  Instead, Plaintiff alleges that it is a "non-profit corporation . . . committed to protecting the right of citizens to be informed about the activities of government officials" that "[t]o advance its mission . . . uses government records made available to it under the Freedom of Information Act" (Compl. ¶ 4) – a description that clearly makes Plaintiff more like the *American Friends* plaintiffs whose claim of injury was "questionable."  *Compare id. with American Friends*, 485 F. Supp. at 226 (describing that group of plaintiffs as "organizations whose goals and purpose are alleged to require access to [government records] . . . to disseminate information for organizational, educational, and political purposes").  As already

discussed, Plaintiff cannot even make the injury claim of those plaintiffs. Accordingly, this action should be dismissed for lack of a cognizable injury.

**B.      Plaintiff Has Not Alleged an Injury that Is Traceable to the Non-Existent Policy Plaintiff Purports to Challenge.**

Even if Plaintiff's "inability to obtain information it seeks through its FOIA request" is a cognizable injury, (Pl. Opp. at 11), it clearly is not traceable to any alleged Department policy authorizing employees to conduct agency business over private email. Rather, as Defendant's motion demonstrated, Plaintiff has not received the communications sought in its March 28, 2007 FOIA request because Plaintiff has not sufficiently narrowed its request and the parties have an unresolved issue over fees. *See* Def. Mot. at 12-13; *see, e.g.,* Declaration of Angela Arrington ("Arrington Decl.")[2] Ex. B (Letter to Daniel Roth from Maria-Teresa Cueva, April 16, 2007) ("your request does not reasonably describe the records sought, and the Department is unable to process your request regarding items 1 through 3 without further clarification"); *id.* ("The Department has reviewed your [fee waiver] request and denies the request because it fails to provide sufficient information to justify the Department's grant of a fee waiver."). Indeed, Plaintiff itself attributes its claimed injury to Defendant's FOIA response and not to any supposed FRA-related policy:

> As the record makes clear, CREW attempted to narrow its FOIA request and properly appealed its fee waiver denial,[3] participated in a conference call it neither suggested nor directed, followed up after the conference call by telephone and email in a further attempt to narrow its FOIA request, and ultimately sent a narrowed FOIA request without any response by the defendant at all. Under these circumstances, plaintiff's injury is traceable

---

[2] The Arrington Declaration was attached as an exhibit to Defendant's motion.

[3] By letter dated September 6, 2007, the Department denied Plaintiff's appeal of the denial of its fee waiver request. *See* Supplemental Declaration of Angela Arrington ("Arrington Supp. Decl.") Ex. A, attached hereto.

exclusively to defendant's conduct.

Pl. Opp. at 12. Even if true, that alleged conduct clearly has nothing to do with Defendant's

compliance with the FRA – a disconnect that compels dismissal for lack of standing.[4] *See Valley*

*Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464,

472 (1982) (noting that "Art[icle] III requires the party who invokes the court's authority to show

. . . that [its] injury fairly can be traced to *the challenged action*" (citations omitted, emphasis

added)); *Allen v. Wright*, 468 U.S. 737, 759 (1984) (concluding that standing cannot be sustained

where "[t]he links of the chain of causation between *the challenged Government conduct* and the

asserted injury are far too weak for the chain as a whole" (emphasis added)); *Community for*

*Creative Non-Violence v. Pierce*, 814 F.2d 663, 668 (D.C. Cir. 1987) ("A party injured in fact

may nevertheless lack standing if *the challenged action* did not cause the injury." (emphasis

added)).

Plaintiff's Opposition misses the point because it never directly addresses that issue of

traceability, an essential element of standing. *See Valley Forge*, 454 U.S. at 472. Instead,

Plaintiff argues only that its alleged injury is not traceable to its own conduct. *See* Pl. Opp. at 11-

12 (contending that "CREW narrowed its original FOIA request while Education had already

begun processing its FOIA and is therefore not responsible for its injury"). Most of that

discussion disputes Defendant's claim regarding the status of Plaintiff's FOIA request. *See* Pl.

---

[4] By contrast, in *American Friends*, the plaintiffs claimed a need for documents that were earmarked for destruction pursuant to a "records destruction program" that the FBI claimed was "being carried out as a housekeeping measure, strictly in accordance with law, with a purpose to eliminate from storage obsolete documents and files." *American Friends*, 485 F. Supp. at 225. Thus, the connection between the plaintiffs' alleged injury and defendant's practices under the FRA was apparent.

Opp. at 11-12  (contending that Defendant's claim that "Plaintiff was advised *before this lawsuit was filed* that the Department would not begin processing its request" "is completely at odds with Education's release to CREW of 421 pages of responsive documents on April 16, 2007").  Here again, Plaintiff attempts to create an issue by taking a statement out of context.[5]

> Plaintiff's March 28, 2007 FOIA request sought four broad categories of records:
>
> (1) "All communications from any Department office . . . to, from, or referencing any member of the White House staff . . . that mention or relate to Reading First, 'Science Based Reading Research'/'SBRR,' DIBELS, or any other issue related to reading instruction or education";
>
> (2) "All Department contacts or communications . . . with educational publishers, their executives, employees, consultants, or contractors";
>
> (3) "All Department contacts or communications that mention or relate to contacts with educational publishers, their executives, or employees"; and
>
> (4) "[A]ll documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the *Title I Monitor*.

Arrington Decl. Ex. 1.  By letter dated April 16, 2007, the Department released to Plaintiff copies of materials previously disclosed to the *Title I Monitor* in response to Item 4 of Plaintiff's request but explained that the Department would not begin processing Items 1-3 until it received the requested clarification and the fee issue was resolved.  *See* Arrington Decl. Ex. B (Letter to

---

[5]  This entire lawsuit is predicated on Plaintiff's doing just that.  As mentioned earlier, Plaintiff has converted a statement about the public's use of private email accounts to communicate with the Department into the non-existent Department policy purportedly challenged here.  Moreover, Plaintiff incredibly faults the Department's FOIA office for not correcting earlier a misimpression that, at the time, Mr. Roth only articulated as "Additionally, Ms. Goodridge noted that email communications on personal email accounts would not be covered by such a search."  Arrington Decl. Ex. D (May 14, 2007 email from Dan Roth to ED FOIA Manager) ("memorializ[ing ] conversation about narrowing CREW's March 28, 2007 FOIA request").  Plaintiff now is certainly aware of Mr. Roth's mistake but nevertheless persists in this lawsuit.  *See* Def. Mot. at 1-2, 6; Arrington Decl. ¶ 9c.

Daniel Roth from Maria-Teresa Cueva, April 16, 2007) ("Once we receive your clarification and the issues regarding charges are resolved, we will begin processing your request."). All of the Department's subsequent communications with Plaintiff about its FOIA request concerned Items 1-3. *See* Arrington Decl. ¶ 9 (describing discussion of Items 1-3 in May 9, 2007 telephone conference with Daniel Roth): Arrington Decl. Ex. F (Letter to Daniel Roth from Maria-Teresa Cueva, June 8, 2007) ("The Department notes initially that, because you received information responsive to item number 4 of your March 28, 2007 request, your request for a fee waiver is deemed to concern only the items numbered 1, 2 and 3 of your March 28, [2]007 request.").

Defendant's motion accordingly represented that "The Department has not begun to process Plaintiff's requests for communications between the Department and White House staff concerning the Reading First Program or for communications between the Department and educational publishers. *See* Arrington Decl. ¶ 16." Def. Mot. at 11; *see also* Def. Mot. at 12 (explaining that "Plaintiff was advised *before this lawsuit was filed* that the Department would not begin processing its request until Plaintiff clarified the records sought and resolved the issue of fees"). Thus, Plaintiff simply ignores the facts in expressing disbelief that its FOIA request is not being processed. *See* Pl. Opp. at 11 (alleging that it is "[i]nexplicable" that the Department released "421 pages of documents responsive to item 4" and "also contends that the Department has not begun to process Plaintiff's requests for communications between the Department and educational publishers").

## II.    PLAINTIFF'S CLAIM ALTERNATIVELY IS UNRIPE BECAUSE IT IS PREDICATED ON CONTINGENT FACTS.

Plaintiff's Opposition gives short shrift to the ripeness argument in Defendant's motion which is an alternative ground for dismissal of this action. *See* Pl. Opp. at 12 (dispensing with argument with conclusory assertion that "CREW has alleged sufficient facts within its Complaint for the Court to make an informed decision about Education's violation of the FRA"). Although Defendant identified specific allegations that demonstrate that Plaintiff's FRA claim is based on contingent future events, Plaintiff's Opposition addresses none of those allegations. *See* Def. Mot. at 14 (noting the conditional language of Plaintiff's allegations concerning whether "the Department is properly retaining and disposing of emails from personal accounts"); *e.g.,* Compl. Ex. B ("*If* [] employees are regularly using private email accounts to send official email and the Department neither tracks nor stores such email . . . the Department of Education *is likely* operating in violation of the Federal Records Act" (emphasis added)); Def. Mot. at 14 (noting the absence of allegations that the Department has destroyed records in violation of the FRA); *e.g.,* Compl. ¶ 17 (alleging that Plaintiff was advised only that "[communications from private email addresses] would not be included in the agency's response to [Plaintiff's] FOIA request"). As a result, the ripeness arguments in Defendant's motion are essentially unanswered and therefore should be deemed conceded.[6] *See, e.g., Chang v. United States*, __ F. Supp. 2d. __, 2007 WL 2007335, at *5 n.4 (D.D.C., July 10, 2007) ("treat[ing] plaintiffs' silence as a concession"); *Qutb v. Ramsey*, 285 F. Supp. 2d 33, 37 n.3 (D.D.C. 2003) (concluding that plaintiff conceded

---

[6]    As further evidence that Plaintiff's FRA claim is not ripe, Plaintiff submitted another FOIA request to the Department *the same day this lawsuit was filed* seeking "any and all record-keeping guidance and policies dating from January 1, 2001, to the present, for federal records of the Department." *See* Arrington Supp. Decl. Ex. B.

argument to which it failed to respond).

## CONCLUSION

For the foregoing reasons and those explained in Defendant's Motion to Dismiss for

Lack of Jurisdiction, the Department of Education respectfully requests that the Court grant this

motion and dismiss this action.

Dated: September 10, 2007                          Respectfully submitted,

OF COUNSEL:                                       PETER D. KEISLER
JENNIFER A. GOODMAN                                Assistant Attorney General,
Attorney                                          Civil Division
U.S. Department of Education
                                                  JEFFREY A. TAYLOR
                                                  United States Attorney

                                                  ARTHUR R. GOLDBERG
                                                  Assistant Branch Director,
                                                  Federal Programs Branch

                                                    s/ Jacqueline Coleman Snead
                                                  JACQUELINE COLEMAN SNEAD
                                                  (D.C. Bar No. 459548)
                                                  Trial Attorney
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  20 Massachusetts Avenue, N.W., Rm 7214
                                                  Washington, DC 20530
                                                  Tel: (202) 514-3418
                                                  Fax: (202) 616-8470
                                                  jacqueline.snead@usdoj.gov

                                                  **Counsel for United States Department of
                                                  Education**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2007, a true and correct copy of the foregoing

Reply in Support of Defendant's Motion to Dismiss was electronically filed through the U.S.

District Court for the District of Columbia Electronic Document Filing System (ECF) and that

the document is available for viewing on that system.


_____s/ Jacqueline Coleman Snead_____
JACQUELINE COLEMAN SNEAD

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Citizens for Responsibility and Ethics in Washington | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 07-cv-963 RMU |
| v. | ) ) ) | |
| United States Department of Education | ) ) ) | |
| Defendant. | ) ) ) | |

## SUPPLEMENTAL DECLARATION OF ANGELA ARRINGTON

I, Angela Arrington, declare and state as follows:

1. This supplemental declaration is submitted in support of the  Rely in support of Defendant's Motion to Dismiss for lack of jurisdiction under FRCP Rule 12(b)(1).  The purpose of this supplemental declaration is to update the court on the current status of Plaintiff's March 28, 2007 FOIA request.

2. By letter dated September 6, 2007, the Department responded to Plaintiff's appeal of the Department's fee waiver denial, dated June 21, 2007, for FOIA Request No. 07-00517-F.  [attached as Exhibit A].  In the letter, Mr. Michell Clark, Assistant Secretary for Management, upheld the Department's June 8, 2007 denial of CREW's fee waiver request.

3. The Department analyzed the arguments in Plaintiff's appeal in light of Plaintiff's May 21, 2007 modification to its initial March 28, 2007 request, and determined that the Plaintiff failed to demonstrate how disclosure of the requested

records would significantly contribute to the public understanding of the Department's operations or activities, and consequently did not meet its burden to justify the Department's grant of a reduction or waiver of fees to process the request.

4. By letter dated May 22, 2007, Plaintiff submitted a FOIA request (case number 07-00683-F) to the Department seeking access to "any and all record-keeping guidance and policies dating from January 1, 2001, to the present, for federal records of the Department." [attached at Exhibit B].

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 7th day of September 2007 in Washington, D.C.

Angela Arrington
Supervisory IT Specialist
Office of Management
U.S. Department of Education

2

# Exhibit A



# UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

ASSISTANT SECRETARY

**SEP 06 2007**

Daniel C. Roth, Esq.
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, DC 20005
(and via e-mail to: droth@citizensforethics.org )

<u>Re: FOIA Appeal—Request No. 07-00517-F (Fee Waiver)</u>

Dear Mr. Roth:

I am writing in response to your June 21, 2007 letter appealing the Department's June 8, 2007 denial of CREW's request for a waiver of fees in connection with its March 28, 2007 request for Department records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, administratively denominated Request No. 07-00517-F. I regret the delay in responding to your appeal.

<u>Background</u>

Your Request No. 07-00517-F, as modified by e-mail communication dated May 21, 2007, sought access to "any and all documents and records from January 20, 2001 to the present, in the offices of: 1) The Secretary; 2) Senior Counselor; 3) Chief of Staff; 4) Deputy Secretary; 5) Management Improvement Team; 6) Elementary and Secondary Education; 7) Institute of Education Sciences; 8) Planning Evaluation and Policy Development; 9) Civil Rights; 10) Innovation and Improvement; 11) Special Education and Rehabilitative Services; 12) Management; 13) Chief Financial Officer; and 14) Communications and Outreach, in the following categories:[1]

1. All communications . . . to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings or Margaret LaMontagne, that mention or relate to Reading First, Early Reading First, "Scientifically Based Reading Research"/"Science Based Reading Research"/"SBRR," or DIBELS.

---

[1]  Your request also sought access to a fourth category of documents: "To the extent not included in the above request, . . . all documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks, and/or the <u>Title I Monitor</u>. Your fee waiver appeal does not concern this aspect of your request because the Department has already responded to it in full. Appeal, p. 2.

*Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.*

2.  All communications . . . , including calendar references and meeting notes, with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and IntelliTools.

3.  All communications . . . , including calendar references and meeting notes, that mention or relate to contacts with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and IntelliTools.

Your request also asked for a waiver of associated processing fees. Your fee waiver request and a clarifying e-mail communication dated May 11, 2007[2] asserted: (1) that the records sought concern the operations of the federal government; (2) that their disclosure to CREW would likely contribute significantly to the public's understanding of the extent of White House involvement in the administration of the Department's Reading First program (which enhancement CREW would accomplish by analyzing the responsive records and sharing such analysis with the public via memoranda, reports, or press releases, and/or by disseminating the responsive records on an interactive website for public analysis and comment); and (3) that the request was made primarily for non-commercial purposes.

The Department denied your fee waiver request by letter dated June 8, 2007,[3] on the ground that you had not met your burden to demonstrate that disclosure of the records responsive to your request would contribute significantly to public understanding of government operations or activities. Specifically, the Department's fee waiver denial letter stated, in pertinent part:

The Department's April 16, 2007 letter to you outlined in detail the legal standard for analyzing fee waiver requests and assessing whether a waiver or reduction of fees is appropriate; that standard is referred to and incorporated by reference herein.

. . . [T]he Department assumes, for the sake of argument, that the documents responsive to items 1 through 3 of your FOIA request meet the first two elements of the public interest prong of the fee waiver analysis because they are presumed to relate to the Department's administration of the Reading First program. The Department has also concluded that, based upon the information contained in your May 11, 2007 e-mail, items 1 through 3 of your request meet the third element of the public interest prong of the fee waiver analysis. Nevertheless, the Department finds that you have not met your burden

---

[2]  Your May 11, 2007 e-mail communication was characterized by you as "an informal appeal" of the Department's April 16, 2007 letter initially denying your fee waiver request.

[3]  The June 8, 2007 denial of your fee waiver request followed up on the following additional communications between the parties: (1) the Department's April 16, 2007 letter initially denying your fee waiver request; (2) a conference call in which the parties discussed CREW's possible narrowing of the scope of its FOIA request; (3) your May 11, 2007 e-mail communication, informally appealing the Department's April 16, 2007 fee waiver denial; and (4) your two e-mail communications dated May 14 and May 21, 2007, concerning modifications to CREW's FOIA request.

with regard to the fourth element of the public interest prong of the fee waiver analysis, i.e., the requirement that disclosure of the records in question "contribute significantly" to public understanding of government operations or activities.

The Department found it unlikely that the public's understanding of the subject of the request – the Department's administration of the Reading First program – would be significantly enhanced, vis-à-vis its level of understanding prior to disclosure, because: (1) many of the voluminous documents at issue in your fee waiver request could not in any way enhance the public's understanding of the Reading First program, much less do so significantly, inasmuch as they concern other program matters; (2) your fee waiver request argued that disclosure of the documents at issue would clarify the public record with respect to alleged "significant inconsistencies . . . as to the involvement of Secretary Spellings in the administration of Reading First prior to her becoming Secretary of Education," but failed to demonstrate a nexus between such alleged but unspecified "inconsistencies" and the contents of the documents at issue; and (3) that several sources of information on the Department's contacts with educational publishers already exist in the public domain, notwithstanding your argument to the contrary. Your appeal ensued.

## Decision on Appeal

Based upon a careful review of the correspondence between the parties, the nature of your request and the information it sought, the arguments asserted in your appeal, and applicable legal precedent, I find that the Department properly denied your request for a fee waiver. The reasons for my decision are set forth below.

## Legal Standard for Fee Waivers Under FOIA

The FOIA authorizes agencies to recover from requesters certain costs associated with processing requests for access to government records. 5 U.S.C. § 552(a)(4)(A)(i) and (ii) (2000). The statute further provides for the waiver of such fees in whole or in part where disclosure of the information [requested] is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii) (2000); see also 34 C.F.R. § 5.64(a). The requester bears the burden of justifying entitlement to a fee waiver. See Casad v. Department of Health and Human Services, 2003 U.S. Dist. LEXIS 13007 (D.D.C. June 20, 2003). As stated in the Department's April 16, 2007 letter, and discussed below, fee waiver determinations turn on the consideration of six factors. To demonstrate entitlement to a waiver of fees, a requester must not only request a waiver, but also address these factors in sufficient detail to enable an agency to determine whether it can reduce or waive the fees. See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003). The Department may not waive or reduce fees unless it makes the requisite findings regarding both the public interest and primary interest. 34 C.F.R § 5.64(a).

Page 4—Mr. Roth

### Public Interest Prong

Once a requester has asserted a right to a waiver of fees, he or she must meet the first prong of the statutory test by supporting the request with evidence that establishes that disclosure of the information sought is in the public interest. 5 U.S.C. § 552(a)(4)(A)(ii) (2000). In order to determine whether the disclosure of the information responsive to a request furthers the narrow public interest cognizable under FOIA – i.e., significant contribution to increased public understanding of the operations of the government – the Department must consider the following four factors in sequence:

1. The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government" (in some instances, certain documents contained in records responsive to a request will meet this requirement while others will not);
2. In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the requested records must be meaningfully informative in relation to the subject matter of the request;
3. The disclosure must contribute to the "understanding of the public at large" as opposed to that of the individual requester or a narrow segment of interested persons; and
4. The disclosure must "contribute significantly" to public understanding of government operations or activities.

See Judicial Watch, Inc. v. Department of Justice, No. 03-5093, 2004 WL 980826 (D.C. Cir. May 7, 2004); see also 34 C.F.R § 5.64(b)(1) and (2). Only if a requester establishes all four elements of the public interest test outlined above, will the Department find that the first prong of the statutory requirement for a fee waiver has been satisfied.

### Primary Interest Prong

Where an agency determines that the public interest requirement for a fee waiver has been met, it may waive or reduce applicable fees only where it also finds that "disclosure of the information is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii) (2000). In order to determine whether this second requirement has been satisfied, the Department must consider the following two factors in sequence:

1. Does the request involve any "commercial interest of the requester" (if not, the requester satisfies the second prong of the statutory fee waiver test); and
2. If so, the agency must balance the requester's commercial interest against the identified public interest in disclosure for the purpose of ascertaining which is the "primary interest"; a fee wavier or reduction may be granted only where the public interest in disclosure is greater in magnitude than the requester's commercial interest.

See also 34 C.F.R Section 5.64(b)(3).

Discussion

The Department concluded, for the purposes of its initial determination on your fee waiver request – and I do so here – that you had met your burdens as to Factors 1, 2, and 3 of the public interest prong of the two-part test outlined above. Nevertheless, the Department denied your fee waiver request based on a determination that you had failed to meet your burden, under Factor 4 of the public interest prong, to show how disclosure of the requested records will contribute "significantly" to the public's understanding of government operations and activities; in this regard, the initial decision noted that significance is measured by a likely enhancement of the public's understanding of the subject at issue as a result of the disclosure, compared to the public's level of understanding of that same issue prior to disclosure. D.C. Technical Assistance Org. v. Dep't of Housing and Urban Development, 85 F. Supp. 2d 46, 49 (D.D.C. 2000); see also Judicial Watch, Inc. v. U.S. Department of Justice, supra, 185 F. Supp. 2d at 62.[4]

Your appeal argues: (1) that the Department's denial was based in error on CREW's original March 28, 2007 request rather than on the "narrowed" request elucidated in your May 21, 2007 e-mail submission; (2) that the documents responsive to your request would significantly enhance public understanding relative to "serious inconsistencies" in the public record with respect to Secretary Spellings' involvement in Reading First prior to her tenure as Secretary; (3) that the information sought in Items 2 and 3 of the request "will likely contribute significantly to the public's understanding of the extent to which publishers were in contact with the Department and [A]dministration personnel during the Reading First development and grant process"; and (4) to the extent [the records sought] go beyond Reading First, they will shed light on the operations of the federal government, and therefore meet the public interest requirement for a fee waiver. For the following reasons, I do not find that any of these arguments states a basis for granting your appeal.

With respect to your first argument, it does appear that the Department's denial analyzed your fee waiver request in the context of your original March 28, 2007 request rather than the modified request submitted on May 21, 2007. However, your appeal mischaracterizes the modified request as, simply, "narrowed" in scope. Rather, while the modified request is narrower than the original in some respects (e.g., narrowed scope from Department-wide to 14 offices representing approximately one half of the Department's components; elimination of "any other issue related to reading instruction or education" from Item 1; elimination of catchall "including but not limited to" language in Items 2 and 3), it is significantly broader in other respects (e.g., the addition of new name search terms in all three items; the addition of a new program – Early Reading First – in Item 1; the addition of "calendar references and meeting notes" to Item 3). In any event, your argument fails even to address, much less effectively to challenge, the Department's finding that your request is overbroad to qualify for a fee waiver because many of the responsive documents are unrelated to the subject of your request – the Department's administration of the Reading First program. For example, the responsive time frame for all items of the request, commencing January 20, 2001, antedates by a year the creation of the Reading First program; and all items of the request seek access to communications

---

[4] As CREW failed to meet its burden with respect to the public interest prong of the fee waiver test, it is unnecessary to analyze whether it has satisfied the requirements of the primary interest prong.

concerning matters other than Reading First. That is true for CREW's March 28, 2007 request and remains so for the May 21, 2007 modification.

Your first argument concludes:

> The Department cannot and does not argue that the records sought will not enhance the public's understanding of the operations of the federal government. This is all that the fee waiver provision of the FOIA requires of a requester that [sic] has shown that the information sought is not primarily in its commercial interest. See 5 U.S.C. § 552(a)(4(A)(3).

June 21, 2007 Appeal, p. 4. The quoted passage both misstates the law (omitting the word "significantly" from the cited statutory provision) and speaks to an element of the fee waiver test not at issue (i.e., Factor 3 of the public interest prong, as to which the Department found CREW had met its burden).

I also find your second argument -- that the documents responsive to your request would significantly enhance public understanding relative to "serious inconsistencies" in the public record with respect to Secretary Spellings' involvement in Reading First prior to her tenure as Secretary -- unpersuasive. Initially, I note, notwithstanding the references in your submissions to "serious inconsistencies" in the plural, the examples cited in fact represent statements regarding a single inconsistency attributed to a number of different sources. In any event, this inconsistency has been widely reported, as evidenced by the examples you have provided. However, none of your submissions demonstrates how the documents responsive to your request – other than Item 1 documents that specifically reflect Ms. Spellings' involvement or lack of involvement with Reading First before coming to the Department, if such documents exist -- would enlighten the public as to either the alleged inconsistency or the broader subject of the Department's administration of the Reading First program.

Your third argument – that the information sought in Items 2 and 3 of the request "will likely contribute significantly to the public's understanding of the extent to which publishers were in contact with the Department and [A]dministration personnel during the Reading First development and grant process" – is made for the first time on appeal. In any case, I find this argument unpersuasive because it makes no connection between Department contacts with educational publishers while Reading First was being developed and the Department's later administration of the program. I note as well that this argument does not even suggest a connection between documents responsive to Items 2 and 3 that are unrelated to Reading First and the Department's administration of that program, much less show how the disclosure of such documents would inform the public in a significant way about Reading First.

And finally, I find your argument that, to the extent the records sought go beyond Reading First, they will shed light on the operations of the federal government, and therefore meet the public interest requirement for a fee waiver, similarly without merit. Your argument is conclusory and utterly lacking in specificity sufficient to meet the requester's burden: in essence, you state that unidentified records will shed light on unspecified activities not of this Department but, rather, of the "federal government." It follows, logically, that you fail to show how disclosure of such

Page 7—Mr. Roth

materials will increase public understanding of the Department's operations or activities in a significant way.

For all of these reasons, I must deny your appeal.

Right to Judicial Review

This letter constitutes exhaustion of the administrative remedies available to you under FOIA. You have the right to judicial review of this decision, pursuant to 5 U.S.C. § 552(a)(4), in the United States District Court for the district in which you reside, in which you have your principal place of business, in which the records are maintained, or for the District of Columbia.

Sincerely,

Michell Clark

# Exhibit
# B

*Rims*

# CREW | citizens for responsibility and ethics in washington

07-00683-C

May 22, 2007

**By fax (202-245-6623) and first-class mail**

U.S. Department of Education
Office of Management
Regulatory Information Management Services
400 Maryland Avenue, S.W., PCP 9143
Washington, D.C.  20202-4700
Attn:  FOIA Public Liaison

Re: Freedom of Information Act Request

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq.

Specifically, CREW seeks from the U.S. Department of Education ("the Department") any and all record-keeping guidance and policies dating from January 1, 2001, to the present, for federal records of the Department.  Record-keeping guidance and policies include, but are not limited to, guidance and policies on the creation, maintenance and disposition of federal records, including guidance and policies concerning the Federal Records Act, 44 U.S.C. §§ 3101-07, 3301-14.

Please search for responsive records regardless of format, medium, or physical characteristics.  Where possible, please produce records electronically, in PDF or TIF format on a CD-ROM.  We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs.  Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972).  As you are aware, a

Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the extent to which the Department of Education has adopted effective and appropriate record-keeping guidance and policies for records created by any component or individual of the Department and federal entities that serve the Department.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases. In addition, CREW will disseminate any documents it acquires from this request to the

2

public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See http://foia.citizensforethics.org/home. Currently, CREW's website contains links to thousands of pages of documents CREW acquired from multiple FOIA requests. CREW's website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints. As CREW's website demonstrates, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

## Conclusion

If you have any questions about this request or foresee any problems in releasing fully the requested records, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

3