**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS)<br>IN WASHINGTON, )<br>     )<br>     Plaintiff, )<br>     )<br>     v. )<br>     )<br>UNITED STATES DEPARTMENT OF )<br>EDUCATION, MARGARET SPELLINGS, in her )<br>official capacity as the Secretary of Education, )<br>NATIONAL ARCHIVES AND RECORDS )<br>ADMINISTRATION, DR. ALLEN WEINSTEIN, )<br>in his official capacity as the Archivist of the )<br>United States, )<br>     )<br>     Defendants. )<br>_____) | Case No. 1:07CV00963-RMU |

**DEFENDANTS' MOTION TO DISMISS CLAIMS ONE THROUGH FOUR OF THE
AMENDED COMPLAINT**

**INTRODUCTION**

The Department of Education ("the Department") has maintained throughout this

litigation that Plaintiff, Citizens for Responsibility and Ethics in Washington's ("Plaintiff"), real

complaint and only alleged injury arise from the Department's response to Plaintiff's March 28,

2007 Freedom of Information Act ("FOIA") request.  The Department denied Plaintiff's request

for a fee waiver and therefore, by regulation, suspended processing that request.  Plaintiff,

however, filed this action under the Federal Records Act ("FRA"), alleging that Plaintiff failed to

receive emails responsive to its request because the Department has not properly maintained

emails created pursuant to an alleged policy authorizing employees to conduct official business

by private email accounts.  No such policy exists.  But even if it did, none of Plaintiff's factual

allegations substantiate the alleged FRA violation. That alleged violation like the policy purportedly challenged here is a product of Plaintiff's imagination.

Now that the Department's original motion to dismiss is fully briefed and pending before this Court, Plaintiff has conceded that its allegations give rise to a FOIA claim based on the Department's fee waiver denial and has amended the Complaint to include that claim. However, rather than voluntarily dismiss the improperly brought FRA claim, Plaintiff merely bootstraps its FOIA claim here. The Amended Complaint cures none of the deficiencies with Plaintiff's FRA claim and incredibly adds two new Defendants to that claim. Thus, all of the arguments in the Department's previous filings apply with equal force here. *See* Defendant's Motion to Dismiss for Lack of Jurisdiction (filed July 23, 2007); Reply in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction (filed Sept. 10, 2007); Defendant's Opposition to Plaintiff's Motion for Leave to File Surreply (filed Sept. 11, 2007). Plaintiff's FRA claim, even as amended, still should be dismissed for lack of jurisdiction as to all Defendants.

Dismissal on that basis is also warranted for Plaintiff's newly alleged claim challenging the Department's failure to produce records under FOIA. That claim is premature at best or alternatively fails to state a claim given the suspended status of Plaintiff's FOIA request. By regulation, the Department cannot process that request until the issue over fees is resolved and therefore, at least until then, has no obligation to produce records. Thus, the only claim properly before this Court is Plaintiff's challenge to the denial of its request for a fee waiver.[1] All other claims in this action should dismissed.

---

[1] While Defendants do not dispute that this Court has jurisdiction over Plaintiff's challenge to the fee waiver denial, they do dispute that that claim has any merit.

## STATUTORY BACKGROUND

**Federal Records Act**

The Federal Records Act sets forth agency requirements for records creation, management, and disposal.  *See* 44 U.S.C. §§ 2101, *et seq.*, 2901, *et seq.*, 3101, *et seq.*, 3301, *et seq.*  Specifically, the Act requires agencies to establish standards and procedures intended to promote "[a]ccurate and complete documentation of the policies and transactions of the Federal Government," "[c]ontrol of the quantity and quality of records produced by the Federal Government," "[s]implification of the activities, systems, and processes of records creation and of records maintenance and use," and "[j]udicious preservation and disposal of records."  44 U.S.C. § 2902(1), (2), (4), (5).  The Archivist "shall provide guidance and assistance to Federal agencies . . . to ensur[e] adequate and proper documentation of the policies and transactions of the Federal Government and ensur[e] proper records disposition."  44 U.S.C. § 2904.

Towards those ends, agencies are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency."  44 U.S.C. § 3101.  Each agency must establish "controls over the creation and . . . maintenance and use" of such records and establish safeguards against their unauthorized removal or loss.  44 U.S.C. §§ 3102, 3105.  Every agency head must submit to the Archivist a list of records in the agency's custody and proposed schedules for their disposal after specified lapses of time.  *See* 44 U.S.C. § 3303.  The disposal schedules are published for notice and comment and thereafter must be approved by the Archivist before records may be disposed pursuant to them.  *See* 44 U.S.C. §§ 3303, 3303a.  Federal records may only be destroyed pursuant to disposition schedules approved by the Archivist.  *See*

44 U.S.C. §§ 3303, 3303a.

If an agency head becomes aware of "any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of [agency] records," the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of the records he knows or has reason to believe have been unlawfully removed from his agency." 44 U.S.C. § 3106. If the Archivist learns of such actual or threatened unlawful activity, he must notify the agency head and, if the agency head fails to take action to recover the records or seek other redress within a reasonable time, the Archivist shall request that the Attorney General initiate such an action. *See* 44 U.S.C. § 2905.

**Freedom of Information Act**

The Freedom of Information Act ("FOIA") generally requires each agency to "make available to the public" agency records and other information unless exempted by the Act. *See* 5 U.S.C. § 552. Specifically, the Act provides that "each agency, upon any request for [such] records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

Each Agency is required to promulgate regulations "specifying the schedule of fees applicable to the processing of requests under th[at] section and establishing procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(i). Such regulations must provide that:

> (1) fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;

4

(2)  fees shall be limited to reasonable standard charges for document duplication
when records are not sought for commercial use and the request is made by an
educational or noncommercial scientific institution, whose purpose is scholarly or
scientific research; or a representative of the news media; and

(3)  for any request not described in (1) or (2), fees shall be limited to reasonable
standard charges for document search and duplication.

5 U.S.C. § 552(a)(4)(A)(ii).  "No agency may require advance payment of any fees unless the

requester has previously failed to pay fees in a timely fashion, or the agency has determined that

the fees will exceed $250."  5 U.S.C. § 552(a)(4)(A)(v).

The Department of Education's regulations pursuant to these provisions are set forth in

34 C.F.R. Subtitle A, Part 5.

## STATEMENT OF FACTS[2]

On March 28, 2007, Plaintiff submitted a FOIA request to the Department of Education

seeking four broad categories of documents:

(1)  "All communications from any Department office . . . to, from, or referencing
any member of the White House staff . . . that mention or relate to Reading First,
'Science Based Reading Research'/'SBRR,' DIBELS, or any other issue related to
reading instruction or education";

(2) "All Department contacts or communications . . . with education publishers,
their executives, employees, consultants, or contractors";

(3) "All Department contacts or communications that mention or relate to contacts
with educational publishers, their executives, or employees"; and

---

[2]  The Statement of Facts is based on the allegations in the Amended Complaint
("Amend. Compl."), the admissions of Plaintiff, and the attached Declaration of Angela
Arrington ("Arrington Decl."), all of which this Court properly may consider in ruling on a
motion to dismiss for lack of jurisdiction.  *See National Community Reinvestment Coalition v.
National Credit Union Admin.*, 290 F. Supp. 2d 124, 131 (D.D.C. 2003) ("In resolving a Rule
12(b)(1) motion for lack of jurisdiction . . . courts are generally free to consider relevant
materials outside the pleadings.").

(4) "[A]ll documents previously disclosed under FOIA to Andrew Brownstein,
Travis Hicks and/or the *Title I Monitor*."

Amended Complaint ("Amend. Compl.") Ex. A (emphasis omitted).  Plaintiff requested that the

fees associated with processing its request be waived.  *See* Amend. Compl. Ex. A.

Department personnel, upon receiving Plaintiff's request, reviewed it and determined that

it did "not reasonably describe the records sought" and therefore could not be processed as

written.  *See* Arrington Decl. ¶ 7.  Plaintiff's request, for example, did not specify the names of

Department or White House personnel or publishing company employees whose communications

were sought.  *See* Arrington Decl. ¶ 7.  A search for records with "White House" or a publisher's

name would be unduly burdensome and overly broad.  *See* Arrington Decl. ¶ 7.

By letter dated April 16, 2007, the Department acknowledged receipt of Plaintiff's FOIA

request and enclosed a CD responsive to item (4) of Plaintiff's request containing documents

"previously disclosed under FOIA to the Title I Monitor."  *See* Amend. Compl. Ex. B.  The letter

went on to explain that the Department needed "clarification for items 1 through 3 of [Plaintiff's]

request" which "encompass a large volume of information on broad topics related to individuals

in the Department and 'White House staff,' without identifying specific individuals, offices, or

subjects."  Arrington Decl. ¶ 8 & Amend. Compl. Ex. B.  Plaintiff was advised that "the

Department is unable to process your request regarding items 1 through 3 without further

clarification."  Arrington Decl. ¶ 8 & Amend. Compl. Ex. B.  The letter also informed Plaintiff

that its fee waiver request had been denied because Plaintiff had not demonstrated entitlement to

a waiver under FOIA.  *See* Arrington Decl. ¶ 8.  The Department therefore advised Plaintiff that

until these issues were resolved, the Department could not process Plaintiff's request.  *See*

Arrington Decl. ¶¶ 5c & 8.

At Plaintiff's request, agency personnel participated in a teleconference with Plaintiff to discuss its FOIA request. *See* Arrington Decl. ¶ 9. Plaintiff did not understand why the Department could not process its request as written and apparently was under the misimpression that the Department had centralized electronic search capabilities. *See* Arrington Decl. ¶ 9a. In an effort to correct that misimpression, the teleconference participants explained that to fulfill Plaintiff's request for "[a]ll Department . . . communications . . . with educational publishers, their executives, employees, consultants, or contractors," every Department employee's email account would have to be searched "one at a time." *See* Arrington Decl. ¶¶ 6 & 9a. Plaintiff was further advised that, even assuming the Department had the resources to conduct such a broad search, the agency could not capture all such communications because without individual names, the Department could not identify publishers' "executives, employees, consultants, or contractors . . . [that] chose to contact Department employees using private e-mail accounts." *See* Arrington Decl. ¶ 9c. Plaintiff inquired what it needed to do to sufficiently narrow its request and was advised to review the request again in light of the discussion. *See* Arrington Decl. ¶ 9. The Department also agreed to allow Plaintiff to submit additional information in support of its request for a fee waiver, which Plaintiff did by email dated May 11, 2007. *See* Arrington Decl. ¶¶ 9-10.

In a subsequent telephone conversation on May 14, 2007, the Department confirmed that if Plaintiff wanted the Department to include private emails in its search that Plaintiff would have to supply those email addresses. *See* Arrington Decl. ¶ 11. By email dated May 14, 2007, Plaintiff memorialized its understanding of the conversations with the Department on narrowing

its FOIA request as follows:

> the Department's FOIA technology does not allow for subject matter or keyword searches throughout the email system, so a search undertaken pursuant to the original terms of our request would require individual searches of each of the Department's approximately 4,500 employee email accounts. Additionally, . . . email communications on personal email accounts would not be covered by such a search[3] . . . .

*See* Amend. Compl. Ex. G at p. 71. Plaintiff also renewed its request for a copy of the FOIA request submitted by Title I Monitor. *See* Amend. Compl. Ex. G at p. 71. Plaintiff indicated that it would "formalize any narrowing language in a letter to the Department." *See* Amend. Compl. Ex. G at p. 71. Plaintiff's purportedly narrowed FOIA request sought from fourteen identified Department offices, "[a]ll communications . . . [with] White House staff . . . that mention or relate to Reading First, Early Reading First, 'Scientifically Based Reading Research'/'Science Based Reading Research'/'SBRR' or DIBELS" and "all communications" with employees of Houghton Mifflin, SRA/McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and Intellitools. *See* Amend. Compl. Ex. E. However, Plaintiff provided only two publishing company employees by name. *See* Amend. Compl. Ex. E. Plaintiff also added a request for all communications that mention or relate to an additional program, Early Reading First. *See* Amend. Compl. Ex. E. Otherwise, "all other language in [Plaintiff's] original request [] remain[ed] unchanged." *See* Amend. Compl. Ex. E.

---

[3] This statement evidently is the source of Plaintiff's confusion. Plaintiff was actually told that "it is not unheard of for members of the public to contact Department employees using private e-mail accounts" and that without individual names, the Department would not be able to capture such communications in its search. *See* Arrington Decl. ¶ 9c.

On May 15, 2007, Plaintiff sent a letter to the Department's Inspector General requesting that his office commence an investigation into "the extent to which Department of Education employees have been using non-governmental e-mail accounts for official business." Amend. Compl. Ex. C. The letter speculated that "[i]f [] employees are regularly using private email accounts to send official email and the Department neither tracks nor stores such email . . . the Department . . . is likely operating in violation of the Federal Records Act." Amend. Compl. Ex. C. Plaintiff sent Dr. Allen Weinstein, the Archivist of the United States, and several members of Congress a carbon copy of that letter. *See* Amend. Compl. Ex. C.

A week later, Plaintiff filed the instant action alleging that the Department had violated the FRA by failing to preserve and properly dispose of records allegedly created pursuant to the "policy of Education to permit agency employees to use outside email accounts to conduct official business." Amend. Compl. ¶¶ 49, 53. That same day, Plaintiff announced on its website that it had "sent Freedom of Information Act (FOIA) requests to seven agencies seeking copies of all record-keeping guidance and policies" because it was "trying to determine whether agency non-compliance with federal record-keeping laws and regulations, especially as to email, is a government-wide problem." *Crew Sends FOIA Requests Seeking Record-Keeping Policies to Seven Agencies* ("*CREW Sends FOIA Requests*") (May 22, 2007), published at http://www.citizensforethics.org/node/28510. The May 22, 2007 request sent to the Department of Education requested "any and all record-keeping guidance and policies dating from January 1, 2001, to the present . . . includ[ing] . . . guidance and policies on the creation, maintenance and disposition of federal records, including guidance and policies concerning the Federal Records

Act."[4]  Arrington Decl. Ex. A.  On May 23, 2007, the day after submitting that FOIA request and filing the instant lawsuit, Plaintiff sent a letter to the Secretary of Education Margaret Spellings advising her of the lawsuit and requesting that she "initiate action" to prevent any alleged "further removal or destruction of the electronic records."  Amend. Compl. ¶ 38.

Through an exchange of letters beginning June 8, 2007, the Department affirmed its earlier denial of Plaintiff's request for a fee waiver, and Plaintiff appealed that decision.  *See* Amend. Compl. Exs. F, G, I.  The Department advised Plaintiff, however, that by regulation, the Department was required to "allow a requester to modify [its] request if fees of more than $25.00 are anticipated" and that advanced payment was required "if the cost is expected to be greater than $250.00."  Amend. Compl. Ex. F.  Plaintiff was encouraged to narrow its request because its "broad scope . . . would require significant time and resources to search for and review responsive records."  Amend. Compl. Ex. F.  Plaintiff to date has not provided the required clarification.  Arrington Decl. ¶ 19.

By letter dated June 6, 2007, the Department reaffirmed its denial of Plaintiff's fee waiver request and advised Plaintiff that "[t]his letter constitutes exhaustion of the administrative remedies available . . . under FOIA."  Amend. Compl. Ex. I.

On October 2, 2007, after the Department's original motion to dismiss was fully briefed and pending before the Court, Plaintiff filed an Amended Complaint containing three new claims and three new Defendants.  Claim One alleges that the Department and Secretary Spellings violated the FRA by failing to preserve records created pursuant to the alleged policy authorizing

---

[4]  By letter dated August 8, 2007, the Department provided Plaintiff with past and current copies of the Department's policies and procedures for complying with the Federal Records Act in response to Plaintiff's May 22, 2007 FOIA request.  Arrington Decl. ¶ 14.

10

employees to conduct official business over private email accounts. *See* Amend. Compl. ¶¶ 47-

50. Claim Two alleges that the Department and the Secretary violated the FRA by permitting

disposal of records created pursuant to that alleged policy. *See* Amend. Compl. ¶¶ 51-55. Claim

Three alleges that the Archivist and the Secretary violated the FRA by failing to initiate

enforcement action against the Department for its alleged record-keeping practices. *See* Amend.

Compl. ¶¶ 56-62. Claims Four and Five allege that the Department violated FOIA by,

respectively, failing to produce records responsive to Plaintiff's March 28, 2007 FOIA request

and denying Plaintiff's request for a fee waiver. *See* Amend. Compl. ¶¶ 63-69. Only Claims

One through Four are at issue in this motion.[5]

## ARGUMENT

With the exception of Plaintiff's challenge to the Department's fee waiver denial, none of

the claims in the Amended Complaint is properly before this Court. "The judicial power of the

United States . . . is not an unconditioned authority" but is limited by Article III of the

Constitution." *Valley Forge Christian College v. Americans United for Separation of Church &*

*State*, 454 U.S. 464, 471 (1982). That Article "confines the federal courts to adjudicating actual

'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). In the absence of an

actual case or controversy, the Court is without jurisdiction to decide the case. *See Warth v.*

*Seldin*, 422 U.S. 490, 499 (1975); *see also Poe v. Ullman*, 367 U.S. 497, 502 (1961). Thus, a

court must ensure that its authority is invoked where there is "a lively conflict between

antagonistic demands, actively pressed, which make resolution of the controverted issue a

practical necessity," (*id.* at 503) – a requirement "founded in concern about the proper – and

---

[5] Defendants have filed an Answer in response to Claim Five.

properly limited – role of the courts in a democratic society," (*Warth*, 422 U.S. at 498).

Otherwise, "the courts would be called upon to decide abstract questions of wide public

significance even though other governmental institutions may be more competent to address the

questions and even though judicial intervention may be unnecessary to protect individual rights."

*Id.* at 500.

In an effort to give meaning to Article III's case-or-controversy requirement, "courts have

developed a series of principles termed 'justiciability doctrines,' among which are standing,

ripeness, mootness, and the political question doctrine." *National Treas. Employees Union v.*

*United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).  These doctrines consist of both "prudential

elements which Congress is free to override and core component[s] which are essential and

unchanging part[s] of the case-or-controversy requirement of Article III." *Id.* (internal quotations

omitted).  This action implicates core components of that requirement – standing and ripeness –

whose absence requires dismissal of Claims One through Four in the Amended Complaint for

lack of jurisdiction.

## I.      THE COURT SHOULD DISMISS PLAINTIFF'S FRA CLAIMS IN THIS ACTION FOR LACK OF STANDING.

All of the FRA claims in the Amended Complaint should be dismissed on standing

grounds.  *See* Amend. Compl. ¶¶ 47-62.  A plaintiff's standing is a "predicate to any exercise of

[this Court's] jurisdiction." *Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996).

Standing is "an essential and unchanging part of the case-or-controversy requirement." *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The requirements of standing are well

established.  *See id.* at 560-61.  "[A plaintiff] must show injury in fact that was caused by the

conduct of the defendants and that can be redressed by judicial relief." *Public Citizen, Inc. v. National Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007).  The absence of any one of these elements is sufficient to dismiss a claim on standing grounds.  *See US Ecology, Inc. v. United States Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000) ("a deficiency on any one of the three [elements] suffices to defeat standing").  Indeed, "[u]ntil a judicially cognizable injury is shown no other inquiry is relevant to consideration of [] standing." *Schlesinger v. Reservists Comm. to Stop War*, 418 U.S. 208, 227 n.16 (1974).  Dismissal is required here because Plaintiff has not alleged a cognizable injury.

**A.     Plaintiff's Alleged Injury Is Insufficient to Confer Standing Under the FRA.**

Plaintiff's only alleged injury is "denied [] access to records . . . 'in the public interest'" and "harm[ to Plaintiff's] ability to provide full, accurate and current information to the public." Amend. Compl. ¶¶ 10, 12.  This case squarely presents a question left open in prior FRA cases, namely, whether such injury is sufficient for standing purposes.  Courts in this Circuit have suggested that its sufficiency is "questionable." *See American Friends Serv. Comm. v. Webster*, 720 F.2d 29, 46 (D.C. Cir. 1983); *American Friends Serv. Comm. v. Webster*, 485 F. Supp. 222, 227 (D.D.C. 1980).  In *Webster*, three categories of plaintiffs brought an action to challenge the FBI's record destruction program.  One category of plaintiffs included "organizations whose goals and purposes are alleged to require access to the files and records of the FBI in order to enable them to disseminate information for organizational, educational, and political purposes." *Id.* at 226.  These plaintiffs claimed that if the FBI's files were destroyed, "they w[ould] be deprived of raw material for primary research in the areas of their activities." *Id.* at 227.  The district court regarded that claimed injury as "questionable" for standing purposes. *Id.*  However,

because the other plaintiffs had adequately shown injury for standing purposes, the district court

concluded that it was "not necessary to decide that question." *Id.*  In the subsequent appeal, the

D.C. Circuit also refrained from deciding that question "[s]ince the district court based its finding

of standing only on the injuries . . . [of the other] groups of plaintiffs." *Webster*, 720 F.2d at 46

n.23.  Thus, it is "unsettled whether the requisite injury-in-fact standard is met" by an

organization's claimed need for files earmarked for destruction to "disseminate information" for

organizational, educational, or political purposes. *See Webster*, 485 F. Supp. at 226-27.

Even if that injury were sufficient for standing purposes, Plaintiff could not make that

claim here because of the status of Plaintiff's FOIA request.  The Department has not begun to

process Plaintiff's requests for communications between the Department and White House staff

concerning the Reading First Program or for communications between the Department and

educational publishers. *See* Arrington Decl. ¶ 16.  Therefore, no determination has been made as

to which Department records are responsive to that request and thus Plaintiff cannot possibly

claim that any documents needed for its purposes have been earmarked for destruction. *See*

Arrington Decl. ¶ 17.  Plaintiff merely speculates that documents responsive to its request are not

properly being maintained. *See* Amend. Compl. Ex. C. ("If . . . Department of Education

employees are using or have used outside, non-governmental email addresses for government

business and have not retained copies of those records on the Department's files, the Department

is failing to 'accurate[ly] and complete[ly] document[] the policies and transactions of the

Federal Government' . . . in violation of the FRA"); *id.* ("If [] employees are regularly using

private email accounts to send official email and the Department neither tracks nor stores such

email . . . the Department of Education is likely operating in violation of the Federal Records

14

Act").

It is well established, however, that speculative or hypothetical claims of injury are insufficient to confer standing. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44 (1976) ("unadorned speculation will not suffice to invoke the federal judicial power"). Rather, the alleged injury "must be certainly impending," *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks and citations omitted), and "real and immediate," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Since Plaintiff's claimed injury is neither, Plaintiff lacks standing as to all of its FRA claims, which are predicated on the same speculation. *See* Amend. Compl. Ex. C (Letter from CREW Executive Director to the Department of Education's Inspector General (May 15, 2007)) (alleging that "if" the Department is failing to preserve emails from private email accounts, it "likely" is operating in violation of the FRA); Amend. Compl. ¶ 58 (alleging that the Archivist and the Secretary violated the FRA by failing to initiate action based on Plaintiff's speculation in that letter).

**B.    Plaintiff's Alleged Injury Is Not Traceable to Defendants' Practices Under the FRA.**

Plaintiff alternatively lacks standing because its alleged injury was not caused by either the Department's alleged practices under the FRA or the alleged failure of the Archivist or Secretary to initiate action based on such practices. *See* Amend. Compl. ¶¶ 50, 54 (alleging harm from denial of "a right of access to information in the public interest"); *see also* Amend. Compl. ¶ 60. Standing requires that the alleged injury be "'fairly traceable' to the challenged act." *National Treasury*, 101 F.3d at 1427. Plaintiff's alleged injury clearly is not. Plaintiff "[t]o date [] has not received copies of any emails responsive to its March 28, 2007 FOIA request,"

(Amend. Compl. ¶ 44), not because of any alleged noncompliance with the FRA by Defendants but because the Department has suspended processing Plaintiff's FOIA request.

If, as here, there is an unresolved issue over fees associated with a FOIA request, the Department by regulation suspends processing that request. *See* 34 C.F.R. § 5.62(c) ("Requests under this section are not deemed to have been received . . . until the Department receives the satisfactory assurance [of full payment] or advance payment"); 5 U.S.C. § 552(a)(3)(A); *see also* Arrington Decl. ¶ 5c (explaining that processing is suspended if a fee waiver request is denied and not successfully appealed). Plaintiff was so advised *well before this action was filed. See* Amend. Compl. Ex. B (Letter from Maria-Teresa Cueva to Daniel Roth (Apr. 16, 2007)) (advising Plaintiff that "[o]nce we receive your clarification and the issues regarding charges are resolved, we will begin processing your request"). Thus, Plaintiff's failure to receive emails – *indeed, any communications* – responsive to its request has nothing to do with the Department's FRA practices.[6]

---

[6] In the April 16, 2007 letter denying Plaintiff's fee waiver request, the Department enclosed a CD containing records previously disclosed to another FOIA requester. That letter made clear, however, that the Department could not process Items 1-3 of Plaintiff's FOIA request until Plaintiff provided the requested clarification. *See* Amend. Compl. Ex. B; *see also* Amend. Compl. Ex. F (Letter to Daniel Roth from Maria-Teresa Cueva (June 8, 2007)) ("The Department notes initially that, because you received information responsive to item number 4 of your March 28, 2007 request, your request for a fee waiver is deemed to concern only the items numbered 1, 2 and 3"). Only those items requested "communications." *See* Amend. Compl. Ex. A (Plaintiff's March 28, 2007 FOIA request).

Plaintiff is also well aware that even upon resolution of the fee issue, the Department cannot process that request because it is overly broad, and Plaintiff to date has failed to sufficiently narrow the scope.[7]  *See* Arrington Decl. ¶ 19 ("As [Plaintiff's] request currently reads, it does not reasonably describe the records sought and therefore, even upon resolution of the fee dispute, the Department cannot begin to search for responsive records until the requester clarifies the request."); *see also* Amend. Compl. Ex. B (Letter from Maria-Teresa Cueva to Daniel Roth (Apr. 16, 2007)) ("Items 1 through 3 of your request encompass a large volume of information on broad topics . . . [and c]onsequently, your request does not reasonably describe the records sought, and the Department is unable to process your request regarding items 1 through 3 without further clarification"); Arrington Decl. ¶ 9 (describing May 9, 2007 telephone call with Plaintiff to discuss the "need for CREW to narrow the request"); Amend. Compl. Ex. E (Email from Daniel Roth to Angela Arrington (May 21, 2007)) (acknowledging that Plaintiff was advised that the "technological limitations of the Department's email search technology would require the Department to search approximately 4,500 email accounts unless the request is narrowed further"); Amend. Compl. Ex. F (Letter from Maria-Teresa Cueva to Daniel Roth (June 8, 2007)) (reiterating that "[a]s the Department indicated during the May 9, 2007 conference call . . . we encourage you to narrow the scope of your request so that we may provide you with the requested information as expeditiously as possible").  Thus, to the extent that Plaintiff has suffered any injury at all, it is traceable to Plaintiff's own failure to submit an appropriately

---

[7]  Although Plaintiff submitted a purportedly narrowed request the day before filing its initial Complaint in this action, Plaintiff's revised request "failed to sufficiently narrow the scope or reasonably describe the records sought" and therefore remains insufficient for processing under the FOIA.  *See* Arrington Decl. ¶ 13 & Amend. Compl. Ex. E.

narrowed FOIA request and secondarily to the Department's refusal to waive the substantial costs

to process the request as submitted.  Standing, however, requires that the alleged injury be

traceable to the conduct challenged.  Since that is clearly not the case as to any of Plaintiff's FRA

claims, those claims should be dismissed for lack of jurisdiction.

## II.     NEITHER PLAINTIFF'S FRA CLAIMS NOR ITS FOIA CLAIM ALLEGING THAT THE DEPARTMENT FAILED TO PRODUCE DOCUMENTS IS RIPE FOR RESOLUTION.

This Court should dismiss all of Plaintiff's claims, with the exception of its challenge to

the fee waiver denial, as unripe.  The ripeness doctrine "shares the constitutional requirement of

standing that an injury in fact be certainly impending," which, as discussed earlier, is not so here.

*National Treasury*, 101 F.3d at 1427.  Prudentially, however, the ripeness doctrine "prevent[s]

the courts, through avoidance of premature adjudication, from entangling themselves in abstract

disagreements."  *Worth v. Jackson*, 451 F.3d 854, 861 (D.C. Cir. 2006).  By refusing to hear such

disagreements, federal courts "enhance judicial economy, and ensure that a record adequate to

support an informed decision exists when the case is heard."  *Navegar, Inc. v. United States*, 103

F.3d 994, 998 (D.C. Cir. 1997).  Where, as here, "the dispute is so shapeless that the [C]ourt is

necessarily called upon to hypothesize regarding not only the *facts* of the dispute, but the very

'policy' . . . that is challenged[] such is the [] paradigm of an advisory opinion."  *Hotel &*

*Restaurant Employees Union v. Smith*, 846 F.2d 1499, 1517 (D.C. Cir. 1988).  Since this Court

lacks jurisdiction to issue such opinions, Claims One through Four should be dismissed.

18

## A.     Plaintiff's FRA Claims Are Predicated on Contingent Events.

Plaintiff effectively concedes that whether the alleged Department policy authorizing use of private email accounts – *even assuming it existed* – violates the FRA is contingent on whether the Department is properly retaining and disposing of emails created under that policy.  *See* Amend. Compl. Ex. C (Letter from CREW Executive Director to the Department of Education's Inspector General (May 15, 2007)) ("*If* . . . Department of Education employees are using or have used outside, non-governmental email addresses for government business and have not retained copies of those records on the Department's files, the Department is failing to 'accurate[ly] and complete[ly] document[] the policies and transactions of the Federal Government' . . . in violation of the FRA" (emphasis added)); *id.* ("*If* [] employees are regularly using private email accounts to send official email and the Department neither tracks nor stores such email . . . the Department of Education is *likely* operating in violation of the Federal Records Act" (emphasis added)).  Plaintiff originally alleged no facts of such unlawful operation.  Now, after testing its theory of "non-compliance with federal record-keeping laws and regulations, especially as to email," Plaintiff still is unable to allege facts substantiating an FRA violation by the Department. *CREW Sends FOIA Requests*, at http://www.citizensforethics.org/node/28510; *see also* Arrington Decl. ¶ 14 & Ex. A (Plaintiff's May 22, 2007 FOIA Request to the Department of Education) (requesting "any and all record-keeping guidance and policies dating from January 1, 2001, to the present, for federal records of the Department").[8]  Even after receiving copies of the Department's policies, Plaintiff continues to rely on the same allegations from the Original

_____

[8]  Plaintiff submitted this FOIA request the same day it filed this action.  The Department produced copies of its current record-keeping policies to Plaintiff on August 8, 2007.  *See* Arrington Decl. ¶ 14.

19

Complaint filed when Plaintiff admittedly was "trying to determine" whether there was agency

non-compliance with the FRA.  *See CREW Sends FOIA Requests*, at

http://www.citizensforethics.org/node/28510 (announcing that CREW sent FOIA requests to

"seven agencies seeking copies of all record-keeping guidance and policies" because "CREW is

trying to determine whether agency non-compliance with federal record-keeping laws and

regulations, especially as to email, is a government-wide problem").  Specifically, Plaintiff

alleges only that it was advised that "[communications from private email addresses] would not

be included in the agency's response to [Plaintiff's] FOIA request."  Amend. Compl. ¶ 34; *see*

*also* Amend. Compl. ¶ 32 (alleging that the Plaintiff was advised that "Education 'wouldn't have

access to that'").[9]  That basis is wholly inadequate for an informed decision by this Court and

thus Plaintiff's FRA claims against the Department are clearly unripe.  *See Navegar, Inc.*, 103

F.3d at 998 (noting that the ripeness requirement ensures that the record before the court is

"adequate to support an informed decision").

Since Plaintiff's other FRA claims against the Secretary and the Archivist are predicated

on that same insubstantial basis, those claims necessarily are unripe, too.  *See* Amend. Compl. ¶

58 (alleging that the "Archivist has violated his mandatory, non-discretionary duty since May 15,

2007 . . . [to] commence an immediate investigation");[10] Amend. Compl. ¶ 59 (alleging that

Secretary Spellings "has violated her mandatory, non-discretionary duty to maintain safeguards

---

[9]  This allegation, however, appears in a sentence that has no clear reference for the singular pronoun "that."  *See* Amend. Compl. ¶ 32.  Plaintiff instead has cobbled together seemingly unrelated statements in an effort to bolster its deficient claims under the FRA.

[10]  The May 15, 2007 date is a reference to Plaintiff's letter to the Department of Education Inspector General.  *See* Amend. Compl. Ex. C.  The Archivist as well as several members of Congress merely received a carbon copy of that letter.

to prevent the removal of Education records").  None of the allegations in the Complaint

demonstrates "any actual, impending, or threatened unlawful removal . . . or destruction of

records in the [Department's] custody" that would give rise to either the Archivist's or the

Secretary's enforcement obligations under the FRA.  *See* 44 U.S.C. § 2905; 44 U.S.C. § 3106.

Instead, as already discussed, Plaintiff has alleged mere contingencies.  *See* Amend. Compl. Ex.

C (Letter from CREW Executive Director to the Department of Education's Inspector General

(May 15, 2007)) (alleging that "if" the Department has not retained copies of records created on

"outside, non-governmental email addresses," it is "in violation of the FRA"); *id.* ("If . . . the

Department neither tracks nor stores such email . . . the Department of Education is likely

operating in violation of the Federal Records Act").  All of Plaintiff's FRA claims therefore are

improperly before this Court.

> **B.    Plaintiff's Challenge to the Department's Failure to Produce Records Responsive to Plaintiff's FOIA Request Is Unripe.**

As long as the fee waiver issue remains unresolved, Plaintiff's claim that the Department

failed to produce responsive records is premature at best.  *See* Amend. Compl. ¶¶ 61, 62 (alleging

that Plaintiff "is entitled by law to access to the records requested under the FOIA . . . . [and

t]herefore, defendant violated FOIA's mandate to release agency records").  FOIA obligates an

agency to produce nonexempt records upon a request that "reasonably describes such records and

[] is made in accordance with published rules stating the time, place, fees (if any), and procedures

to be followed."  5 U.S.C. § 552(a)(3)(A).  In the absence of such a request, that obligation is not

triggered.  Here, the Department has no obligation to produce responsive records because

Plaintiff has not reasonably described the records it seeks and the issue of fees is unresolved.

*See, e.g.,* Amend. Compl. Ex. B ("Once we receive your clarification and the issues regarding charges are resolved, we will begin processing your request."); *id.* ("your request does not reasonably describe the records sought, and the Department is unable to process your request regarding items 1 through 3 without further clarification").

Indeed, by regulation, a request that involves such a significant expenditure of time and resources to process is not even "deemed to have been received . . . until the Department receives the satisfactory assurance [of full payment] or advance payment." 34 C.F.R. § 5.62(c). It is well established that "[i]f no FOIA request is received, an agency has no reason to search or produce records and similarly has no basis to respond." *Brunsilius v. United States Department of Energy*, 2007 WL 2791709, at *4-5 (D.D.C., Sept. 26, 2007) (concluding that "[w]here DOE requires an advance payment by the requester, the request is not considered received until the payment is in the agency's possession"); *Carbe v. BATF*, 2004 WL 2051359, at *8 (D.D.C., Aug. 12, 2004) ("If no FOIA request is received, an agency has no reason to search and produce records . . . ."); *Hutchins v. Department of Justice*, 2005 WL 1334941, at 2 (D.D.C., June 6, 2005) ("Without any showing that the agency received the request, the agency has no obligation to respond to it."); *see also Pollack v. Department of Justice*, 49 F.3d 115, 120 (4th Cir. 1995) (concluding that an agency "had the authority to cease processing [a FOIA] request" where the requester did not commit to pay the required advance payment). Under the circumstances here, the Department properly suspended processing Plaintiff's request and had no obligation to produce the requested communications.

Plaintiff's March 28, 2007 FOIA request sought four broad categories of records:

(1) "All communications from any Department office . . . to, from, or referencing any member of the White House staff . . . that mention or relate to Reading First, 'Science Based Reading Research'/'SBRR,' DIBELS, or any other issue related to reading instruction or education";

(2) "All Department contacts or communications . . . with educational publishers, their executives, employees, consultants, or contractors";

(3) "All Department contacts or communications that mention or relate to contacts with educational publishers, their executives, or employees"; and

(4) "[A]ll documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the *Title I Monitor*."

Amend. Compl. Ex. A (emphasis omitted). Plaintiff was advised that the Department could not process Items (1), (2), or (3) without further clarification. *See* Amend. Compl. Ex. B; *see also* Arrington Decl. ¶ 9 (describing the May 9, 2007 conference call with Plaintiff to discuss narrowing its request). By letter dated June 8, 2007, the Department informed Plaintiff of the requirement of prepayment of fees exceeding $250 and advised Plaintiff that the "broad scope of your request would require significant time and resources to search for and review responsive records." Amend. Compl. Ex. F (Letter from Maria-Teresa Cueva to Daniel Roth (June 8, 2007)). Although Plaintiff was encouraged to narrow its request, Plaintiff failed to do so sufficiently so that the Department could proceed with processing. *See id.*; *see also* Arrington Decl. ¶ 19 ("As the request currently reads, it does not reasonably describe the records sought and therefore, even upon resolution of the fee dispute, the Department cannot begin to search for responsive records until the requester clarifies the request."). Plaintiff's FOIA request therefore continues to remain in suspended status. *See* Amend Compl. Ex. B ("Once we receive your clarification and the issues regarding charges are resolved, we will begin processing your

23

request.").  As long as Plaintiff's request remains in that status, the Department's obligation to produce responsive records is not triggered.  Thus, Claim Four alleging that the Department violated FOIA by failing to produce records, at best, is not ripe.  This Court accordingly should dismiss that claim as well.

## III.   THIS COURT ALTERNATIVELY SHOULD DISMISS CLAIMS ONE THROUGH FOUR OF THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM.

Even if this Court determines that it has jurisdiction over Plaintiff's FRA claims and FOIA claim alleging failure to produce records, dismissal is nevertheless warranted for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is warranted where the complaint's allegations are insufficient to state or infer a necessary element of a claim.  *See Wells v. United States*, 851 F.2d 1471, 1473 (D.C. Cir. 1988) ("Assuming all factual allegations are true, a court must dismiss a complaint if the plaintiff fails to establish a right to relief based on the facts alleged in the complaint.").  As already demonstrated, Plaintiff's allegations are deficient in that respect as to all of its claims under the FRA because the record is utterly devoid of facts permitting an inference of the Department's unlawful record-keeping practices – a necessary predicate for the Department's alleged violation and the Secretary and the Archivist's enforcement obligations.

Plaintiff's FOIA challenge to the Department's failure to produce records is likewise lacking a necessary predicate – the statutory obligation to produce records.  As already discussed, as long as the issue of fees is unresolved and Plaintiff refuses to sufficiently narrow its request, the Department has no obligation to respond to that request.  By regulation, such a request is deemed "not received" and thus the Department "has no reason to search or produce records."

24

*Brunsilius*, 2007 WL 2791709, at *4; 34 C.F.R. § 5.62(c); 5 U.S.C. § 552(a)(3)(A).  Thus,

whether this Court analyzes Claims One through Four under Rule 12(b)(1) or 12(b)(6) of the

Federal Rules of Civil Procedure, those claims cannot withstand dismissal.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Claims

One through Four of the Amended Complaint.

Dated:  October 16, 2007                Respectfully submitted,

OF COUNSEL:                             PETER D. KEISLER
MARCELLA GOODRIDGE                      Assistant Attorney General,
Attorney                                Civil Division
U.S. Department of Education

                                        JEFFREY A. TAYLOR
                                        United States Attorney

JASON R. BARON
Director of Litigation                  ARTHUR R. GOLDBERG
National Archives and Records           Assistant Branch Director,
Administration                          Federal Programs Branch

                                          s/ Jacqueline Coleman Snead
                                        JACQUELINE COLEMAN SNEAD
                                        (D.C. Bar No. 459548)
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Avenue, N.W., Rm 7214
                                        Washington, DC 20530
                                        Tel: (202) 514-3418
                                        Fax: (202) 616-8470
                                        jacqueline.snead@usdoj.gov

                                        **Counsel for Defendants**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS) IN WASHINGTON,<br><br>       Plaintiff,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, MARGARET SPELLINGS, in her official capacity as the Secretary of Education, NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, DR. ALLEN WEINSTEIN, in his official capacity as the Archivist of the United States,<br><br>       Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:07CV00963-RMU |

**ORDER**

Upon consideration of Defendants' Motion to Dismiss Claims One Through Four of the Amended Complaint, the Opposition thereto, and the complete record in this case, it is hereby

ORDERED that Defendants' motion is GRANTED. Claims One, Two, Three, and Four of the Amended Complaint are dismissed.

SO ORDERED.

_____
Hon. Ricardo M. Urbina
United States District Court Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2007, a true and correct copy of the foregoing

Defendants' Motion to Dismiss Claims One Through Four of the Amended Complaint was

electronically filed through the U.S. District Court for the District of Columbia Electronic

Document Filing System (ECF) and that the document is available for viewing on that system.


_____ s/ Jacqueline Coleman Snead _____
JACQUELINE COLEMAN SNEAD

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Citizens for Responsibility and Ethics in Washington | ) ) ) |  |
|  | ) ) |  |
| Plaintiff, | ) ) | Case No. 07-cv-963 RMU |
| v. | ) ) ) |  |
| United States Department of Education, Margaret Spellings in her official capacity as the Secretary of Education, National Archives and Records Administration, Dr. Allen Weinstein in his official Capacity as the Archivist of the United States, | ) ) ) ) ) ) |  |
|  | ) ) |  |
| Defendants. | ) ) |  |

## DECLARATION OF ANGELA ARRINGTON

I, Angela Arrington, declare and state as follows:

1.      I am a Supervisory IT Specialist (GS-2210-15) for the Information

Management Case Services Team within the Regulatory Information Management

Services (RIMS), Office of Management, U.S. Department of Education (Department).  I

have been employed at the Department for 5 years.

2.      My responsibilities include supervising a staff of 14 people (government

and contractor staff) to facilitate public access to agency records under the Freedom of

Information Act, 5 U.S.C. § 552 (FOIA).

3.      This declaration is submitted in support of Defendants' motion to dismiss

the Amended Complaint in this action under Rule 12(b)(1) of the Federal Rules of Civil

Procedure.  All information contained herein is based upon my personal knowledge or

information furnished to me in my official capacity and upon my personal review of the records at issue in this litigation.

**Department of Education's FOIA Policies/Procedures:**

4.    The Department's Chief FOIA Officer has delegated the authority for administration of the FOIA to RIMS. The FOIA staff within RIMS provides Department-wide assistance for the management and implementation of the FOIA. The FOIA staff assists Department employees in processing FOIA requests by providing technical advice and training, serving as coordinators and requester point-of-contacts for all Department principal offices, and serving as deciding officials at Department headquarters for determinations under the FOIA. The FOIA staff is responsible for oversight of the entire process, from intake of the request to release of responsive records under the FOIA. This includes, but is not limited to, issuance of the written acknowledgement letters, coordinating responses among principal offices, collecting all responsive records and monitoring the redaction process, reviewing all fee waiver requests, assisting in the assessment of fees, preparing the release of the responsive records to the requester with an accompanying cover letter, and managing the Department's FOIA website and reading room.

5.    The Department follows the requirements of the FOIA and the Department's implementing regulations, located at 34 C.F.R. Subtitle A, Part 5, when processing a FOIA request.

> a.    Upon receipt of a FOIA request, the request is assigned to the FOIA Coordinator(s) of the principal office(s) having custody of the records sought.

> b.    The FOIA staff then notifies the requester, in writing, of receipt of the request.

c.      If the requester has asked for a fee waiver, RIMS in consultation with the custodial office and the General Counsel's office will review the request and any supporting documentation. RIMS will then issue a decision on the fee waiver request. Processing of the FOIA request is suspended until RIMS has made a fee waiver determination. If the fee waiver request is granted, the Department will immediately begin processing the request. If the fee waiver is denied, the requester can appeal the denial to the Department's Assistant Secretary for Management for a final determination. If the fee waiver appeal is granted, again, the Department will immediately begin processing the request. However, if the fee waiver appeal is denied, the requester has the option of seeking judicial relief through the courts. In this circumstance, all processing of the requester is suspended until the case is resolved judicially.

d.      Once any fee issues are resolved and the request is ready for processing, the subject matter expert(s) in the principal office(s) review the responsive records and make initial recommendations regarding what records will be released (in whole or in part) and what records will be withheld pursuant to 5 U.S.C. § 552(b).

e.      After processing the responsive records, the FOIA Coordinator within the principal office prepares a fee estimate. If the estimated charges are more than $25.00, the FOIA staff will notify the requester of the amount. If the charges exceed $250.00, the FOIA staff will collect the fee in advance unless the requester has a history of prompt payment.

f.      The FOIA staff will issue a cover letter and prepare the package of responsive documents. The documents may be transmitted electronically or in hardcopy form. The cover letter also provides the requester with the statutory appeal rights.

g.      In the event that a requester is denied access to records under the FOIA (i.e. a determination to deny access in whole or in part to any record responsive to a request; a determination that a requested record does not exist; a determination that a requested record is not readily reproducible in the form or format sought by the requester; a determination that what has been requested is not a record subject to the FOIA; a determination on any disputed fee matter, including a denial of a request for a fee waiver; and a denial of a request for expedited processing), the requester then has 30 days within which to appeal the FOIA denial.

3

**CREW's FOIA Request:**

6.    By letter dated March 28, 2007, CREW submitted a FOIA request (case

number 07-00517-F) to RIMS seeking access to the following records dating from

January 20, 2001 to the present:

> (1)    All communications from any Department office, including any
> and all field offices, to, from, or referencing any member of the White
> House staff, including, but not limited to, then-Domestic Policy Advisor
> Margaret Spellings, that mention or relate to Reading First, "Science
> Based Reading Research"/"SBRR," DIBELS, or any other issue related to
> reading instruction or education;
>
> (2)    All Department contacts or communications, including calendar
> references and meeting notes, with educational publishers, their
> executives, employees, consultants, or contractors. The list of education
> publishers and/or their subsidiaries includes, but is not limited to,
> Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager,
> Cambium Learning, Sopris West, and IntelliTools;
>
> (3)    All Department contacts or communications that mention or relate
> to contacts with education publishers, their executives, or employees. The
> list of educational publishers and/or their subsidiaries includes, but is not
> limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman,
> Voyager, Cambium Learning, Sopris West, and IntelliTools;
>
> (4)    To the extent not included in the above request, please provide all
> documents previously disclosed under FOIA to Andrew Brownstein,
> Travis Hicks and/or the Title I Monitor.  [*See* Amended Complaint Exhibit
> A]

CREW's FOIA request also included a request for a fee waiver. In its request, CREW

stated that the request is primarily for non-commercial purposes, and the information

requested is likely to contribute to the public's understanding of the operations of the

federal government.

7.    Department personnel reviewed CREW's request and determined that

items (1), (2), and (3) of the request as written did not reasonably describe the records

sought.  For example, the request seeks contacts between Department personnel and

personnel at the White House, as well as personnel from various publishing companies, without identifying specific individuals relevant to each source category. Without specific names, a search for responsive records would include "White House" and the names of the various publishing companies, which would yield a substantial volume of documents, especially when searching electronic records, that is not responsive to CREW's request. Further, facially, the request does not reasonably describe the records sought and, at times, borders on the nonsensical: item 3, essentially seeks records of "contacts … that …relate to contacts…" Without clarification, the Department determined that it could not process items (1), (2), and (3) of the request and therefore has not begun doing so.

      8.      By letter dated April 16, 2007, the Department released to the requester, Mr. Daniel C. Roth, Counsel, CREW, a CD containing 421 pages of documents responsive to item 4 of the March 28, 2007 request (i.e. records regarding the Reading First program that were previously disclosed under FOIA to the Title I Monitor). In this letter, the Department also requested the needed clarification for items 1 through 3 of the request and indicated that these items as presently written were too broad and general for Department employees to identify and locate responsive records. Additionally, this letter served as the Department's denial of CREW's request for a fee waiver, as the requester did not provide sufficient information to justify such a waiver. Specifically, the Department determined that the requester failed to meet elements 3 and 4 of the first statutory requirement for a fee waiver (i.e. disclosure of the information is in the public interest) by failing to demonstrate that the disclosure would contribute to the understanding of the public at large and that disclosure would contribute significantly to

the public understanding of government operations or activities, respectively. [*See* Amended Complaint Exhibit B]

     9.     On May 9, 2007, at CREW's request, a teleconference took place between Department personnel and Mr. Roth to discuss the March 28, 2007 request. During this discussion, of which I was a participant, Department staff discussed with Mr. Roth the need for CREW to narrow the request. In addition, Department staff generally explained the Department's electronic search capabilities.

     a. The Department staff explained to Mr. Roth that the Department does not have centralized electronic search capabilities that allow for a search of all electronic communications of all relevant parties at the same time. Instead, the Department has only the capability to search individual accounts one at a time. Accordingly, the Department does not have the capability to process such a broad request and would have to conduct individualized searches of the electronic records of all Department employees to process the request. This limitation would also be applicable to the search of electronic records of former employees.

     b. Department staff also explained that because Mr. Roth requested communications from executives, employees, consultants, or contractors of various educational publishers, but did not provide the names of these individuals, a search for responsive materials would be ineffectual. Specifically, the search of a particular email account would capture the name of particular educational publishers, like McGraw Hill, but that would not necessarily produce a responsive record.

     c. Department staff also explained that an electronic search would not capture these same executives, employees, consultants, or contractors if they chose to contact Department employees using private e-mail accounts. Department staff advised Mr. Roth that it is not unheard of for members of the public to contact Department employees using private e-mail accounts.

During this teleconference, Department staff suggested that Mr. Roth review the request based upon the discussion so that the Department would be able to process his request. Also during this teleconference, Department staff agreed to informally allow CREW to submit additional information in order for the Department to subsequently reconsider the fee waiver request based on the supplemental information.

10.     On May 11, 2007, the Department received an e-mail from Mr. Roth

constituting an informal fee waiver appeal, as discussed during the May 9, 2007

teleconference.  In this e-mail, Mr. Roth provided the Department with supplemental

information in support of his fee waiver request.  [*See* Amended Complaint Exhibit D]

11.     On May 14, 2007, I returned a phone call from Mr. Roth.  Mr. Roth

wanted to confirm from the May 9, 2007 conference call that the Department would not

conduct a search of private email addresses.  I informed Mr. Roth that if he wanted the

Department to proceed with searching private email addresses, he would need to provide

the Department with a list of the private email addresses he would like for the

Department to include in its search.

12.     On May 14, 2007, the FOIA staff received an e-mail from Mr. Roth

requesting further information on narrowing CREW's request for information.  In this

correspondence, Mr. Roth asked for (1) an estimate of the time it would take to process

CREW's request if the request was not narrowed, and (2) an estimate of the time it would

take to process the request if CREW narrowed the request and requested communications

only within the Office of the Secretary and the Office of Elementary and Secondary

Education.

13.     By e-mail dated May 21, 2007, CREW submitted a revised request that

failed to sufficiently narrow the scope or reasonably describe the records sought.  My

office determined that the revised request had the following problems.

> a. The May 21, 2007 e-mail maintained that CREW was looking for
> documents for the same expansive time period, January 20, 2001 to the
> present.  This beginning date, however, predates the enactment of both No
> Child Left Behind and the Reading First Program, which came into existence
> on January 20, 2002.

7

b. Although the revised request did narrow the scope from "any Department office" to a list of 14 offices, this did not significantly narrow the request in terms of the magnitude of Department personnel potentially impacted by this request as 14 offices is the equivalent of half of all principal offices at the Department and the magnitude of the search remains at more than 3,500 Department employees.

c. CREW added additional search terms and an additional program, the Early Reading First program, to its revised request thereby expanding the scope of its request.

As a result, the May 21, 2007 e-mail did not sufficiently narrow CREW's request so that the Department could begin processing it even if the fee waiver issue had been resolved. [*See* Amended Complaint Exhibit E]

14.    On May 22, 2007, Plaintiff filed the Complaint in this action. That same day, Plaintiff submitted another FOIA request (case number 07-00683-F) to the Department seeking access to "any and all record-keeping guidance and policies dating from January 1, 2001, to the present, for federal records of the Department." [attached hereto a Exhibit A]. The Department provided an interim response to that request August 8, 2007.

**CREW's Appeal of the Fee Waiver Denial:**

15.    By letter dated June 8, 2007, the Department denied CREW's fee waiver after taking into account the supplemental information provided to the Department in Mr. Roth's May 11, 2007 e-mail. Specifically, the Department determined that CREW met the third element of the public interest prong of the fee waiver, based on the information contained in CREW's May 11, 2007 e-mail; however, CREW failed to meet the fourth element of the public interest prong. That letter also advised CREW that "the broad scope of your request would require significant time and resources to search for and review responsive records. Under the circumstances, we encourage you to narrow the

scope of your request so that we may provide you with the requested information as expeditiously as possible." [*See* Amended Complaint Exhibit F]

16.     CREW appealed the Department's fee waiver denial by letter dated June 21, 2007. [*See* Amended Complaint Exhibit G]

17.     By letter dated September 6, 2007, the Department responded to Plaintiff's appeal of the Department's fee waiver denial, dated June 21, 2007, for FOIA Request No. 07-00517-F. [*See* Amended Complaint Exhibit I]. In the letter, Mr. Michell Clark, Assistant Secretary for Management, upheld the Department's June 8, 2007 denial of CREW's fee waiver request.

18.     The Department analyzed the arguments in Plaintiff's appeal in light of Plaintiff's May 21, 2007 modification to its initial March 28, 2007 request, and determined that the Plaintiff failed to demonstrate how disclosure of the requested records would significantly contribute to the public understanding of the Department's operations or activities, and consequently did not meet its burden to justify the Department's grant of a reduction or waiver of fees to process the request.

**Current Status of CREW's FOIA Request:**

19.     To date, CREW has not provided sufficient clarification to its March 28, 2007 FOIA request to allow Department personnel to locate responsive documents with a reasonable amount of effort. As the request currently reads, it does not reasonably describe the records sought and therefore, even upon resolution of the fee dispute, the Department cannot begin to search for responsive records until the requester clarifies the request.

20.    The Department has not begun processing CREW's request and therefore has not determined what agency records, if any, may be responsive to the request.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 16th day of October 2007 in Washington, D.C.

Angela Arrington
Supervisory IT Specialist
Office of Management
U.S. Department of Education

10

# Exhibit
# A

*RiMS*

# CREW | citizens for responsibility and ethics in washington

*07-00683-F*

May 22, 2007

**By fax (202-245-6623) and first-class mail**

U.S. Department of Education
Office of Management
Regulatory Information Management Services
400 Maryland Avenue, S.W., PCP 9143
Washington, D.C. 20202-4700
Attn: FOIA Public Liaison

### Re: Freedom of Information Act Request

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq.

Specifically, CREW seeks from the U.S. Department of Education ("the Department") any and all record-keeping guidance and policies dating from January 1, 2001, to the present, for federal records of the Department. Record-keeping guidance and policies include, but are not limited to, guidance and policies on the creation, maintenance and disposition of federal records, including guidance and policies concerning the Federal Records Act, 44 U.S.C. §§ 3101-07, 3301-14.

Please search for responsive records regardless of format, medium, or physical characteristics. Where possible, please produce records electronically, in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a

Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the extent to which the Department of Education has adopted effective and appropriate record-keeping guidance and policies for records created by any component or individual of the Department and federal entities that serve the Department.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases. In addition, CREW will disseminate any documents it acquires from this request to the

2

public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See http://foia.citizensforethics.org/home. Currently, CREW's website contains links to thousands of pages of documents CREW acquired from multiple FOIA requests. CREW's website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints. As CREW's website demonstrates, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

### Conclusion

If you have any questions about this request or foresee any problems in releasing fully the requested records, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

3