**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CITIZENS FOR RESPONSIBILITY & ETHICS IN WASHINGTON, | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0963 (RMU) |
| v. | : | Document Nos.: | 4, 12, 18 |
| DEPARTMENT OF EDUCATION *et al.*, | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE JULY 23, 2007 MOTION TO DISMISS;**
**DENYING THE PLAINTIFF'S MOTION TO FILE A SUR-REPLY;**
**GRANTING THE OCTOBER 16, 2007 MOTION TO DISMISS**

## I. INTRODUCTION

This matter comes before the court on a superceding motion to dismiss. The plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), bring suit under the Federal Records Act ("FRA"), 44 U.S.C. §§ 2901 *et seq.*, §§ 3101 *et seq.*, §§ 3301 *et seq.*, to challenge an alleged policy of the defendant, the U.S. Department of Education ("Education"), authorizing agency employees to use personal e-mail accounts to transact official business. Education moved for dismissal, arguing that CREW lacks standing to sue under the FRA because the challenged e-mail policy did not cause CREW's injury, viz., the denial of a Freedom of Information Act ("FOIA") request that Education attributes to CREW's broad search request and ineligibility for a public-interest fee waiver. CREW then filed an amended complaint containing three new claims and three new defendants. Claims 1 and 2 allege that Education and Secretary Margaret Spellings violated the FRA by failing to preserve records. Claim 3 alleges that Dr. Allen

Weinstein, Archivist of the United States, and Secretary Spellings violated the FRA by failing to initiate enforcement actions against Education for its record-keeping practices. And Claims 4 and 5 allege, respectively, that Education violated FOIA by failing to produce records responsive to the plaintiff's March 28, 2007 FOIA request and by denying the plaintiff's request for a fee waiver. The defendants responded with another motion to dismiss, reiterating the original challenge to Claims 1 and 2, while also contesting Claims 3 and 4.

Because CREW's injury cannot be traced to Education's e-mail policy, the claims branching from that grievance (Claims 1 through 3) must be dismissed. Likewise, the court must dismiss Count 4, as Education is under no obligation to fulfill the CREW's FOIA request while a decision regarding its denial of a fee waiver remains pending. The court, therefore, denies the first motion to dismiss as superceded and grants the second in full.

## II. BACKGROUND

### A. Factual History

CREW is a non-profit corporation that "uses a combination of research, litigation, and advocacy" to "protect[] the right of citizens to be informed about the activities of government." Am. Compl. ¶ 7. On March 28, 2007, it sent a FOIA request to Education seeking four types of documents:

> (1) "All communications from any Department office . . . to, from, or referencing any member of the White House staff . . . that mention or relate to Reading First, 'Science Based Reading Research'/'SBRR,' DIBELS, or any other issue related to reading instruction or education";
>
> (2) "All Department contacts or communications . . . with education publishers, their executives, employees, consultants, or contractors";

(3) "All Department contacts or communications that mention or relate to contacts with educational publishers, their executives, or employees"; and

(4) "[A]ll documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the *Title I Monitor*."

Am. Compl., Ex. A (emphasis omitted). CREW also requested a waiver of processing fees. Am. Compl. ¶ 5. On April 16, 2007, Education responded with a letter that enclosed a CD fulfilling CREW's request with respect to request 4 but indicated that requests 1 though 3 did "not reasonably describe the records sought" and, therefore, could not be processed without clarification. *Id.*, Ex. B. Specifically, Education advised CREW that its requests did not specify the names of Education, White House, or publishing company employees whose communications it sought. *Id.* The letter also informed CREW that its fee waiver request had been denied. *Id.*

On May 9, 2007, Education personnel participated in a teleconference with CREW's counsel to discuss the FOIA request. *Id.* ¶ 32. Education officials explained that the agency could not search for e-mail regarding a particular subject matter without the identity of a specific recipient or sender. *Id.* CREW alleges an Education official also revealed that Education personnel "often use private email addresses" when transacting official business, placing such correspondences outside the agency's reach. *Id.* Education asserts that it merely advised CREW that "it is not unheard of for members of the public to contact Department employees using private e-mail accounts"; in particular, publishing personnel sometimes "cho[o]se to contact Department employees using private e-mail accounts." Mot. to Dismiss Claims 1 through 4 of Am. Compl. ("Renewed Mot. to Dismiss"), Arrington Decl. ¶ 9.

CREW alleges that on May 14, 2007, an officer in Education's FOIA division confirmed again that Education employees sometimes use private e-mail accounts to conduct official

business. Am. Compl. ¶ 34. Education asserts that it merely "confirmed that if Plaintiff wanted the Department to include private emails in its search that Plaintiff would have to supply those email addresses." Arrington Decl. ¶ 11. The next day, CREW sent a letter to Education's Inspector General asking him to investigate the extent and duration of this alleged practice and its effect on record preservation and retrieval. Am. Compl. ¶ 35. CREW sent Dr. Allen Weinstein, the Archivist of the United States, and several members of Congress a carbon copy of that letter. Am. Compl., Ex. C.

CREW later narrowed its original query. The amended FOIA request sought from fourteen identified Education offices: "[a]ll communications . . . [with] White House staff . . . that mention or relate to Reading First, Early Reading First, 'Scientifically Based Reading Research'/'Science Based Reading Research'/'SBRR' or DIBELS" and "all communications" with employees of Houghton Mifflin, SRA/McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and Intellitools. Am. Compl., Ex. E.

**B. Procedural History**

The plaintiff filed the instant action on May 22, 2007, alleging that the defendant was in violation of the FRA by failing to preserve and properly dispose of official records, which CREW attributed to a "policy of Education to permit agency employees to use outside email accounts to conduct official business." Am. Compl. ¶¶ 49, 53. That same day, CREW sent a letter to the Department of Education requesting "any and all record-keeping guidance and policies dating from January 1, 2001, to the present . . . includ[ing] . . . guidance and policies on the creation, maintenance and disposition of federal records, [and] the Federal Records Act." Arrington Decl., Ex. A. The next day, CREW sent a letter to Education Secretary Spellings

advising her of its lawsuit and importuning her to "initiate action" to prevent any "further removal or destruction of the electronic records." Am. Compl. ¶ 38.

The defendant filed its original motion to dismiss on July 23, 2007, after which followed the plaintiff's opposition and the defendant's reply, which concluded briefing on September 10, 2007.[1] On October 2, 2007, CREW filed an amended complaint. The court now turns to the defendants' response: their motion to dismiss Counts 1 through 4 of the amended complaint.

## III. ANALYSIS

### A. Legal Standard for Motion to Dismiss for Lack of Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. ART. III, § 2, cl. 1. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v.*

---

1 Also on September 10, 2007, CREW sought leave to file a sur-reply, its sole justification given being "in order to address [Education's] inaccurate description of the record." Pl.'s Mot. for Leave to File a Sur-Reply at 1. Education opposed the request, observing (correctly) that CREW had not identified any new matters raised in Education's reply warranting a sur-reply. Def.'s Opp'n to Pl.'s Mot. for Leave to File a Sur-Reply at 1. Indeed, this is the only ground for filing a sur-reply, *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) – for which reason the court denies the motion.

*Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice. *Id.* On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* at 899 (citing Federal Rule of Civil Procedure 56); *accord Fla. Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001). Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

**B. CREW Lacks Standing to Prosecute its FRA Claims Because its Injury is Speculative and Untraceable to Education's E-Mail Policy and FRA Compliance**

Congress enacted the FRA to ensure the accurate and complete documentation of the

policies and transactions of the Federal Government. 44 U.S.C. § 2902(1). To remedy the improper removal of records, the Attorney General may, at the behest of the head of the agency or the Administrator of General Services, bring suit to recover the records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. at 148. To forestall the impending destruction of records, an individual may bring suit under the FRA. *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 29 (D.C. Cir. 1983).

The amended complaint alleges that "CREW is harmed by Education's failure to adopt and comply with record-keeping guidelines . . . because that failure has denied CREW access to records that are a critical part of the evidentiary record concerning Education's implementation of . . . the No Child Left Behind Act – information that is 'in the public interest.'" Am. Compl. ¶ 10. CREW further alleges harm resulting from the failure of the Archivist and Education Secretary to seek to rectify Education's alleged violation.

Education attacks CREW's standing from multiple vantages.[2] In a penetrating assault, Education argues that CREW lacks standing because its injury is both speculative and untraceable to the defendant's e-mail policy. Renewed Mot. to Dismiss at 13-18. As the agency has denied CREW a fee waiver and declared its request too broad to merit a response, the processing of CREW's FOIA request has paused pending judicial review. Arrington Decl. ¶¶ 17-

---

2 Education also challenges whether CREW can claim any injury-in-fact. Mot. to Dismiss Claims 1 through 4 of Am. Compl. ("Renewed Mot. to Dismiss") at 13-14 (describing the law as "unsettled" as regards organizational plaintiffs claiming injury from deprivation of raw material for primary research material in area of advocacy) (citing *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 46 (D.C. Cir. 1983)). Additionally, the defendant objects that the complaint, on account of its unconfirmed allegations, "fails to state a claim" and lacks "ripeness." *Id.* at 18, 24. Because the court disposes of the FRA claims on other, independent grounds, it leaves these arguments untouched.

20.[3] Simply stated, the agency has not yet determined which of its records are responsive to CREW's request; thus, Education concludes that "Plaintiff cannot possibly claim that any documents needed for its purposes have been earmarked for destruction." Renewed Mot. to Dismiss at 14. In response, CREW simply asserts in a conclusory fashion that "[b]y adopting a policy whereby Education employees use outside email accounts to conduct official business with the knowledge that electronic records created as a result of that use were and continue to be sought under the FOIA, Education has denied CREW access to requested records." Pl.'s Opp'n to Renewed Mot. to Dismiss ("Pl.'s Opp'n") at 13.

While at the pleading stage, general factual allegations of injury resulting from the defendant's conduct typically suffice, *Sierra Club*, 292 F.3d at 898-99, the court need not accept as true inferences unsupported by facts. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C.

---

[3] CREW disputes Education's declaration that the denial of a fee waiver has suspended the processing of its request, noting that before the fee waiver issue had even been addressed Education "had already produced 400 documents to CREW" in the form of the CD responsive to document request 4. Pl.'s Opp'n to Renewed Mot. to Dismiss ("Pl.'s Opp'n") at 19. But this casts no doubt on the authenticity of Education's decision to bifurcate its response to CREW's requests, one of which called for a previously prepared disclosure at minimal prospective cost (request 4), while the rest (requests 1 through 3) called for broad, new searches entailing significant fees. Education notified CREW that "because you received information responsive to item number 4 of your March 28, 2007 request, your request for a fee waiver is deemed to concern only the items numbered 1, 2 and 3." Am. Compl., Ex. F. One may, thus, deduce that the processing fees for request type 4 (for which Education has never demanded any fee) were *de minimis*, and so not charged. This conclusion is consistent with 34 C.F.R. § 5.60(c), which exempts charges totaling less than 5 dollars: as item number 4 sought only a disclosure duplicating another recent FOIA request, the processing fees may well have been negligible. *Id.*, Ex. A. In contrast, CREW's document requests 1 through 3 contemplate considerably vaster searches, which explains why Education has denied a fee waiver, *id.*, Ex. B, F, and repeatedly urged CREW to narrow its request, 34 C.F.R. § 5.61(b). Until CREW does so to Education's satisfaction or is vindicated on judicial review, Education has no obligation to process its request. *See* 34 C.F.R. § 5.62(c) (deeming FOIA requests not received until an agency has received assurance or advance of payment); Arrington Decl. ¶ 5 (asserting that request processing is suspended pending review of fee waiver determination); 34 C.F.R. § 5.61(a) (obligating agency to disclose only that portion of fees that "can readily be estimated").

Cir. 2004); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Rather, the plaintiff must allege a "plausible entitlement to relief," by setting forth "facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967, 1969 (2007). Such facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 1964, 1966.

Here, the plaintiff attempts, first, to establish and, second, to trace its injury to the defendant by making a speculative inference inconsistent with the facts alleged in the pleadings. *See Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (recognizing that "[a]lthough each of the[] three requirements of standing are analytically distinct and must be treated as such, their proof often overlaps") (internal quotations omitted). CREW's complaint distills to two critical allegations. First, CREW alleges that Education has a policy of permitting its employees to conduct official business through private e-mail accounts. Am. Compl. ¶ 49. Second, it alleges that Education officials have represented to CREW that they may be unable to access certain documents responsive to CREW's FOIA request by reason of the above. *Id.* ¶¶ 32, 34. On the basis of these two facts, CREW then impermissibly deduces that Education has denied it responsive records by not remedying its e-mail policy. *Id.* ¶ 50.

This is an unsound syllogism based on the substitution of unarticulated speculation for a necessary intermediate factual step: that Education has searched for the records and missed or otherwise failed to produce responsive documents inaccessible due to use of private e-mail. *See Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001) (making clear that no standing exists if the plaintiff's allegations are "purely speculative"); *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980) (declining to acknowledge standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]"). Many events might intervene to

preclude that factual step from ever materializing. *See DEK Energy Co. v. FERC*, 248 F.3d 1192, 1195 (D.C. Cir. 2001) (holding that to determine the "degree of likelihood [of an injury materializing], [the court] need[s] to focus on the alternative outcomes"). If the court affirms the fee waiver denial, then CREW might (1) reformulate its request, (2) withdraw it, or (3) refuse to revise it further. In turn, Education might (1) accede to CREW's request as it stands or (2) refuse to process it without further revisions. The tree of possibilities branches out in many directions and not every path, or even the most likely one, leads to Education (mis)processing CREW's request on account of its e-mail policy. *Cf. Randolph v. ING Life Ins. and Annuity Co.*, 486 F. Supp. 2d 1, 7-8 (D.D.C. 2007) (holding that increased risk of identity theft was insufficient to establish injury because realization of harm depended on contingent events not alleged in complaint); *Lujan*, 504 U.S. at 564 n.2 (noting that the "imminence" requirement "has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control"); *id.* at 592 (listing cases refusing to find imminent harm because injury turned largely on the affirmative actions of third parties).

In contrast, the facts that follow are not conjectural. Education has not begun processing CREW's FOIA request. It has identified no responsive documents. And it will take no further action until the court resolves the fee waiver issue. The unavoidable conclusion remains that Education's FRA (non)compliance has no bearing on its (un)responsiveness to CREW's FOIA request. The injury cannot be traced to Education's e-mail policy. CREW, therefore, has neither demonstrated that it has suffered an injury-in-fact nor traced that injury to the defendant's challenged e-mail policy. *Byrd*, 174 F.3d at 243.

Perhaps CREW would respond that, while it has not explicitly alleged that Education has

conducted a search and withheld responsive documents, Education's e-mail policy nevertheless inherently compromises any records search pursuant to a FOIA request because the agency's search will never encompass private e-mail accounts. In other words, the agency will not know what it does not know; the e-mail policy subverts any and every FOIA search because it is a "known unknown."[4] Yet this too invokes too much conjecture to pass muster as an imminent injury. *See DEK Energy Co.*, 248 F.3d at 1195 (explaining that "[t]here is quite a gulf between the antipodes of standing doctrine – the 'imminent' injury that suffices and the merely 'conjectural' one that does not; to escape the latter characterization the claimant must show a substantial (if unquantifiable) probability of injury"). It only establishes a probability that injury will occur – which does not quite demonstrate that harm is "certainly impending." *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (concluding that "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case"). The court cannot affirm the existence of standing based on an injury that hasn't happened and that the defendant's challenged conduct hasn't caused.

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendant's first Motion to Dismiss,

---

[4] More poetically stated: "As we know, there are known knowns. There are things we know we know. We also know there are known unknowns. That is to say we know there are some things we do not know. But there are also unknown unknowns, the ones we don't know we don't know." Donald Rumsfeld, Secretary of Defense, Defense Dep't Briefing (Oct. 17, 2002). Available at http:// www.globalsecurity.org/military/library/news/2002/10/mil-021017-usia01.htm (last visited March 10, 2008).

finding it superceded; denies the plaintiff's Motion for Leave to File a Sur-Reply; and grants the defendants' Motion to Dismiss Claims 1 through 4 of the Amended Complaint. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of March, 2008.

RICARDO M. URBINA
United States District Judge