# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND :
ETHICS IN WASHINGTON, :
:
:
Plaintiff, :
:
v. :          Civil Action No. 1:07-cv-00963 (RMU)
:
U.S. DEPARTMENT OF EDUCATION, :
:
:
Defendant. :
_____:

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Citizens for

Responsibility and Ethics in Washington ("CREW") hereby moves this Court for summary

judgment on the issue of whether CREW is entitled to a waiver of fees associated with the

processing of its Freedom of Information Act request.  There being no genuine issue of material

fact on this claim, plaintiff is entitled to judgment as a matter of law.  As support for this motion,

the Court is respectfully referred to the attached Memorandum in Support of Plaintiff's Motion

for Summary Judgment and Plaintiff's Statement of Material Facts Not in Genuine Dispute.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
William C. Holmes
(D.C. Bar No. 495186)
Citizens for Responsibility and
  Ethics in Washington

1400 Eye St. NW., Suite 450
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020
Attorneys for Plaintiff

April 24, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND | : | |
| ETHICS IN WASHINGTON, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:07-cv-00963 (RMU) |
| | : | |
| U.S. DEPARTMENT OF EDUCATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**STATEMENT**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brought this action under the Freedom of Information Act ("FOIA") when defendant U.S. Department of Education ("DOE") failed to respond to plaintiff's FOIA request. Plaintiff is seeking communications between the White House and DOE as well as between outside publishers and contractors and DOE relating to DOE's administration of the Reading First program. CREW also requested a waiver of all fees associated with the processing of its request, which concerns records that are likely to contribute to the public's understanding of the extent of White House involvement in DOE's administration of the Reading First program. For example, although current DOE Secretary Margaret Spellings has denied any involvement in the Reading First program while she was the president's domestic policy advisor, publicly available documents contradict this claim.

DOE nevertheless denied plaintiff's fee waiver request, determining initially and then on appeal that CREW had failed to demonstrate that the records it seeks will contribute significantly to the understanding of the public at large of specific government operations or activities. This finding is demonstrably in error and ignores the weight of evidence establishing both the public importance of the records CREW seeks and how CREW will further the public interest.

## STATUTORY AND REGULATORY BACKGROUND

The FOIA requires each agency to promulgate regulations specifying a fee schedule for the processing of FOIA requests and establishing procedures and guidelines for the waiver or reduction of fees. 5 U.S.C. § 552(a)(4)(A). The FOIA further provides that responsive documents

> shall be furnished without any charge or at a charge reduced
> below the fees established under [agency regulations] . . . if
> disclosure of the information is in the public interest because
> it is likely to contribute significantly to public understanding
> of the operations or activities of the government and is not
> primarily in the commercial interest of the requester.

Id. at § 552(a)(4)(A)(iii). DOE regulations mirror the FOIA. See 34 C.F.R. § 5.64(a).

By regulation the Secretary must consider the following factors in granting or denying requests for fee waivers:

> (1) Whether the subject of the requested records concerns
> the operations or activities of the government. (2) Whether
> the disclosure is likely to contribute significantly to public
> understanding of government operations or activities. (3)
> Whether the requester has a commercial interest that would
> be furthered by the requested disclosure; and, if so, whether
> the magnitude of the identified commercial interest of the
> requester is sufficiently large, in comparison with the public
> interest in disclosure, that disclosure is primarily in the commercial
> interest of the requester.

34 C.F.R. § 5.64(b).  Courts review agency fee waiver denials under a *de novo* standard of

review.  5 U.S.C. § 552(a)(4)(A)(vii).

## FACTUAL BACKGROUND

By letter dated March 28, 2007, plaintiff requested under the FOIA that DOE produce

records reflecting communications by or between specific government officials and pertaining to

the Reading First program and to several named publishing companies.  See Ex. A to Amended

Complaint.  Plaintiff also requested records previously disclosed under the FOIA to Andrew

Brownstein, Travis Hicks and/or the *Title I Monitor*.   Specifically, plaintiff requested:

> Any and all documents and records from January 20, 2001,
> to the present, in the offices of: 1) the Secretary, 2) Senior
> Counselor, 3) Chief of Staff, 4) Deputy Secretary, 5)
> Management Improvement Team, 6) Elementary and Secondary
> Education, 7) Institute of Education Sciences, 8) Planning
> Evaluation and Policy Development, 9) Civil Rights, 10)
> Innovation and Improvement, 11) Special Education and
> Rehabilitative Services, 12) Management, 13) Chief Financial
> Officer and 14) Communications and outreach, in the following
> categories:
>
> 1) All communications of the above-listed offices to, from, or
> referencing any member of the White House staff, including,
> but not limited to, then-Domestic Policy Advisor Margaret
> Spellings or Margaret Lamontagne, that mention or relate to
> Reading First, Early Reading First, "Scientifically Based Reading
> Research"/"Science Based Reading Research"/ "SBRR" or DIBELS.
>
> 2) All communications of the above-listed offices, including
> calendar references and meeting notes, with the executives,
> employees, consultants, or contractors of the following educational
> publishers: Houghton Mifflin (including, but not limited to,
> Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman,
> Voyager (including, but not limited to, Randy Best), Cambium
> Learning, Sopris West, and Intellitools.
>
> 3) All communications of the above-listed offices, including
> calendar references and meeting notes, that mention or relate to

> contacts with the executives, employees, consultants, or contractors
> of the following educational publishers: Houghton Mifflin
> (including, but not limited to, Maureen DiMarco), SRA/McGraw
> Hill, Pearson Scott Foresman, Voyager (including, but not limited
> to, Randy Best), Cambium Learning, Sopris West, and Intellitools.

Ex. F to Amended Complaint.

Plaintiff also requested a waiver of fees associated with the processing of its request.  As

plaintiff explained, the records it seeks are "likely to contribute to the public's understanding of

the extent of White House involvement in the administration of the Reading First program, an

issue on which the public record is unclear."  Ex. A to Amended Complaint.  As a non-profit

corporation that uses a combination of research, litigation and advocacy to advance its mission

of protecting citizens' right to be aware of the activities of government officials and to ensuring

the integrity of those officials, CREW will analyze all information responsive to its request and

"likely share its analysis with the public, either through memorandums or reports."  Id.

Preceding plaintiff's FOIA request were reports in the media that current DOE Secretary

Margaret Spellings had made statements about her lack of involvement in the Reading First

program while at the White House that were at odds with emails and statements by a former

DOE appointee.  See Andrew Brownstein and Travis Hicks, Congress Grills Spellings on

Reading First Program; OIG Investigation Draws to a Close, Title I Monitor (undated) (attached

as Ex. 1 to plaintiff's FOIA request, and Ex. A to Amended Complaint); see also Ex. K to

Amended Complaint.

On April 16, 2007, DOE responded to CREW's FOIA request and produced 421 pages of

documents, all responsive to item 4, which sought documents previously disclosed under FOIA

to Andrew Brownstein, Travis Hicks and/or the *Title I Monitor*.  DOE requested "clarification"

of items 1 through 3 of the request.  <u>See</u> Ex. B to Amended Complaint.

In its email response of May 21, 2007, CREW narrowed the terms of its original FOIA request by limiting it to 14 DOE components and eliminating the phrase "any other issue related to reading instruction or education" from item 1 of the request.  <u>See</u> Ex. F to Amended Complaint.

On June 8, 2007, DOE denied CREW's request for a waiver of fees.  <u>See</u> Ex. B to Amended Complaint.  According to DOE, CREW's original FOIA request was "overly broad." <u>See</u> <u>id.</u>  DOE did not weigh the narrowed language of CREW's amended, May 21, 2007 FOIA request.  <u>Id.</u>  DOE contended that Plaintiff had made "no connection between Department contacts with educational publishers while Reading First was being developed and the Department's later administration of the program." <u>See</u> Ex. I to Amended Complaint.  DOE also denied CREW's fee waiver request on the ground that "none of [CREW's] submissions demonstrates how the documents responsive to your request – other than Item 1 documents that specifically reflect Ms. Spellings' involvement or lack of involvement with Reading First before coming to the Department, if such documents exist – would enlighten the public as to either the alleged inconsistency or the broader subject of the Department's administration of the Reading First program."  Ex. I to Amended Complaint at 6.

On June 21, 2007, CREW appealed this denial.  <u>See</u> Ex. G  to Amended Complaint.  In its appeal, CREW explained that disclosure of the information CREW seeks "will contribute significantly to the public's understanding of how the Department of Education has operated the Reading First program, how the Department operates with respect to educational publishers, and related issues of literary policy."  <u>Id.</u> at 7.  CREW also noted that in denying CREW's request for

a fee waiver, DOE had failed to take into account the fact that CREW narrowed its original

request on May 21, 2007.  Id. at 4.  CREW further noted that although Secretary Spellings has

denied any involvement in the Reading First program while she was the president's domestic

policy advisor, publicly available documents contradict this claim.  Id. at 4-6.

By letter dated September 6, 2007, DOE denied CREW's appeal and affirmed its original

denial of CREW's request for a fee waiver.  See Ex. I to Amended Complaint.  CREW

accordingly amended its complaint[1] to add Counts IV and V, alleging that DOE failed to produce

records as required under the FOIA and improperly denied CREW's request for a fee waiver.

Dkt. Entry 15-2 (Oct. 2, 2007).  This Court dismissed Counts I through IV of plaintiff's

Amended Complaint by order dated March 10, 2008, leaving only Count V.

## ARGUMENT

### I.  PLAINTIFF HAS DEMONSTRATED AS A MATTER OF FACT AND LAW THAT IT IS ENTITLED TO A WAIVER OF FEES FOR THE PROCESSING OF ITS FOIA REQUEST.

#### A.  The Records Plaintiff Seeks Pertain to the Operations and Activities of the Government and Their Disclosure Will Contribute Significantly to Public Understanding of Government Operations and Activities.

Under the FOIA and DOE regulations, CREW must satisfy four factors to be entitled to a

fee waiver: 1) the subject matter of the requested records must concern identifiable operations or

activities of the government; 2) the requested records must be meaningfully informative in

relation to the subject matter of the request; 3) the disclosure must contribute to the

understanding of the public at large, as opposed to that of the individual requester or a narrow

---

[1] CREW filed its initial complaint in the instant litigation on May 23, 2007 challenging DOE's failure to comply with its obligations under the Federal Records Act.

segment of interested persons; and 4) the disclosure must contribute significantly to public

understanding of government operations or activities. 31 U.S.C. §§ 1353(a)(4)(A)(ii),(iii); 34

C.F.R. § 5.64(a).  DOE does not contest that CREW meets the first three prongs of this standard,

but claims that disclosure of the requested records will not contribute "significantly" to public

understanding of the subject matters of CREW's request.  See Ex. I to Amended Complaint.[2]

 To the contrary, CREW's request will unquestionably contribute "significantly" to public

understanding of the White House's involvement in the administration of the Reading First

program.  While there is no definitive bright-line standard under D.C. Circuit precedent for

determining what type of information is likely to give rise to a "significant" contribution to

public understanding under the FOIA, CREW's request falls well within the mainstream of those

requests courts have found satisfy the "significant contribution" prong for entitlement to a fee

waiver.  See, e.g., Physicians Comm. for Responsible Med. v. Dep't of Health and Human

Servs., 480 F.Supp.2d 119 (D.D.C. 2007) (plaintiff satisfied fee waiver requirements where

documents it was seeking would help public evaluate agency's compliance with legal

obligations);  Edmonds Inst. v. Dep't of the Interior, 460 F.Supp.2d 63 (D.D.C. 2006) (same).

 CREW has established that its FOIA request will contribute "significantly" to an

enhancement of public understanding of the operations or activities of the DOE.  Through its

request, CREW seeks to inform public understanding of how DOE has operated the Reading

First program and the role that the White House and educational publishers have had in

---

[2] DOE does not contest that CREW has exhausted its administrative remedies as to its fee waiver request.  Ex. I to Amended Complaint ("[t]his letter [denying CREW's appeal of DOE's initial determination that CREW is not entitled to a waiver of fees in connection with its FOIA request] constitutes exhaustion of the administrative remedies available to you under FOIA").  See also Wilbur v. C.I.A., 355 F.3d 675, 676 (D.C. Cir. 2004); 34 C.F.R. § 5.81.

developing and administering that program. Ex. G to Amended Complaint at 7; see also Exs. A, F to Amended Complaint. It is uncontested that all or nearly all of the documents that CREW has requested have not previously been made public.

This request is based in part on emails that DOE has already disclosed revealing that input from publishers to DOE officials critical of DOE's early administration of the Reading First program was forwarded directly to then-Assistant to the President for Domestic Policy Spellings for her review. Ex. K to Amended Complaint. The records requested by CREW will demonstrate the nature of and extent to which the White House and private publishers were involved in DOE's administration of the Reading First program and whether these kind of email exchanges were routine.

Ignoring this showing, DOE denied CREW's fee waiver request on the basis of two unsupportable conclusions. First, DOE concluded that Plaintiff has made "no connection between Department contacts with educational publishers while Reading First was being developed and the Department's later administration of the program." See Ex. I to Amended Complaint. To the contrary, CREW's original FOIA request included a published article revealing that Reid Lyon, former chief of child development and behavior for the National Institutes of Child Health and Human Development (and known as President Bush's unofficial "reading czar"), met "twice with groups of publishers at the department [of Education] at the request of the American Association of Publishers to discuss scientifically-based reading research (SBRR) and the kinds of funding mechanisms that were available to them." See Ex. 1 to Ex. A to Amended Complaint. SBRR is a component of the Reading First program. See id. As this article documents, there were contacts between DOE and educational publishers while the

Reading First program was "being developed."  Indeed, significant portions of plaintiff's FOIA request seek precisely the type of documents identified by DOE in its September 6th letter: documents that will establish the degree of ongoing contacts between departmental officials and representatives of publishing companies during the course of the administration of the Reading First program.

The nature, timing and frequency of these contacts and the extent to which the contacts influenced DOE's administration of the Reading First program on an ongoing basis are of unquestioned and lasting significance to the public's understanding of how DOE has discharged its statutory duties.  CREW's public disclosure of the requested documents "could inform members of the public all over the country" about the extent to which DOE was influenced by educational publishers in the development of the Reading First program.  Fitzgibbon v. Agency for Int'l Dev., 724 F.Supp. 1048, 1051 n.11 (D.D.C. 1989).  Publicly disclosed emails have already suggested preferential treatment on behalf of certain publishers.  See, e.g., U.S. Department of Education, Office of the Inspector General, Final Inspection Report: The Reading First Program's Grant Application Process, Sept. 2006, at 22 (quoting the Reading First Director as stating, "we need to ENSURE that when [Maryland] does its application . . . that [a reading program published by SRA/McGraw-Hill] is NOT relegated to supplemental status . . ."), available at http://www.ed.gov/about/offices/list/oig/aireports/i13f0017.pdf.

Second, DOE denied CREW's fee waiver request on the ground that "none of [CREW's] submissions demonstrates how the documents responsive to your request – other than Item 1 documents that specifically reflect Ms. Spellings' involvement or lack of involvement with Reading First before coming to the Department, if such documents exist – would enlighten the

public as to either the alleged inconsistency or the broader subject of the Department's administration of the Reading First program." Ex. I to Amended Complaint at 6. This assertion is factually unsupportable and ignores the evidence already in the public raising a serious question about the influence that numerous educational publishers had on Reading First. By asserting that Items 2 and 3 of CREW's request would not "enlighten the public" as to "the broader subject of [DOE's] administration of the Reading First program," DOE appears to argue that the publishing concerns named in CREW's request-- Houghton Mifflin, SRA/McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and Intellitools – are "unrelated" to the Reading First program. This is simply fallacious; all such publishers have been named in public documents in close association with the Reading First program.[3]

Similarly, while DOE discounts or dismisses any connections between the Reading First program and the Early Reading First program, "Scientifically Based Reading Research," "Science Based Reading Research," "SBRR," or DIBELS (Dynamic Indicators of Basic Early

---

[3] See U.S. Government Accountability Office, Reading First: States Report Improvements in Reading Instruction, but Additional Procedures Would Clarify Education's Role in Ensuring Proper Implementation by States (Feb. 2007) ("February 2007 GAO Report"), available at http://www.gao.gov/new.items/d07161.pdf, at 17, 18 (referring to Houghton Mifflin, SRA/McGraw Hill and Pearson Scott Foresman as reading program publishers approved by various states for use in connection with the Reading First program); Voyager website, http://www.voyagerlearning.com/ResearchStudyDocuments/Larkdale_Elementary_FCAT_2006.pdf ("Larkdale Elementary (FL) Ranked in Top 5% of District Reading First Schools after [using] Voyager Passport"); Cambium Learning website, http://www.cambiumlearning.com/cl_spotlightarticle.aspx?articleid=2001 ("In a discussion on Reading First and No Child Left Behind, Cynthia Henderson, a kindergarten teacher at Floyd Elementary School -- a Title I and Reading First school in Alabama -- credited the early literacy program Read Well and training in the program with the fact that 100 percent of her students were reading at grade level by the end of the school year. Developed by Sopris West Educational Services, Read Well is a research-based reading program ... "); Intellitools website, http://www.intellitools.com/pdf/funding_sheets/Read1st_BL.pdf ('NCLB's Reading First and Intellitools Reading: Balanced Literacy").

Literacy Skills), the evidence is to the contrary.  All such search terms as contained in CREW's

request have been publicly associated with Reading First.[4]  At the same time, by its statement,

DOE acknowledges that portions of plaintiff's request would in fact "*enlighten the public*,"[5] a

concession that substantially undermines its denial of CREW's fee waiver request.

### B.  DOE's Characterization of CREW's Request as Overbroad is Without Merit.

DOE also denied CREW's fee waiver appeal on the independent ground that CREW's

FOIA request is overbroad.  According to DOE, although CREW narrowed its original FOIA

request "in some respects," CREW's amended request is still "significantly broader in other

respects."  Ex. I to Amended Complaint at 5.  DOE relies specifically on the "responsive time

frame" of CREW's request, commencing January 20, 2001, because it pre-dates the initiation of

the Reading First program.  Id. at 5-6.  That CREW's request seeks documents dating back to

January 20, 2001, however, does not render CREW's amended request overbroad.

Under the caselaw, contentions by agencies that a particular FOIA request is overbroad

are disfavored absent clear, specific evidence put forward by the agency demonstrating

---

[4] See, e.g., Department of Education website at
http://www.ed.gov/programs/earlyreading/index.html ("On January 8, 2002, the President signed
into law the No Child Left Behind Act of 2001, which added two important new reading
programs to the Elementary and Secondary Education Act, Reading First and Early Reading
First . . ."); Department of Education website at
http://www.ed.gov/programs/readingfirst/support/index.html ("Reading First: Reading First
Support . . . This website is primarily focused on meeting the needs of existing Reading First
grantees and subgrantees, as well as other schools and LEAs wishing to implement reading
instruction that is grounded in scientifically based reading research (SBRR)."); February 2007
GAO Report at 15 ("By far, the most frequently approved assessment [under Reading First] was
Dynamic Indicators of Basic Early Literacy Skills (DIBELS), approved by 45 states . . .").

[5] Ex. I to Amended Complaint at 6 (emphasis added).

specifically how the agency would be burdened by the request at issue. <u>Public Citizen, Inc. v.</u>

<u>Dep't of Educ.</u>, 292 F. Supp. 2d 1, 6-7 (D.D.C. 2003) (FOIA request for a search of 25,000 paper

files for data "irregularly" stored by the agency not over broad where the defendants "merely

claim[ed] that searching these 25,000 paper files would be 'costly and take many hours to

complete'"); <u>Nation Magazine v. U.S. Customs Serv.</u>, 937 F. Supp. 39, 42 (D.D.C. 1996) (FOIA

request that would require search for a single memorandum among chronological files that were

neither indexed nor cross-indexed not over broad). DOE has not satisfied its burden of providing

"a sufficient explanation why a [given] search ... would be unreasonably burdensome." <u>Public</u>

<u>Citizen</u>, 292 F. Supp. 2d at 6. DOE has submitted no affidavits, declarations, or supporting

documents that would establish any sort of undue burden.

　　　Nor, contrary to DOE's claim, is plaintiff's amended request "significantly broader" than

its initial March 28, 2007 request. When CREW narrowed its original March 28 request, it cut in

half the number of departmental components subject to the request. And while CREW added

certain specific search terms – Margaret Lamontagne, Maureen DiMarco, and Randy Best

(*compare* Ex. A to Amended Complaint *with* Ex. F to Amended Complaint) – their additions

cannot reasonably be characterized as making CREW's request over broad. There is simply no

evidence, logic, or support for DOE's claim that the addition of three names obliterates any

narrowing effect of halving the departmental components subject to the request.

　　　DOE's over breadth finding is also based on its claim that CREW "added" to its original

FOIA request a request for "calendar references and meeting notes" in item number 3 of

CREW's original request. <u>See</u> Ex. I to Amended Complaint at 5. This is false; the original

request also expressly asked for *"daily agenda and calendars, information about scheduled*

12

*meetings and/or discussions...agendas for those meetings...[and] minutes of any such meetings and/or discussions*." See Ex. A to Amended Complaint for Declaratory Judgment and Injunctive Relief, at 2 (emphasis added).[6]

Finally, that the time frame specified in plaintiff's request commences on January 20, 2001, a fact noted by DOE in framing its over breadth argument, is plainly not a sign of over breadth. Rather, the January 20, 2001 date was selected to capture all documents that would add to public understanding of DOE's administration of the Reading First program, including in its planning stages. Such documents are likely to reflect discussions of any proposals under consideration and the degree to which outside influences affected the structure and rollout of the Reading First program.[7]

_____

[6] DOE has relatedly asserted that CREW's FOIA request is over broad because some of the records CREW has requested, reflecting communications by DOE officials about educational publishers, may involve DOE activities other than DOE's administration of the Reading First program. See Ex. I to Amended Complaint at 6. This contention is unavailing. To the extent records requested by CREW go beyond Reading First to involve other, related DOE activities they will still shed light on the operations of the federal government. And to the extent responsive documents include material and discussions completely unrelated to the subject matter of CREW's request they would properly be considered as nonresponsive. The mere existence of any such nonresponsive documents in otherwise responsive materials, however, does not provide a proper basis to deny CREW a fee waiver.

[7] There are grounds to question DOE's good faith compliance with its FOIA obligations beyond the completely nonmeritorious basis for its fee waiver denial. On April 15, 2008, DOE advised CREW that it does "not believe" CREW is entitled to a minimum of two hours of search time and 100 pages of copying in response to its FOIA request. See Exhibit A at 3. This assertion completely contravenes DOE regulations, which provide that for those requesters not seeking records for a commercial use, "the first two hours of search time are provided without charge" and there is no duplication fee "for the first 100 pages . . .". 5 C.F.R. §§ 5.60(a)(1)(I); 5.60(a)(3). See also 5 U.S.C. (4)(A)(iv)(II) (same).

13

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for summary judgment should be granted

and DOE should be ordered to grant plaintiff a fee waiver.

Respectfully submitted,

  /s/
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
William C. Holmes
(D.C. Bar No. 495186)
Citizens for Responsibility and
  Ethics in Washington
1400 Eye St. NW., Suite 450
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020
Attorneys for Plaintiff

April 24, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND     :
ETHICS IN WASHINGTON,               :
                                    :
                                    :
        Plaintiff,                  :
                                    :
    v.                              :       Civil Action No. 1:07-cv-00963 (RMU)
                                    :
U.S. DEPARTMENT OF EDUCATION,       :
                                    :
                                    :
        Defendant.                  :
_____ :


**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**


        Pursuant to Fed. R. Civ. P. 56, LCvR7(h), and LCvR56.1, plaintiff Citizens for

Responsibility and Ethics in Washington ("CREW") makes the following statement of material

facts not in genuine dispute:

        1.  By letter dated March 28, 2007, plaintiff requested under the Freedom of Information

Act ("FOIA") that the Department of Education ("DOE") produce records reflecting

communications by or between specific government officials and pertaining to the Reading First

program and to several named publishing companies.  See Ex. A to Amended Complaint.

Plaintiff also requested records previously disclosed under FOIA to Andrew Brownstein, Travis

Hicks and/or the *Title I Monitor*.  Id.

        2.  Plaintiff also requested a waiver of fees associated with the processing of its request.

Plaintiff explained that the records it seeks are "likely [to] contribute to a better understanding of

relevant government procedures by CREW and the general public in a significant way." Ex. A

to Amended Complaint. Plaintiff further explained that the records are "likely to contribute to

the public's understanding of the extent of White House involvement in the administration of the

Reading First program, an issue on which the public record is unclear." Id. Plaintiff additionally

explained that it is a non-profit corporation that uses a combination of research, litigation and

advocacy to advance its mission of protecting citizens' right to be aware of the activities of

government officials and to ensuring the integrity of those officials. Id. Plaintiff also stated that

it would analyze all information responsive to its request and "likely share its analysis with the

public, either through memorandums or reports." Id.

     3. Preceding Plaintiff's FOIA request were reports in the media that current DOE

Secretary Margaret Spellings had made statements at odds with emails and statements by a

former DOE appointee concerning the extent of Secretary Spellings' involvement in the Reading

First Program, and whether Secretary Spellings was involved in the administration of the

program before she became Secretary in January 2005. See Andrew Brownstein and Travis

Hicks, Congress Grills Spellings on Reading First Program; OIG Investigation Draws to a Close,

Title I Monitor (undated) (attached as Ex. 1 to plaintiff's FOIA request, see Ex. A to Amended

Complaint); see also Ex. K to Amended Complaint.

     4. On April 16, 2007, the Department of Education responded to CREW's FOIA request.

DOE produced 421 pages of documents, all responsive to item 4 of CREW's request, documents

previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the *Title I

Monitor*. DOE requested "clarification" for items 1 through 3 of CREW's FOIA request. See

Ex. B to Amended Complaint.

5.  By email dated May 21, 2007, CREW narrowed the terms of its original FOIA request by limiting the scope of the request to 14 DOE components and eliminating the phrase "any other issue related to reading instruction or education" from item 1 of its FOIA request.  Ex. F to Amended Complaint.

6. CREW filed its initial complaint in the instant litigation on May 23, 2007.

7. On June 8, 2007, DOE denied CREW's request for a waiver of fees.  <u>See</u> Ex. B to Amended Complaint.  DOE characterized CREW's original FOIA request as "overly broad," but did not weigh the language of CREW's amended, FOIA request of May 21, 2007.  <u>Id.</u>

8. CREW appealed DOE's denial of CREW's request for a fee waiver via an appeal dated June 21, 2007.  <u>See</u> Ex. G  to Amended Complaint.

9. On September 6, 2007, DOE wrote to CREW, acknowledging that DOE's June 8 letter was a denial of CREW's March 28 request, and again denying CREW's request for a fee waiver.  <u>See</u> Ex. I to Amended Complaint.

10. CREW then amended its pending complaint in the instant matter, adding Counts Four and Five, alleging that DOE failed to produce records as required under FOIA and improperly denied CREW's request for a fee waiver.  Dkt. Entry 15-2 (Oct. 2, 2007).

11.  By letter dated April 15, 2008, DOE's counsel informed CREW that DOE does "not believe" that CREW is entitled to a minimum of two hours of search time and 100 pages of copying in response to its FOIA request.  <u>See</u> Exhibit A, at 3.

Respectfully submitted,

_____/s/_____

Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
William C. Holmes
(D.C. Bar No. 495186)
Citizens for Responsibility and
  Ethics in Washington
1400 Eye St. NW., Suite 450
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

April 24, 2008

4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND  :
ETHICS IN WASHINGTON,            :
                                 :
                                 :
            Plaintiff,           :
                                 :
      v.                         :        Civil Action No. 1:07-cv-00963 (RMU)
                                 :
U.S. DEPARTMENT OF EDUCATION,    :
                                 :
                                 :
            Defendant.           :
_____:

# [PROPOSED] ORDER

Upon consideration of Plaintiff's Motion for Summary Judgment, Defendant's

Opposition thereto and the entire record herein, and for the reasons explained in the

Memorandum Opinion issued on this date, it is hereby

**ORDERED** that Plaintiff's motion be, and hereby is, **GRANTED**.


Dated: _____                      _____
                                        RICARDO M. URBINA
                                        United States District Court Judge