## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND ETHICS)
IN WASHINGTON,                        )
                                      )
    Plaintiff,                  )
                                      )
    v.                          )    Case No. 1:07CV00963-RMU
                                      )
UNITED STATES DEPARTMENT OF           )
EDUCATION,                            )
                                      )
    Defendant.                  )
_____)

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

After this Court's dismissal of Counts One through Four of the Amended Complaint, the only claim remaining in this action is Count Five, the claim that the Department of Education ("Department" or "Defendant") improperly denied Citizens for Responsibility and Ethics in Washington's ("Plaintiff" or "CREW") request for a waiver of the fees to process its Freedom of Information Act ("FOIA") request. Specifically, Plaintiff claims that the Department erroneously determined that disclosure of the records sought would not contribute significantly to the public's understanding of the Department's operations, and that, therefore, Plaintiff was not entitled to a fee waiver. In an effort to resolve part of the dispute, the Department agreed to expand a search already underway pursuant to stipulation of these same parties in another pending FOIA action to include one of the three categories of documents requested in the FOIA request at issue here. Thus, the sole question for the Court is whether the Department properly refused to waive the fees associated with processing the remaining two categories because their disclosure would not

contribute significantly to the public's understanding.  As evident from the broad description of those categories, that question should be answered in the affirmative.

As presently worded, Plaintiff's request seeks all communications and contacts between the Department and any employee of certain educational publishers, and all documents that mention or relate to such communications and contacts.  That request does not even identify a subject about which the public's understanding *could* be enhanced by disclosure.  Plaintiff nevertheless contends that disclosure of the requested records will "shed light on the operations of the federal government."  Conclusory assertions of a significant public contribution, however, are insufficient as a matter of law to warrant a fee waiver.  Since Plaintiff refused the Department's recent offer to engage in discussions to narrow Plaintiff's request, the Department now moves for entry of judgment in its favor (and denial of Plaintiff's Motion for Summary Judgment) on the narrow fee waiver issue that remains in this action.

## FACTUAL BACKGROUND

On March 28, 2007, Plaintiff submitted a FOIA request to the Department seeking four broad categories of documents:

(1)  "All communications from any Department office, including any and all field offices, to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings, that mention or relate to Reading First, 'Science Based Reading Research'/'SBRR,' DIBELS, or any other issue related to reading instruction or education";

(2) "All Department contacts or communications, including calendar references and meeting notes, with educational publishers, their executives, employees, consultants, or contractors.  The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, and Cambium Learning, Sopris West, and IntelliTools.";

2

(3) "All Department contacts or communications that *mention or relate to* contacts with educational publishers, their executives, or employees.  The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools"; and

(4) "To the extent not included in the above request, . . . all documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the *Title I Monitor*."

Declaration of Maria-Teresa Cueva ("Cueva Decl.") Ex. A at 1-2 (Plaintiff's March 28, 2007 FOIA Request).  Plaintiff requested that the fees associated with processing its request be waived because the records sought "[we]re likely to contribute to the public's understanding of the extent of White House involvement in the administration of the Reading First program."  *See* Cueva Decl. Ex. A at 3 (Plaintiff's March 28, 2007 FOIA Request).

By letter dated April 16, 2007, the Department provided Plaintiff with a CD containing documents responsive to Item 4, requested clarification on the records sought in Items 1-3, and denied Plaintiff's request for a fee waiver.  The Department explained that to be eligible for a fee waiver, Plaintiff must demonstrate as to the information requested that "(1) disclosure . . . [is] in the public interest because the information primarily benefits the general public and is likely to contribute significantly to public understanding of the operations or activities of the government; and (2) disclosure . . . [is] not [] primarily in the commercial interest of the requester."  Cueva Decl. Ex. B at 2 (April 16, 2007 Fee Waiver Denial).  The Department further explained that in deciding whether requirement (1) is satisfied, four factors are considered:

1.  The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government";

2.  In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the

3

requested information must be meaningfully informative in relation to the subject
matter of the request;

3.  The disclosure must contribute to the "understanding of the public at large," as
opposed to that of the individual requester or a narrow segment of interested
persons; and

4.  The disclosure must "contribute significantly" to public understanding of
government operations or activities.

Cueva Decl. Ex. B at 2 (April 16, 2007 Fee Waiver Denial).  Applying these factors to Plaintiff's

fee waiver request, the Department determined that Plaintiff had not satisfied "the third and

fourth elements of the public interest prong of the statutory requirement."  Cueva Decl. Ex. B at

3 (April 16, 2007 Fee Waiver Denial).  Plaintiff was advised that "[o]nce [the Department]

receive[s] your clarification [on Items 1-3] and the issues regarding charges are resolved, we will

begin processing your request."  Cueva Decl. Ex. B at 5 (April 16, 2007 Fee Waiver Denial).

At Plaintiff's request, agency personnel participated in a teleconference with Plaintiff to

discuss its FOIA request.  *See* Cueva Decl. ¶ 10.  Plaintiff did not understand why the

Department could not process its request as written and apparently was under the misimpression

that the Department had centralized electronic search capabilities.  *See* Cueva Decl. ¶ 10.  In an

effort to correct that misimpression, the teleconference participants explained that to fulfill

Plaintiff's request for "[a]ll Department . . . communications . . . with educational publishers,

their executives, employees, consultants, or contractors," every Department employee's email

account would have to be searched "one at a time."  *See* Cueva Decl. ¶ 10.  Plaintiff was further

advised that, even assuming the Department had the resources to conduct such a broad search,

the agency could not capture all such communications because without individual names, the

Department could not identify publishers' "executives, employees, consultants, or contractors."

4

*See* Cueva Decl. ¶ 10.   Plaintiff inquired what it needed to do to narrow its request sufficiently

and was advised to review the request again in light of the discussion.  Cueva Decl. ¶ 10.

The Department also agreed to allow Plaintiff to submit additional information in support

of its fee waiver request, which Plaintiff did by email dated May 11, 2007.  Cueva Decl. Ex. C

(CREW's May 11, 2007 Email).  That supplemental information explained that Plaintiff

allegedly was "seeking information that will add significantly to the public's understanding of the

administration of a six billion dollar federal program aimed at helping some of the most

vulnerable members of our society."  Cueva Decl. Ex. C (CREW's May 11, 2007 Email).  As to

Items 2 and 3 of Plaintiff's request, "relating to contacts with educational publishers," Plaintiff

only suggested that "very little is known about this topic."  Cueva Decl. Ex. C (CREW's May 11,

2007 Email).

By separate email dated May 21, 2007, Plaintiff purported to address the second issue that

precluded the Department from processing Plaintiff's FOIA request – its failure to "reasonably

describe the records sought."  *See* Cueva Decl. Ex. E (CREW's May 21, 2007 Email).

Specifically, Plaintiff revised Items 1, 2, and 3 of its request as follows:

(1)  All communications of [fourteen specified Department][1] offices to, from, or
referencing any member of the White House staff, including, but not limited to,
then-Domestic Policy Advisor Margaret Spellings or Margaret LaMontagne, that
mention or relate to Reading First, Early Reading First, "Scientifically Based
Reading Research"/"Science Based Reading Research"/"SBRR" or DIBELS.

---

[1]  The identified offices are: "1) The Secretary, 2) Senior Counselor, 3) Chief of Staff,
4) Deputy Secretary, 5) Management Improvement Team, 6) Elementary and Secondary
Education, 7) Institute of Education Sciences, 8) Planning Evaluation and Policy Development,
9) Civil Rights, 10) Innovation and Improvement, 11) Special Education and Rehabilitative
Services, 12) Management, 13) Chief Financial Officer and 14) Communications and Outreach."
Cueva Decl. Ex. E (CREW's May 21, 2007 Email).

(2)  All communications of [fourteen specified Department] offices, including calendar references and meeting notes, with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and Intellitools.

(3)  All communications of [fourteen specified Department] offices, including calendar references and meeting notes, that mention or relate to contacts with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited, to Randy Best), Cambium Learning, Sopris West, and Intellitools.

Cueva Decl. Ex. E (CREW's May, 21 2007 Email).  Without awaiting a response to that email, Plaintiff filed the instant action under the Federal Records Act on May 23, 2007.

By letter dated June 8, 2007, the Department again "encourage[d Plaintiff] to narrow the scope of [its] request so that we may provide you with the requested information as expeditiously as possible." Cueva Decl. Ex. F at 3 (June 8, 2007 Fee Waiver Denial).  That letter, however, primarily addressed Plaintiff's fee waiver request in light of "all of the information [Plaintiff] submitted in support of [its] fee waiver." Cueva Decl. Ex. F at 2 (June 8, 2007 Fee Waiver Denial).  Based on Plaintiff's supplemental submission, the Department concluded that Plaintiff satisfied the "third element of the public interest prong of the fee waiver analysis" but still failed to satisfy its "burden with regard to the fourth element of the public interest prong of the fee waiver analysis, i.e., the requirement that disclosure of the records in question 'contribute significantly' to public understanding of government operations or activities." Cueva Decl. Ex. F at 2 (June 8, 2007 Fee Waiver Denial).  The Department explained that it is "apparent that many of the documents responsive to items 1 through 3 of your FOIA request – implicating contacts and communications on a range of educational topics – have nothing to do with the Reading First

program, . . . [and] equally clear that the disclosure of such materials could in no way enhance

public understanding of the Department's administration of that program, much less do so

significantly." Cueva Decl. Ex. F at 2 (June 8, 2007 Fee Waiver Denial).

Plaintiff appealed that decision on June 21, 2007. Cueva Decl. Ex. G (CREW's June 21,

2007 Administrative Appeal). Much of Plaintiff's submission on appeal was addressed to Item 1

of Plaintiff's FOIA request, which is no longer at issue in this lawsuit.[2] As to Items 2 and 3,

which sought records related to contacts with educational publishers, Plaintiff contended that

they "will likely contribute significantly to the public's understanding of the extent to which

publishers were in contact with Department and administration personnel during the Reading

First development and grant process." Cueva Decl. Ex. G at 6 (CREW's June 21, 2007

Administrative Appeal). Acknowledging that Items 2 and 3 were not specific to the Reading

First program, Plaintiff explained that "to the extent these records go beyond Reading First, they

will still shed light on the operations of the federal government." Cueva Decl. Ex. G at 7

(CREW's June 21, 2007 Administrative Appeal).

---

[2] In a separate FOIA action against the Department, *CREW v. Department of Education*, Case No. 07-2055, the parties filed a joint stipulation on April 2, 2008 to stay those proceedings to allow the Department sufficient time to conduct a search the parties negotiated. *See* Cueva Decl. Ex. I (Joint Status Report in *CREW v. Department of Education*, Case No. 07-2055(JDB)). Pursuant to that stipulation, the Department is already conducting a search for White House communications relating to an aspect of the Reading First and Early Reading First programs. Since Item 1 also seeks such communications relating to aspects of those programs, the Department, without waiving any defenses here, decided to include the terms from Item 1 in the search already underway and thereafter produce any non-exempt, responsive information yielded by that search. Cueva Decl. Ex. J at 1 (Letter from Jacqueline Coleman Snead to William Holmes (April 15, 2008)). The Department expects to complete that search in early June. Accordingly, as to Item 1, Plaintiff's fee waiver claim is moot. *See, e.g., Hall v. Central Intelligence Agency*, 437 F.3d 94, 99 (D.C. Cir. 2006) (concluding that "case is moot" where plaintiff "already has 'obtained everything that [it] could recover . . . by a judgment of this court in [its] favor'").

Regarding that argument as "conclusory and utterly lacking in specificity sufficient to meet the requester's burden" and Plaintiff's other arguments on appeal as "unpersuasive," the Department denied Plaintiff's appeal and upheld the denial of the fee waiver. Cueva Decl. Ex. H at 6 (Sept. 6, 2007 Denial of Fee Waiver). Plaintiff was advised of its right to seek judicial review of the Department's fee wavier denial and thereafter sought such review by amending the Complaint to include Count V. *See* Amended Complaint (filed Sept. 20, 2007) [Dkt. No. 14-2].

On October 16, 2007, the Department answered Count V and moved to dismiss Counts I-IV. *See* Defendants' Motion to Dismiss Claims One Through Four of the Amended Complaint (filed Oct. 16, 2007) [Dkt. No.18]. This Court granted that motion on March 10, 2008. *See* Memorandum Opinion (filed Mar. 10, 2008) [Dkt. No. 24]. In an effort to resolve the sole remaining claim in this action without further involvement of the Court, defense counsel contacted Plaintiff's counsel to inquire "whether CREW was interested in discussing ways to narrow [its] . . . requests," especially in light of the Department's decision to include the search terms for Item 1 in a search that already was underway pursuant to a stipulation of the parties here in *CREW v. Department of Education*, Case No. 07-2055(JDB). *See* Cueva Decl. Ex. J at 2 (Letter from Jacqueline Coleman Snead to William Holmes (April 15, 2008)); *see also* Cueva Decl. Ex. I (Joint Status Report in *CREW v. Department of Education*, Case No. 07-2055(JDB)). Plaintiff was unwilling to discuss narrowing the scope of Items 2 and 3, and thereafter moved for summary judgment on its claim that the Department improperly denied Plaintiff's fee waiver request. The Department hereby opposes that motion and cross-moves for summary judgment on that claim.

**ARGUMENT**

**PLAINTIFF IS NOT ENTITLED TO A FEE WAIVER**

Plaintiff has not demonstrated entitlement to a waiver of the fees to process its request for all documents that relate to or mention a communication or contact between the Department and an employee of an educational publisher.  Under FOIA, "[d]ocuments shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii). The requester "bears the burden of establishing these two elements in the administrative record," and "the request must be formulated with reasonable specificity . . . based on more than conclusory allegations." *Jarvik v. Central Intelligence Agency*, 495 F. Supp. 2d 67, 71 (D.D.C. 2007) (internal quotations omitted); *see also National Treas. Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C. Cir. 1987).  An agency's finding that a fee waiver does not satisfy the public interest standard should be upheld "unless the finding is arbitrary and capricious."  *Id.*  Where, as here, "a public interest is asserted but not identified with reasonable specificity," it is "not arbitrary and capricious for an agency to infer . . . that any benefit to the public from disclosure and waiver 'would be, at best, indirect and speculative'" and accordingly deny the fee waiver.  *Id.*

**A.     Plaintiff's Failure to Demonstrate Its Entitlement to a Fee Waiver Is Due in Large Part to the Overbreadth of Its FOIA Request.**

Plaintiff's FOIA request, even as modified, does not reasonably describe the records sought and clearly contributes to Plaintiff's inability to articulate the significant public contribution their disclosure would make.  Significance is measured by the enhancement of the

9

public's understanding of a subject following disclosure. *See Judicial Watch v. Department of Justice*, 185 F. Supp. 2d 54, 62 (D.D.C. 2002) ("The public's understanding of the subject, as compared to the level of public understanding existing prior to the disclosure, must be enhanced by the disclosure to a significant extent." (internal quotations omitted)).  That measure assumes that there is a clear subject of the FOIA request.  Although Plaintiff at times suggests that the subject of its request is the Reading First program, Items 2 and 3 of its request, which are the only ones still at issue,[3] are not so limited.

Originally, those items sought "all Department documents and records dating from January 20, 2001, to the present in the following categories:"

> (2) All Department contacts or communications, including calendar references and meeting notes, with educational publishers, their executives, employees, consultants, or contractors.  The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, and Cambium Learning, Sopris West, and Intellitools.

> (3) All Department contacts or communications that *mention or relate to* contacts with educational publishers, their executives, or employees.  The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools.

---

[3]  As with its submissions in the administrative proceedings, Plaintiff's Motion for Summary Judgment is largely devoted to discussing the significant public contribution that allegedly would result from disclosure of the records requested in Item 1, which seeks communications between the Department and White House staff related to Reading First, Early Reading First, Scientifically Based Reading Research ("SBRR") or DIBELS.  *See* Plaintiff's Motion for Summary Judgment ("Pl. Mot.") at 7-11 (filed Apr. 24, 2008) [Dkt. No. 25].  The Department advised Plaintiff before it moved for summary judgment, that the Department had decided to include those search terms in a search already underway in another FOIA action brought by Plaintiff seeking White House communications related to a different aspect of the Reading First and Early Reading First programs.  *See* Cueva Decl. Ex. J at 2 (Letter from Jacqueline Coleman Snead to William Holmes (April 15, 2008)).  Plaintiff's Motion inexplicably does not disclose that fact, which renders Plaintiff's claim moot as to Item 1.

Cueva Decl. Ex. A at 1(Plaintiff's March 28, 2007 FOIA Request) (emphasis in original).   By

email dated May 21, 2007, Plaintiff purported to narrow both categories by replacing "All

Department" with a list of fourteen Department offices and eliminating the phrase "includes, but

is not limited to."   *See* Cueva Decl. Ex. E (CREW's May 21, 2007 Email).   Even as revised,

however, Items 2 and 3 do not reasonably describe the records sought as required by FOIA.[4]

*Compare* Cueva Decl. ¶ 13 (explaining that Plaintiff's revisions were "insufficient to assist

Department employees in searching for records, and remains insufficient for processing under the

FOIA") *with Dale v. Internal Revenue Serv.*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (explaining

that, in contrast, a sufficient description "enable[s] a professional employee of the agency . . .

familiar with the subject area of the request to locate the record[s] with a reasonable amount of

effort").   Rather, Plaintiff's request is the type of request that courts have held is "too broad."   *Id.*

(citing cases); *e.g., Mason v. Callaway*, 554 F.2d 129, 131 (4th Cir. 1977) (explaining that

request for "all correspondence, documents, memoranda, tape recordings, notes, and any other

material pertaining to the atrocities committed against plaintiffs, . . . including, but not limited to,

the files of [various government offices] . . . typifies the lack of specificity that Congress sought

to preclude").   As this Court previously has stated, a court "will not compel an agency to

subsidize a fishing expedition."   *Jarvik*, 495 F. Supp. 2d at 73.   Since that would be the effect of

the Department's waiving its fees to process Items 2 and 3, the Court should uphold the

Department's fee waiver denial.

---

[4]   Although Plaintiff is well aware that the Department has not begun processing Items 2 and 3 and therefore has not determined whether it has responsive documents, (*see* Cueva Decl. Ex. B & ¶ 23), Plaintiff erroneously contends that "[i]t is uncontested that all or nearly all of the documents that CREW has requested have not previously been made public."  Pl. Mot. at 8.

**B.    Plaintiff's Fee Waiver Request Does Not Adequately Explain the Connection Between the Records Requested and a Significant Contribution to the Public's Understanding.**

The Court alternatively should uphold the Department's fee waiver denial based on Plaintiff's waiver request itself.  A fee waiver request cannot rest on conclusory allegations of a significant public contribution.  *See Jarvik*, 495 F. Supp. 2d at 71 (explaining that "the request must be formulated with reasonable specificity . . . based on more than conclusory allegations" (internal quotations omitted)); *National Treasury*, 811 F.2d at 647 (finding it "difficult to discern a basis for [plaintiff's] assertions of a public interest" with "only conclusory allegations of the point of the requests before it"); *see also Judicial Watch*, 122 F. Supp. 2d at 10.  Such allegations are all that Plaintiff advanced in support of its fee waiver request as to Items 2 and 3, and thus the Court should uphold the Department's fee waiver denial.

**1.    Plaintiff's Submissions to the Department Did Not Justify a Waiver of the Fees to Process Items 2 and 3.**

None of the submissions to the Department in support of Plaintiff's fee waiver request described with reasonable specificity any significant contribution to the public's understanding from disclosure of records responsive to Items 2 and 3.  *See, e.g.,* Cueva Decl. Ex. C (CREW's May 11, 2007 Email) (explaining that "[w]ith respect to items 2 and 3 of CREW's request, relating to contacts with educational publishers, very little is known about this topic beyond an email discussed by Title I Monitor and included on the CD provided to CREW in response to item 4 of our request"); Cueva Decl. Ex. G at 6 (CREW'S June 21, 2007 Administrative Appeal) ("The records CREW seeks in items 2 and 3 will likely contribute significantly to the public's understanding of the extent to which publishers were in contact with Department and

12

administration personnel during the Reading First development and grant process.").[5]  Lest the

Court conclude from those proffered explanations that Items 2 and 3, in context, are limited to

the Reading First program, Plaintiff disavows any such limitation.  *See* Cueva Decl. Ex. G at 6

(CREW's June 21, 2007 Administrative Appeal); *see also* Pl. Mot. at 13 n.6 (reaffirming

disavowal of any subject-matter limitation on Items 2 and 3).  Plaintiff contends that to the extent

those Items "go beyond Reading First" – and clearly they do – disclosure "will still shed light on

the operations of the federal government, and therefore meet the public interest requirement for a

fee waiver."  Cueva Decl. Ex. G at 7 (CREW's June 21, 2007 Administrative Appeal).  Thus, on

the record before it, the Department understandably was unable to discern a basis for Plaintiff's

assertion of a significant public contribution from that disclosure and therefore properly denied

Plaintiff's fee waiver request.  *See, e.g.,* Cueva Decl. Ex. F at 2 (June 8, 2007 Fee Waiver Denial)

(concluding that because "many of the documents responsive to items 1 through 3 of your FOIA

request – implicating contacts and communications on a range of educational topics – have

nothing to do with the Reading First program, it is equally clear that the disclosure of such

materials could in no way enhance [the] public understanding"); Cueva Decl. Ex. H at 6 (Sept. 6,

2007 Denial of Fee Waiver) (concluding that Plaintiff's argument that "to the extent the records

sought go beyond Reading First, they will shed light on the operations of the federal

government" was "conclusory and utterly lacking in specificity sufficient to meet the requester's

burden").

---

[5]  Plaintiff raised this particular argument for the first time in its June 21, 2007 *appeal* of
the Department's fee waiver denial.  *See* Cueva Decl. Ex. H at 6 (Sept. 6, 2007 Denial of Fee
Waiver).

This Court has held that such a waiver request "misses the mark" because "[i]f the courts allowed individuals to strategically word fee waiver requests to characterize any agency [record] as government activity, then requesters could obtain all agency records without cost." *Jarvik*, 495 F. Supp. 2d at 73. FOIA, however, clearly requires more. *See Judicial Watch*, 122 F. Supp. 2d at 9 ("a requester must do more to be eligible for a fee waiver than simply assert that its request somehow relates to government operations"). "When an individual submits a fee waiver request, it is incumbent upon [the requester] to clear away any inferences that could cast doubt on [] eligibility." *Jarvik*, 495 F. Supp. 2d at 72. Where, as here, Plaintiff has failed to do so, "[t]he court will not deign to read the mind and motives of [the] requester." *Id.* at 73. Rather, in those circumstances, courts should uphold the agency's fee waiver denial. *See, e.g., id.* (upholding agency's fee waiver denial and entering judgment in favor of the agency where fee request claimed that disclosure would "help the public better evaluate the CIA and determine if it is complying with its stated mission"); *National Treasury*, 811 F.2d at 647 ("When a public interest is asserted but not identified with reasonable specificity, and circumstances do not clarify the point of the requests, it is not arbitrary or capricious for an agency to infer . . . [that a]ny benefit to the general public that might flow from furnishing the requested information is less than obvious" and on that basis deny the fee waiver). Since that is the situation here, the Court should uphold the Department's fee waiver denial.

> **2.     Plaintiff Cannot Remedy Its Insufficient Fee Waiver Request Before This Court.**

Plaintiff purports to bolster its argument that the Department's fee waiver denial was improper with citations to materials not submitted with its fee waiver request. *See, e.g.,* Pl. Mot. at 9 (citing quote from Reading First Director in government report expressing concern that program published by SRA/McGraw-Hill not be "relegated to supplemental status"); Pl. Mot. at 10 n.3 (citing various website links allegedly naming educational publishers "in close association with the Reading First program"); *e.g.,* http://www.voyagerlearning.com/ReasearchStudy Documents/Larkdale_Elementary_FCAT_2006 (announcing that Larkdale Elementary ranked in the top 5% of district's Reading First schools after using Voyager Passport). Even if such materials were sufficient to demonstrate the requisite significant public contribution – and they clearly are not[6] – that attempt to "fashion a plausible public benefit theory come[s] too late." *National Treasury*, 811 F.2d at 648. The reasonableness of an agency's fee waiver denial "depends on the information before it at the time of its decision." *Id.* A requester's "failure to demonstrate a public interest before the agency cannot be remedied by doing so before a court." *Id.* Since, as already discussed, Plaintiff failed in its demonstration before the agency, the website materials Plaintiff now cites to the Court are beside the point.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment, grant Defendant's Cross Motion for Summary Judgment, and enter judgment in favor of the Department.

---

[6] As discussed earlier, Items 2 and 3 of Plaintiff's request are not specific to either the Reading First or Early Reading First programs.

15

Dated: May 8, 2008                          Respectfully submitted,

OF COUNSEL:                                 GREGORY G. KATSAS
MARCELLA GOODRIDGE                          Acting Assistant Attorney General,
Attorney                                    Civil Division
U.S. Department of Education

                                            JEFFREY A. TAYLOR
                                            United States Attorney

                                            ELIZABETH J. SHAPIRO
                                            Assistant Branch Director,
                                            Federal Programs Branch

                                             s/ Jacqueline Coleman Snead
                                            JACQUELINE COLEMAN SNEAD
                                            (D.C. Bar No. 459548)
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue, N.W., Rm 7214
                                            Washington, DC 20530
                                            Tel: (202) 514-3418
                                            Fax: (202) 616-8470
                                            jacqueline.snead@usdoj.gov

                                            **Counsel for the Department of Education**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND ETHICS)
IN WASHINGTON,                          )
                                        )
    Plaintiff,       )
                                        )
    v.               )    Case No. 1:07CV00963-RMU
                                        )
UNITED STATES DEPARTMENT OF             )
EDUCATION,                              )
                                        )
    Defendant.       )
_____ )

## ORDER

Upon consideration of Plaintiff's Motion for Summary Judgment, Defendant's Cross

Motion for Summary Judgment, the respective Oppositions thereto, and the complete record in

this case, it is hereby

ORDERED that Plaintiff's motion is denied; and

ORDERED that Defendant's motion is granted.  Judgment is entered in favor of the

Department of Education.

SO ORDERED.

_____
Hon. Ricardo M. Urbina
United States District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2008, a true and correct copy of the foregoing Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment was electronically filed through the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available for viewing on that system.

_____s/ Jacqueline Coleman Snead____
JACQUELINE COLEMAN SNEAD

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Citizens for Responsibility and Ethics in Washington, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 1:07-cv-00963 (RMU) |
| United States Department of Education, Margaret Spellings, in her official capacity as the Secretary of Education, Defendant. | ) ) ) ) ) ) | |

## DECLARATION OF MARIA-TERESA CUEVA

I, <u>MARIA-TERESA CUEVA</u>, declare and state as follows:

1.      I am a GS-0343-13 for the Regulatory Information Management Services (RIMS), Office of Management, U.S. Department of Education (Department).  I have been employed at the Department for 26 years.

2.      My current title is FOIA Public Liaison.  As a FOIA Public Liaison, my responsibilities include assigning, reviewing and processing requests for access to agency records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), *as amended.*

3.      This declaration is submitted in support of Defendant's cross-motion for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure.  All information contained herein is based upon my personal knowledge, or information furnished to me in my official capacity, and upon my personal review of the records at issue in this litigation.

**Department of Education's FOIA Policies/Procedures:**

4.     The Department's Chief FOIA Officer has delegated the authority for administration of the FOIA to RIMS.  The FOIA staff within RIMS provides Department-wide assistance for the management and implementation of the FOIA.  The FOIA staff assists Department employees in processing FOIA requests by providing technical advice and training, serving as coordinators and requester point-of-contacts for all Department principal offices, and other determinations under the FOIA.  The FOIA staff is responsible for oversight of the entire process, from intake of the request to release of responsive records under the FOIA.  This includes, but is not limited to, issuance of the written acknowledgement letters, coordinating responses among principal offices, collecting all responsive records and monitoring the redaction process, reviewing all fee waiver requests, assisting in the assessment of fees, preparing the release of the responsive records to the requester with an accompanying cover letter, and managing the Department's FOIA website and reading room.

5.     The Department follows the requirements of the FOIA and the Department's implementing regulations, located at 34 C.F.R. Subtitle A, Part 5, when processing a FOIA request.

**CREW's FOIA Request:**

6.     By letter dated March 28, 2007, the Citizens for Responsibility and Ethics in Washington (CREW) submitted a FOIA request (case number 07-00517-F) to RIMS seeking access to the following records dating from January 20, 2001 to the present:

> (1)     All communications from any Department office, including any and all field offices, to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings, that mention or relate to Reading First, "Science Based Reading

Research"/"SBRR," DIBELS, or any other issue related to reading instruction or education;

(2)    All Department contacts or communications, including calendar references and meeting notes, with educational publishers, their executives, employees, consultants, or contractors.  The list of education publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools;

(3)    All Department contacts or communications that *mention or relate to* contacts with education publishers, their executives, or employees.  The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools; (emphasis in original)

(4)    To the extent not included in the above request, please provide all documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the Title I Monitor.  [attached letter as Exhibit A]

A copy of CREW's FOIA request is attached hereto as Exhibit A.

7.    CREW's March 28, 2007 FOIA request also requested a waiver of all fees associated with processing its request for the records identified in paragraph 6 above.

8.    Once received, I reviewed the request and, after consulting with the Department's office of the General Counsel, determined that items (1), (2) and (3) of the request as written did not reasonably describe the records sought.  As presently worded, items (2) and (3) of CREW's request would yield an enormous volume of "responsive" documents because no specific subject matter or names of individuals are identified and it is not usual for educational publishers to contact the Department for any number of reasons.

9.    By letter dated April 16, 2007, the Department released to Mr. Daniel C. Roth, Counsel for the requester CREW, a CD containing 421 pages of documents responsive to item (4) of the March 28, 2007 request (i.e., documents regarding the reading First program that were previously disclosed under FOIA to the Title I Monitor).  The Department's April 16, 2007 letter

informed CREW that it had failed to reasonably describe the records sought for items (1) through

(3) of the request, and indicated that these items as presently written were too broad and general

for Department employees to identify and locate responsive records. The Department's April 16,

2007 letter also requested the needed clarification for items (1) through (3) of the request.

Additionally, this letter served as the Department's denial of CREW's request for a fee waiver,

as the requester did not provide sufficient information to justify such a waiver. Specifically, the

Department determined that the requester failed to meet elements (3) and (4) of the first statutory

requirement for a fee waiver (i.e. disclosure of the information is in the public interest) by

demonstrating that the disclosure would contribute to the understanding of the public at large and

that disclosure would contribute significantly to the public understanding of government

operations or activities, respectively. In sum, the letter informed CREW that until clarification is

received and the fee issue resolved, the Department could not begin processing the request. A

copy of the Department's April 16, 2007 letter is attached hereto as Exhibit B.

      10.     On May 9, 2007, at CREW's request, a teleconference took place between

Department personnel and Mr. Roth to discuss the March 28, 2007 request. During this

discussion, of which I was a participant, Department staff discussed with Mr. Roth the need for

CREW to narrow the request and generally explained the Department's electronic search

capabilities. Department staff explained to Mr. Roth that the Department does not have

centralized electronic search capabilities that allow us to search all electronic communications of

all relevant parties at the same time. Instead, the Department has only the capability to search

individual accounts one at a time. Department also explained that without specific names

associated with the White House and the named educational publishers in the request, the

Department's search would be limited to the names of those entities, which again would likely

retrieve a large volume of "responsive" documents.  During this teleconference, Department staff also agreed to informally allow CREW to submit additional information in order for it to subsequently reconsider the fee waiver request based on the supplemental information.  Mr. Roth also asked what was required to narrow the request.  Department staff suggested that he review the request again in light of the telephone discussion.

11.     On May 11, 2007, Mr. Roth on behalf of CREW submitted an informal fee waiver appeal via e-mail, as discussed during the May 9, 2007 teleconference.  Mr. Roth's e-mail provided the Department with supplemental information in support of CREW's fee waiver request. A copy of Mr. Roth's May 11, 2007 e-mail is attached hereto as Exhibit C.

12.     On May 14, 2007, Mr. Roth on behalf of CREW, submitted an e-mail requesting additional information.  In his message, Mr. Roth asked for (1) an estimate of the time it would take to process CREW's request if the request was not narrowed, and (2) an estimate of the time it would take to process the request if CREW narrowed the request and requested communications only within the Office of the Secretary and the Office of Elementary and Secondary Education.  A copy of Mr. Roth's May 14, 2007 e-mail is attached hereto as Exhibit D.

13.     On May 21, 2007, Mr. Roth on behalf of CREW, submitted an e-mail amending its original March 28, 2007 FOIA request.  However, CREW's revised request failed to sufficiently narrow the scope or reasonably describe the records sought.  I reviewed the request and, after consulting with the Department's office of the General Counsel, determined that the revised request was deficient because the May 21, 2007 e-mail maintained that CREW was looking for documents for the same expansive time period, January 20, 2001 to the present.  That beginning date, however, predates the enactment of both No Child Left Behind and the Reading

First Program, which came into existence on January 20, 2002.  Although the revised request

replaced the phrase "any Department office" with a list of 14 offices, that change did not

significantly narrow the request in terms of the number of Department personnel potentially

impacted by this request.  Moreover, CREW added additional search terms, Margaret

LaMontagne, Maureen DiMarco, Rand Best, and an additional program, the Early Reading First

program, to its revised request.  As a result, the May 21, 2007 e-mail was insufficient to assist

Department employees in searching for records, and remains insufficient for processing under

the FOIA.  A copy of Mr. Roth's May 21, 2007 e-mail is attached hereto as Exhibit E.

     14.     On May 22, 2007, CREW filed the Complaint in this case.


**CREW's Appeal of the Fee Waiver Denial:**

     15.     By letter dated June 8, 2007, the Department denied CREW's request for a fee

waiver after taking into account the supplemental information provided to the Department on

May 11, 2007.  Specifically, the Department determined that CREW met the third element of the

public interest prong of the fee waiver, based on the information contained in its May 11, 2007 e-

mail; however, CREW failed to meet the fourth element of the public interest prong.  The

Department's letter also informed CREW that "the broad scope of your request would require

significant time and resources to search for and review responsive records.  Under the

circumstances, we encourage you to narrow the scope of your request so that we may provide

you with the requested information as expeditiously as possible."  A copy of the Department's

June 8, 2007 letter is attached hereto as Exhibit F.

16.    By letter dated June 21, 2007, CREW appealed the Department's June 8, 2007 denial of its fee waiver request.  A copy of CREW's June 21, 2007 letter is attached hereto as Exhibit G.

17.    By letter dated September 6, 2007, the Department responded to CREW's appeal of the Department's fee waiver denial, dated June 21, 2007.  In the September 6, 2007, Mr. Michell Clark, former Assistant Secretary for the Office of Management upheld the Department's June 8, 2007 denial of CREW's fee waiver appeal.  A copy of the Department's September 6, 2007 letter is attached hereto as Exhibit H.

18.    The Department analyzed CREW's appeal arguments in light of its May 21, 2007 modification to its original March 28, 2007 request and determined that CREW failed to demonstrate how disclosure of the requested records would contribute significantly to the public's understanding of the Department's operations, and consequently did not meet its burden to justify entitlement to a reduction or waiver of fees.

19.    On September 20, 2007, CREW filed an Amended Complaint in this case.

**Current Status of CREW's FOIA Request:**

20.    To date, CREW has not provided sufficient clarification to its March 28, 2007 or May 21, 2007 modification to allow Department personnel to locate responsive documents with a reasonable amount of effort.  The March 28, 2007 request and the May 21, 2007 modification do not reasonably describe the records sought, such that even if there is a resolution of the fee waiver dispute, the Department cannot begin to search for responsive records until CREW clarifies the request.

21.     On or about March 28, 2008, defense counsel contacted Plaintiff's counsel to inquire whether CREW was interested in discussing ways to narrow the May 21, 2007 request. On April 4, 2008, Plaintiff informed Defendant that it was not interested in narrowing its request even though that course of action apparently was successful in another action involving the same parties, *CREW v. Department of Education*, Case No. 07-2055. A copy of the Joint Status Report filed in *CREW v. Department of Education*, Case No. 07-2055 (Apr. 2, 2008) is attached hereto as Exhibit I.

22.     By letter dated April 15, 2008, defense counsel informed Plaintiff's counsel that since the FOIA request in Case No. 07-2055 also seeks communications with the White House involving the Department's Reading First and Early Reading First programs, but related to a different topic, and Defendant is already conducting a search for White House communications pursuant to the Joint Status Report filed in *CREW v. Department of Education*, Case No. 07-2055(Apr. 2, 2008), the Department, without waiving any of its defenses in *CREW v. Department of Education*, Case No. 07-963, has decided to include the terms of item (1) of CREW's May 21, 2007 modified request in the search that already is underway. Defendant informed Plaintiff that the search would be limited to those offices reasonably likely to have White House correspondence related to the Reading First and Early Reading First Programs, and that Defendant expects to complete is search in early June, and thereafter, will produce any non-exempt, responsive information yielded by that search. A copy of defense counsel's letter is attached hereto as Exhibit J.

23.     The Department has not begun processing CREW's request for items (2) and (3) of its May 21, 2007 modified request and consequently, has not determined what agency records, if any, may be responsive to the request.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 8 day of May 2008 in Washington, D.C.

Maria-Teresa Cueva
FOIA Public Liaison
Office of Management/RIMS
U.S. Department of Education

# Exhibit A

# CREW | citizens for responsibility and ethics in washington

March 28, 2007

U.S. Department of Education
Office of Management
Regulatory Information Management Services
400 Maryland Avenue, SW, PCP 9143
Washington, DC 20202-4700

**By fax, (202) 245-6623, and First Class mail**

### Re: Freedom of Information Act Request

Dear Sir/Madam:

Citizens for Ethics and Responsibility in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA") and Department of Education ("Department") regulations, 34 CFR §§ 5.6 *et. seq.*

Specifically, CREW seeks any and all Department documents and records dating from January 20, 2001, to the present, in the following categories:

1. All communications from any Department office, including any and all field offices, to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings, that mention or relate to Reading First, "Science Based Reading Research"/"SBRR," DIBELS, or any other issue related to reading instruction or education.

2. All Department contacts or communications, including calendar references and meeting notes, with educational publishers, their executives, employees, consultants, or contractors. The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, and Cambium Learning, Sopris West, and IntelliTools.

3. All Department contacts or communications that *mention or relate to* contacts with educational publishers, their executives, or employees. The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools.

RECEIVED MAR 2 9 2007

    4.      To the extent not included in the above request, please provide all documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the *Title I Monitor*. See Andrew Brownstein & Travis Hicks, Congress Grills Spellings on Reading First Program; OIG Investigation Draws to a Close, Title I Monitor (undated) (Attached as Exhibit I). As these documents have been already culled and processed for disclosure, we expect production of these records in short order. As of March 27, 2007, these documents do not appear to be posted at the Department's online reading room.

    Please search responsive records regardless of format, medium, or physical characteristics. Where possible, please produce records electronically, in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

    If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

    In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 34 C.F.R. § 5.64, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. § 552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the extent of White House involvement in the administration of the Reading First program, an issue on which the public record is unclear. For example, recently disclosed emails and statements by a former Department appointee appear to contradict statements by Secretary Spellings that she was not involved in Reading First until she became Secretary in January 2005. See Brownstein & Hicks, Congress Grills Spellings on Reading First Program; OIG Investigation Draws to a Close, Title I Monitor (undated).

CREW is a non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memoranda, reports or press releases. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See http://foia.citizensforethics.org/home. Currently, this site contains links to thousands of pages of documents CREW acquired from multiple FOIA requests. CREW's main website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints. As CREW's websites demonstrate, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

## Conclusion

Please respond to this request in writing within 20 days as required under 5 U.S.C. § 552(a)(6)(A)(I). If all of the requested documents are not available within that time period, CREW requests that you provide all requested documents or portions of documents which are available within that time period.

3

If you have any questions about this request or foresee any problems in releasing fully the requested records within the twenty-day period, please contact me at (202) 408-5565.  Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination.  Please send the requested documents to Daniel C. Roth, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C.  20005.

Sincerely,

Dee C. Roth

Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington

Attachment

4

# Exhibit B



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

ASSISTANT SECRETARY

April 16, 2007

Mr. Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC 20005

RE: FOIA Request No. 07-00517-F

Dear Mr. Roth:

This letter is in response to your fax dated March 28, 2007 requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Your request was received in this office on March 29, 2007. You asked for the following information:

1.  All communications from any Department office, including any and all field offices, to from or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings, that mention or relate to Reading First, "Science Based Reading Research"/"SBRR," DIBELS or any other issue related to reading instruction or education.

2.  All Department contacts or communications, including calendar references and meeting notes, with educational publishers, their executives, employees, consultants, or contractors. The List of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, and Cambium Learning, Sopris West, and IntelliTools.

3.  All Department contacts or communications that mention or relate to contacts with educational publishers, their executives, or employees. The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools.

4.  To the extent not included in the above request, provide all documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the Title I Monitor. See Andrew Brownstein, Travis Hicks, Congress Grills Spellings on Reading First Program: OIG Investigation Draws to a Close, Title I Monitor (undated).

Enclosed is a CD containing 421 pages of documents responsive to item 4 of your request. The documents provided are: documents regarding the Reading First program that were previously disclosed under FOIA to the Title I Monitor.

Page 2 of 5 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

In an effort to process your request as expeditiously as possible, we need clarification for items 1 through 3 of your request. As you are aware, FOIA requests must reasonably describe the records that are sought in order for Department employees, with knowledge of the subject matter, to identify and locate potentially responsive documents. 5 U.S.C. § 552(a)(3)(A) (2000). Items 1 through 3 of your request encompass a large volume of information on broad topics related to individuals in the Department and "White House staff", without identifying specific individuals, offices, or subjects. In addition, your request does not specify any relevant time frames. Consequently, your request does not reasonably describe the records sought, and the Department is unable to process your request regarding items 1 through 3 without further clarification. See Dale v. Internal Revenue Service, 238 F.Supp.2d 99 (D.D.C. 2002).

Fee Waiver
In addition, you have requested a fee waiver for your request. The requester bears the burden of justifying entitlement to a fee waiver. See Casad v. Department of Health & Human Services, 2003 U.S. Dist. LEXIS 13007 (D. D.C. June 20, 2003). To meet this burden, a requester must satisfy two statutory requirements before the Department may waive or reduce properly assessed fees: (1) disclosure of the information must be in the public interest because the information primarily benefits the general public and is likely to contribute significantly to public understanding of the operations or activities of the government; and (2) disclosure of the information must not be primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii)(2000); see also 34 C.F.R. § 5.64(a). Moreover, a requester must address both factors in sufficient detail in order for an agency to determine whether it can reduce or waive the fees. Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003).

In order to determine whether the disclosure of the information responsive to the request furthers the narrow public interest cognizable under the FOIA, the Department must consider the following four (4) factors in sequence:

1. The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government";
2. In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the requested information must be meaningfully informative in relation to the subject matter of the request;
3. The disclosure must contribute to the "understanding of the public at large," as opposed to that of the individual requester or a narrow segment of interested persons; and
4. The disclosure must "contribute significantly" to public understanding of government operations or activities.

See Judicial Watch, Inc. v. Department of Justice, No. 03-5093, 2004 WL 980826 (D.C. Cir. May 7, 2004); see also 34 C.F.R. § 5.64(b)(1) and (2). Only if all four elements have been met will the Department conclude that a requester has satisfied the first prong of the public interest element of the statutory requirement for a fee waiver.

Where the Department concludes that the public interest requirement has been met, it may waive or reduce applicable fees only where it also finds that "disclosure of the information . . . is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii)(2000). In order to determine whether this second requirement has been satisfied, the Department must consider the following two factors in sequence:

Page 3 of 5 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

1. Does the request involve any "commercial interest of the requester" (if not, the requester satisfies the second prong of the statutory fee waiver test); and

2. If so, the agency must balance the requester's commercial interest against the identified public interest in disclosure for the purpose of ascertaining which is the "primary interest"; a fee waiver or reduction may be granted only where the public interest in disclosure is greater in magnitude than the requester's commercial interest.

<u>See</u> <u>also</u> 34 C.F.R. § 5.64(b)(3).

For your information, the Department does not customarily grant blanket waivers, but rather considers each waiver request on a case-by-case basis.

The Department has reviewed your request and denies the request because it fails to provide sufficient information to justify the Department's grant of a fee waiver. You state that, "[t]he subject of this request concerns the operations of the federal government, and the disclosure will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way." Although not entirely clear from the information provided, the Department assumes, for the sake of argument, that the responsive materials for items 1 through 3 of your request meet the first two elements of the public interest prong of the statutory requirement for a fee waiver because they presumably relate to the Department's administration of the Reading First program. However, it is clear that you have not satisfied the burden with regard to the third and fourth elements of the public interest prong of the statutory requirement.

As stated above, the third factor of the public interest analysis requires that the disclosure contribute to the "understanding of the public at large," as opposed to that of the individual requester or a narrow segment of interested persons. In order to satisfy this element of the public interest prong, the public must derive the benefit from the disclosure of this information, and not the personal benefit that may be derived from the requester, or a narrow segment of the population. <u>Mells v. Internal Revenue Service</u>, 2002 U.S. Dist. LEXIS 24275 (D.D.C. Nov. 21, 2002). In this regard, the identity of the requester will be considered so that an agency may determine whether the requester is in a position to contribute to the public understanding through the disclosure of the requested materials. <u>Burriss v. CIA</u>, 524 F. Supp. 448 (M.D. Tenn. 1981). As part of this analysis, the Department will consider whether the requester has the expertise in the subject area, and a demonstrated ability and intent to disseminate the information to the general public. <u>Id.</u> Additionally, while not for profit organizations are often capable of disseminating information, they do not automatically qualify for a waiver or reduction of fees because of their non-profit status. <u>VoteHemp, Inc. v. DEA</u>, 237 F. Supp. 2d 55 (D.D.C. 2002); <u>see also</u> <u>McClain v. U.S. Dep't of Justice</u>, 13 F.3d 220, 221 (7th Cir. 1993).

In your request you have indicated that "CREW will disseminate any documents it acquires from this request to the public .... [through] an interactive website where members of the public can analyze and comment on public documents[.] ... Currently, this site contains links to thousands of pages of documents CREW acquired from multiple FOIA requests." While this statement does demonstrate that you intend to disseminate the information, it does not demonstrate how the potentially responsive documents in this case will contribute to the "understanding of the public at large." Based upon your letter, it appears that members of the public would have to individually "analyze" the data to reach any possible understanding of the information. Consequently, you have failed to meet the third prong of the public interest analysis.

Page 4 of 5 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

The fourth element of the public interest prong of the statutory requirement for a fee waiver requires that the disclosure must "contribute significantly" to public understanding of government operations or activities. For this element, an agency is required to determine whether the disclosure of the information will make a significant contribution to the public's understanding of the operations or activities of government. D.C. Technical Assistance Org. v. Dep't of Housing & Urban Development, 85 F.Supp.2d 46, 49 (D.D.C. 2000). "Significance" is measured by a likely enhancement of the public's understanding of the subject at issue as a result of the disclosure, compared to the public's level of understanding of that same issue prior to disclosure. Id.; see also Judicial Watch v. U.S. Department of Justice, 185 F.Supp.2d 54, 62 (D.D.C. 2002).

In your letter, you stated "the disclosures [of the information] will likely contribute to a better understanding of relevant government procedures by ... the general public in a significant way", and specifically, refer to "the public's understanding of the extent of White House involvement in the administration of the Reading First program[.]" It is interesting to note that you refer to an article on the very issue that you contend is unclear. Accordingly, information regarding this issue already exists in the public domain. Consequently, you have failed to show how the disclosure of the requested information will significantly enhance the public's understanding of the Reading First program beyond the information that already exists in the public domain. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 815 (2d Cir. 1994).

In sum, the Department's denies your request for a fee waiver in the present case.

Fees are charged for searching/reviewing and duplication for responsive records. The fee is calculated in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III), 5 U.S.C. § 552(a)(4)(A)(iv)(II) and 34 CFR § 5.61. The search and the review fee are calculated based on the hourly rate of pay, plus 16% administrative charge and the duplication costs are ten cents per photocopied page. Our regulations, 34 CFR § 5.61 require us to allow you to modify your request if the cost is more than $25.00. In addition, in accordance with 34 CFR § 5.62(a)(2), if the cost is to be greater than $250.00, the requester must pay in advance.

You have the right to appeal this decision by writing, within 30 days of your receipt of this letter. Your appeal should be received by the FOIA office on or before
Mary 24, 2007. Your appeal should be accompanied by a copy of your initial letter of request and this denial letter, and should contain any evidence or argument you wish the Department to consider in making an administrative determination on your appeal.

### Appeal Address:

U.S. Department of Education
Office of Management
400 Maryland Avenue, SW, FOB-6-2W311
ATTN: FOIA Appeals
Washington, DC  20202-4500

Page 5 of 5 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

Once we receive your clarification and the issues regarding charges are resolved, we will begin processing your request. Please send your clarification letter to the U.S. Department of Education, ATTN: FOIA Office, 400 Maryland Avenue, SW, PCP 9th Floor, Washington, DC 20202-4700, or send it by e-mail: EDFOIAManager@ed.gov.

If you have any questions regarding this letter, please contact Angela Arrington or myself at 202-245-6615.

Sincerely,

Maria-Teresa Cueva
FOIA Public Liaison, OM/RIMS

Enclosures

# Exhibit C

## ED FOIA Manager

| | |
|---|---|
| **From:** | Dan Roth [droth@citizensforethics.org] |
| **Sent:** | Friday, May 11, 2007 6:31 PM |
| **To:** | ED FOIA Manager |
| **Subject:** | No. 07-00517-F, Informal Fee Waiver Appeal |

Dear Ms. Arrington,

Thank you again for setting up the call this past Wednesday to help CREW narrow our March 28, 2007 FOIA request to the Department of Education. As we discussed during that call, I am following up with an informal appeal of the Department's denial of fee waiver contained in Ms. Cueva's letter dated April 16, 2007.

First of all, the Department suggests that because certain information already exists in the public domain on Reading First, CREW's request would not contribute significantly to the public's understanding of the issues involved. (Letter from M. Cueva, p. 4). As CREW's request makes clear, there are significant inconsistencies in the public record as to the involvement of Secretary Spellings in the administration of Reading First prior to her becoming Secretary of Education. The records CREW seeks would clarify the public record one way or another with respect to Secretary Spellings and anyone else in the White House. With respect to items 2 and 3 of CREW's request, relating to contacts with educational publishers, very little is known about this topic beyond an email discussed by Title I Monitor and included on the CD provided to CREW in response to item 4 of our request. For these reasons, and because Reading First has garnered so much attention from the public, Congress, and the press, it can hardly be said that the records CREW seeks would only contribute to the understanding of a narrow segment of the population, as the Department's letter denying the fee waiver claims.

The Department's letter also mistakenly asserts that the public would be required to do its own analysis of the requested documents to "reach any possible understanding of the information." (Letter from M. Cueva, p. 3). On page 3 of our March 28 FOIA request, it clearly states that "CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memoranda, reports or press releases." Moreover, the press, the House Education and Labor Committee, the Department's Inspector General, and most recently Senator Kennedy, have given the public ample background information with which to understand the information CREW seeks. Secretary Spellings herself stated at yesterday's hearing that Senator Kennedy's report left her "deeply concerned." That report focused on individuals who were instrumental in Reading First from its inception and their financial ties to educational publishers.

In sum, CREW is seeking information that will add significantly to the public's understanding of the administration of a six billion dollar federal program aimed at helping some of the most vulnerable members of our society. CREW does not seek these records for any private gain, and has both the intent and the capability to distribute the information it receives widely, and to analyze that information for the public. For all of the reasons discussed, and for the reasons initially stated in CREW's FOIA request, the Department should grant CREW's request for a fee waiver in this matter.

Again, I appreciate your time, and look forward to your response regarding CREW's request for a fee waiver and the Department's initial denial of that request.

Sincerely,
Dan Roth
Counsel
CREW - Citizens for Responsibility and Ethics in Washington
www.citizensforethics.org
202-408-5565 ext. 109

This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential. Any distribution, printing, or other use by anyone else is prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete this email and attachments. Thank you.

5/14/2007

# Exhibit D

## Dan Roth

| | |
|---|---|
| **From:** | Dan Roth |
| **Sent:** | Monday, May 14, 2007 1:28 PM |
| **To:** | 'EDFOIAManager@ed.gov' |
| **Subject:** | No. 07-00517-F Narrowing Discussion |

Dear Ms. Arrington,

As we discussed earlier today, I am writing to memorialize our conversation about narrowing CREW's March 28, 2007 FOIA request.

As I understand it from last Wednesday's telephone conversation, the Department's key concern with respect to our FOIA is that CREW is seeking records from "any Department office, including any and all field offices." Ms. Marcela Goodridge stated that the Department's FOIA technology does not allow for subject matter or keyword searches throughout the email system, so a search undertaken pursuant to the original terms of our request would require individual searches of each of the Department's approximately 4,500 employee email accounts. Additionally, Ms. Goodridge noted that email communications on personal email accounts would not be covered by such a search (which is an issue that has arisen in the past).

In order to aid CREW in the narrowing process, we request the following information from the Department:

1) An estimate of the time it would take to process CREW's request if we do not narrow it further
2) An estimate of the time it would take to process our request if we narrow and request communications only within the a) Office of the Secretary and b) Office of Elementary and Secondary Education.

If these time estimates will not be available before May 19 (this coming Friday), please let me know.

In addition, you affirmed that it would be helpful for CREW to limit the list of publishers in items 2 and 3 to the seven publishers already listed. We are considering a limitation along those lines (which would eliminate the phrase "includes, but is not limited to " in items 2 and 3 of the March 28 request) but have not yet made a decision.

CREW will formalize any narrowing language in a letter to the Department as soon as we receive the requested information.

Finally, I neglected to ask on the phone whether a copy of the Title I Monitor FOIA would be forthcoming soon, but I'll renew my request for it here.

Again, I greatly appreciate your time and assistance with this request. Please contact me any time.

Best Regards,
Dan Roth
Counsel
CREW - Citizens for Responsibility and Ethics in Washington
www.citizensforethics.org
202-408-5565 ext. 109

This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential. Any distribution, printing, or other use by anyone else is prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete this email and attachments. Thank you.

5/14/2007

# Exhibit E

**From:** Dan Roth [droth@citizensforethics.org]
**Sent:** Monday, May 21, 2007 3:18 PM
**To:** ED FOIA Manager
**Subject:** 07-00517-F Proposed Narrowing Terms
Dear Ms. Arrington,

As we discussed on May 9 and May 14, CREW is seeking to aid the Department in its search for responsive records by narrowing the terms of our March 28, 2007 FOIA request, No. 07-00517-F. Though our request sufficiently describes the records we seek, you and others at the Department have advised us that technological limitations of the Department's email search technology would require the Department to search approximately 4,500 email accounts unless the request is narrowed further. Accordingly, we suggest the following narrowed terms for the search in response to Request No. 07-00517-F:

Any and all documents and records from January 20, 2001, to the present, in the offices of: 1) The Secretary, 2) Senior Counselor, 3) Chief of Staff, 4) Deputy Secretary, 5) Management Improvement Team, 6) Elementary and Secondary Education, 7) Institute of Education Sciences, 8) Planning Evaluation and Policy Development, 9) Civil Rights, 10) Innovation and Improvement, 11) Special Education and Rehabilitative Services, 12) Management, 13) Chief Financial Officer and 14) Communications and Outreach, in the following categories:

1. All communications of the above-listed offices to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings or Margaret LaMontagne, that mention or relate to Reading First, Early Reading First, "Scientifically Based Reading Research"/"Science Based Reading Research"/"SBRR" or DIBELS.

2. All communications of the above-listed offices, including calendar references and meeting notes, with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and Intellitools.

3. All communications of the above-listed offices, including calendar references and meeting notes, that mention or relate to contacts with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited, to Randy Best), Cambium Learning, Sopris West, and Intellitools.

Apart from Item 4 of CREW's original request, to which the Department has already responded in the form of a CD containing documents previously disclosed to the *Title I Monitor* and received by CREW on April 23, 2007, all other language in CREW's original request (pages 2-4) remains unchanged. We also note that it is not only emails, but "all communications," that CREW requested.

Thank you for your time and attention to this matter.

Dan Roth
Counsel
CREW - Citizens for Responsibility and Ethics in Washington
www.citizensforethics.org
202-408-5565 ext. 109

----------------------------------------------------------------------------------------------------
------------------------------------------------------------------------

This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential. Any distribution, printing, or other use by anyone else is prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete this email and attachments. Thank you.

# Exhibit F



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

June 8, 2007

Daniel C. Roth, Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, DC 20005

RE: FOIA Request No. 07-00517-F

Dear Mr. Roth:

This letter responds to your May 11, 2007 e-mail. In a letter dated April 16, 2007, the Department denied
your request for a fee waiver submitted in connection with your March 28, 2007 fax requesting
information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.[1]

On May 9, 2007, Department staff conferred with you by telephone and agreed to allow you to submit
additional information, and to reconsider your fee waiver request in light of this supplemental information.
Your May 11, 2007 e-mail represents the supplemental information you wish the Department to consider
in support of your fee waiver request.

The Department notes initially that, because you received information responsive to item number 4 of your
March 28, 2007 request, your request for a fee waiver is deemed to concern only the items numbered 1, 2
and 3 of your March 28, 3007 request.

---

[1] In your March 28, 2007 fax, you requested access to the following information: "(1) All communications from any
Department office, including any and all field offices, to from or referencing any member of the White House staff,
including, but not limited to, then-Domestic Policy Advisor Margaret Spellings, that mention or relate to Reading
First, 'Science Based Reading Research'/'SBRR,' DIBELS or any other issue related to reading instruction or
education; (2) All Department contacts or communications, including calendar references and meeting notes, with
educational publishers, their executives, employees, consultants, or contractors. The List of educational publishers
and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott
Foresman, Voyager, and Cambium Learning, Sopris West, and IntelliTools; (3) All Department contacts or
communications that mention or relate to contacts with educational publishers, their executives, or employees. The
list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA
McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools; and (4) To the
extent not included in the above request, provide all documents previously disclosed under FOIA to Andrew
Brownstein, Travis Hicks and/or the Title I Monitor. See Andrew Brownstein, Travis Hicks, Congress Grills
Spellings on Reading First Program: OIG Investigation Draws to a Close, Title I Monitor (undated)." Included with
our April 16, 2007, in response to item number 4 above, the Department provided you with a CD containing 430
pages of documents regarding the Reading First program that were previously disclosed to the Title I Monitor in
response to a FOIA request.

Page 2 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

The Department has reviewed all of the information you submitted in support of your fee waiver and denies the request because it fails to provide sufficient information to justify the grant of a fee waiver. This denial represents the Department's decision regarding your request for a fee waiver in connection with FOIA Request No. 07-00517-F. The reasons for the denial are set forth below.

The Department's April 16, 2007 letter to you outlined in detail the legal standard for analyzing fee waiver requests and assessing whether a waiver or reduction of fees is appropriate; that standard is referred to and incorporated by reference herein.

As previously stated in our April 16, 2007 letter, the Department assumes, for the sake of argument, that the documents responsive to items 1 through 3 of your FOIA request meet the first two elements of the public interest prong of the fee waiver analysis because they are presumed to relate to the Department's administration of the Reading First program. The Department has also concluded that, based upon the information contained in your May 11, 2007 e-mail, items 1 through 3 of your request meet the third element of the public interest prong of the fee waiver analysis. Nevertheless, the Department finds that you have not met your burden with regard to the fourth element of the public interest prong of the fee waiver analysis, i.e., the requirement that disclosure of the records in question "contribute significantly" to public understanding of government operations or activities. "Significance" is measured by the likely enhancement of the public's understanding of the subject at issue as a result of disclosure, compared to the public's level of understanding of that same issue prior to disclosure. D.C. Technical Assistance Org. v. Dep't of Housing & Urban Development, 85 F. Supp. 2d 46, 49 (D.D.C. 2000); see also Judicial Watch v. U.S. Department of Justice, 185 F.Supp.2d 54, 62 (D.D.C. 2002).

Your fee waiver request generally stated: "[T]he disclosures [of the information] will likely contribute to a better understanding of relevant government procedures by … the general public in a significant way," and specifically, "[contribute] to the public's understanding of the extent of White House involvement in the administration of the Reading First program[.]" Your May 11, 2007 e-mail states: "[T]here are significant inconsistencies in the public record as to the involvement of Secretary Spellings in the administration of Reading First prior to her becoming Secretary of Education. The records CREW seeks would clarify the public record, …. [R]elating to contracts with educational publishers, very little is known about the topic beyond an e-mail discussed by Title I Monitor and included on the CD provided to CREW in response to item 4 of our request." For a number of reasons, discussed below, the Department does not find your arguments persuasive.

First, we note that the language of your request is extremely broad in that it seeks voluminous records concerning a wide range of Department contacts and/or communications with the White House, educational publishers, their executives, employees, consultants, or contractors, and documents mentioning or relating to such contacts, concerning not only Reading First but also such subjects as Science Based Reading Research/SBRR, DIBELS, and any other issue related to reading instruction and education. As it is apparent that many of the documents responsive to items 1 through 3 of your FOIA request – implicating contacts and communications on a range of educational topics – have nothing to do with the Reading First program, it is equally clear that the disclosure of such materials could in no way enhance public understanding of the Department's administration of that program, much less do so significantly.

i

Page 3 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

Your May 11, 2007 e-mail also states that the records you seek would clarify the public record because of alleged "significant inconsistencies in the public record as to the involvement of Secretary Spellings in the administration of Reading First prior to her becoming Secretary of Education." However, you have failed both to identify the nature or extent of such inconsistencies, and to articulate in what way disclosure of the documents responsive to items 1 through 3 of your request would be likely to inform the public's understanding of such matters. Without any such evidence, there is no nexus between the alleged inconsistencies and the requested records, and no evidence of how the records you seek would add anything of significance to the public's understanding of the Reading First program. See Carney v. U.S. Dep't of Justice, 19 F.3d 807 (2d Cir. 1994).

You also state that very little is known about the topic of the Department's contacts with educational publishers. Contrary to your assertions, there are several sources of information on this topic, including, but not limited to information found at the following web sites:
http://www.cnn.com/2007/EDUCATION/05/09/reading.conflicts.ap/index.html;
http://www.usatoday.com/news/education/2007-05-09-reading-first-program_N.htm;
http://kennedy.senate.gov/newsroom/press_release.cfm?id=3CC1E674-CB51-42C2-A4F9-
90395A0DC291

For these reasons, the Department denies your request for a fee waiver in connection with FOIA Request No. 07-00517-F.

Fees are charged for searching, reviewing and duplication of responsive records, and are calculated in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III), 5 U.S.C. § 552(a)(4)(A)(iv)(II) and 34 CFR § 5.61. The Department calculates search and review fees based on the employee's hourly rate of pay, plus a 16% administrative charge, and charges ten cents ($0.10) per photocopied page for duplication. Our regulations, at 34 CFR § 5.61, require us to allow a requester to modify his/her request if fees of more than $25.00 are anticipated. In addition, in accordance with 34 CFR § 5.62(a)(2), if the cost is expected to be greater than $250.00, the requester must pay in advance.

As the Department indicated during the May 9, 2007 conference call, the broad scope of your request would require significant time and resources to search for and review responsive records. Under the circumstances, we encourage you to narrow the scope of your request so that we may provide you with the requested information as expeditiously as possible.

You have the right to appeal this decision by writing, within 30 days of your receipt of this letter. Please submit your appeal to the FOIA office on or before July 13, 2007. Your appeal should be accompanied by a copy of your initial letter of request and this denial letter, and should contain any evidence or argument you wish the Department to consider in making an administrative determination on your appeal.

**Appeal Address:**

U.S. Department of Education
Office of Management
400 Maryland Avenue, SW, FOB-6-2W311
ATTN: Appeals Office
Washington, DC 20202-4500

Page 4 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

If you have any questions regarding this letter, please contact Angela Arrington or myself at 202-245-6615.

Sincerely,

Maria-Teresa Cueva
FOIA Public Liaison, OM/RIMS

# Exhibit G



CREW | citizens for responsibility and ethics in washington

June 21, 2007

U.S. Department of Education
Office of Management
400 Maryland Avenue, SW, FOB-6-2W311
ATTN: Appeals Officer
Washington, D.C. 20202-4500

**By first class mail**

**Re: Freedom of Information Act Appeal (No. 07-00517-F)**

Dear Sir/Madam:

By letter dated June 8, 2007, Maria-Teresa Cueva, FOIA Public Liaison, Office of Management, U.S. Department of Education ("the Department"), advised Citizens for Responsibility and Ethics in Washington ("CREW") that our request for a fee waiver for our Freedom of Information Act ("FOIA") request of March 28, 2007 (attached as Exhibit A), was denied. See Letter from Maria-Teresa Cueva, FOIA Public Liaison, U.S. Department of Education, to Dan Roth (June 8, 2007) (attached as Exhibit B). CREW's fee waiver request was initially denied by letter dated April 16, 2007 (attached as Exhibit C). CREW appealed that denial via email on May 11, 2007 (attached as Exhibit D), pursuant to an arrangement made with Education officials in a phone conversation on May 9, 2007. CREW hereby appeals the June 8 denial and requests that you reverse it for the reasons set forth below.

**Background**

CREW's March 28, 2007 FOIA request sought all Department records dating from January 20, 2001, to the present, in four categories:

1.  All communications from any Department office, including any and all field offices, to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings, that mention or relate to Reading First, "Science Based Reading Research"/"SBRR," DIBELS, or any other issue related to reading instruction or education.

2.  All Department contacts or communications, including calendar references and meeting notes, with educational publishers, their executives, employees, consultants, or contractors. The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill,

Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools.

3.    All Department contacts or communications that *mention or relate to* contacts with educational publishers, their executives, or employees. The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools.

As indicated in the Department's June 8 letter, this fee waiver appeal concerns only Items 1-3 of CREW's request, as the Department has already responded to Item 4 (requesting documents previously released under FOIA to the *Title I Monitor*). See Exhibit B at 1.

CREW also sought a waiver of fees associated with the processing of its request. See Exhibit A at 3. As CREW explained, the records sought would "likely contribute to the public's understanding of the extent of White House involvement in the administration of the Reading First program," particularly because the public record on this issue contains inconsistent statements by current and former Department officials. As examples of these inconsistencies, CREW pointed out that 1) statements by former Education appointee Michael Petrilli directly contradict Secretary Margaret Spellings statements that she was not involved with Reading First during her tenure as White House Domestic Policy Advisor and 2) emails referencing then-Advisor Spellings contradict her account, as well. Id. CREW included the article documenting these examples as Exhibit 1 to its FOIA request.

By letter dated April 16, 2007, the Department denied CREW's fee waiver, stating that CREW had failed to show both that disclosure of documents to CREW would contribute to the understanding of the public at large and that the disclosure would contribute significantly to the public's understanding of government operations. See Exhibit C at 2-4.

On May 9, 2007, at the Department's request, CREW discussed the possibility of narrowing the scope of its request and the fee waiver issue in a teleconference with Department officials. CREW sent an email on May 14 requesting more information from the Department to aid in the narrowing process (attached as Exhibit E), but never received a response. On May 21, CREW sent an email proposing to narrow the records sought to those

... in the offices of: 1) The Secretary, 2) Senior Counselor, 3) Chief of Staff, 4) Deputy Secretary, 5) Management Improvement Team, 6) Elementary and Secondary Education, 7) Institute of Education Sciences, 8) Planning Evaluation and Policy Development, 9) Civil Rights, 10) Innovation and Improvement, 11) Special Education and Rehabilitative Services, 12) Management, 13) Chief Financial Officer and 14) Communications and Outreach, in the following categories:

1.    All communications of the above-listed offices to, from, or referencing any member of the White House staff, including, but not limited to, then-

Domestic Policy Advisor Margaret Spellings or Margaret LaMontagne, that mention or relate to Reading First, Early Reading First, "Scientifically Based Reading Research"/"Science Based Reading Research"/"SBRR" or DIBELS.

2. All communications of the above-listed offices, including calendar references and meeting notes, with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and Intellitools.

3. All communications of the above-listed offices, including calendar references and meeting notes, that mention or relate to contacts with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited, to Randy Best), Cambium Learning, Sopris West, and Intellitools.

(Exhibit F). The Department never responded to this email.

CREW's initial March 28, 2007 FOIA request fully satisfies the two-prong statutory test for a fee waiver: 1) "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government" and 2) "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

The Department concedes that this request is not in CREW's commercial interest, but has now twice denied CREW's fee waiver request based on the Department's contention that CREW has failed to provide sufficient information to show how the requested records will contribute "significantly" to the public understanding. See Exhibit B. According to the Department, there are two alleged deficiencies in CREW's fee waiver request: 1) that parts of CREW's FOIA request do not describe the records CREW seeks with enough specificity to show how disclosure of those records would contribute to the public understanding of Department operations, and 2) that CREW has not shown that the information sought will contribute "significantly" enough to merit a fee waiver. Id. at 2-3.

## I. Specificity and Relation to Operations of the Federal Government

The Department's June 8 fee waiver denial is based on its conclusion that many of the records responsive to CREW's request "have nothing to do with the Reading First program," and

thus "disclosure of such materials could in no way enhance public understanding of the Department's administration of that program, much less do so significantly." Id. at 2. The Department relies in part on language from CREW's March 28 FOIA request, including the phrase "any other issue related to reading instruction or education" Id.

The Department's analysis fails to take into account CREW's request as narrowed on May 21, 2007, which dropped this broad phrase and replaced it with more specific, revised language. See Exhibit F. Having requested that CREW narrow its request, the Department cannot legitimately rely on the original, pre-narrowed language to deny CREW a fee waiver.

The Department cannot and does not argue that the records sought will not enhance the public's understanding of the operations of the federal government. This is all that the fee waiver provision of the FOIA requires of a requester that has shown that the information sought is not primarily in its commercial interest. See 5 U.S.C. § 552(a)(4)(A)(iii). The records CREW seeks are particularly significant to the public interest given that the No Child Left Behind Act is scheduled to be re-authorized this fiscal year. As discussed at length below, the records CREW seeks all relate to public controversies regarding Department operations, programs and officials, the White House and educational publishers.

## II. Significance of the Records CREW Seeks

The Department's June 8 fee waiver denial is based on its finding that CREW has failed to identify and provide examples of the significant inconsistencies in the public record with respect to Secretary Spellings' involvement in Reading First prior to her tenure as Secretary. See Exhibit B. To the contrary, Exhibit 1 to CREW's FOIA request (an article published in the *Title I Monitor*) documents at least some of these inconsistencies. As reported in the *Title I Monitor*, during the Secretary's testimony before the Senate education appropriations subcommittee

> Sen. Tom Harkin, D-Iowa, chairman of the education appropriations subcommittee, asked [Secretary Spellings] about claims by Michael Petrilli, a former political appointee at the department during President George W. Bush's first term, that she "micromanaged" the program when she was a domestic policy advisor in the Bush White House.

> "Obviously, I was not micromanaging that program or any other grant program out of the thousands of grant programs" she dealt with as domestic advisor to the president, the secretary testified.

*    *    *

> Despite Spellings' attempts to distance herself from the controversy, previously released emails show that, as domestic policy advisor, she had a role in handling hot-button Reading First issues in Texas and New York City.

-4-

Andrew Brownstein & Travis Hicks, Congress Grills Spellings on Reading First Program; OIG Investigation Draws to a Close, Title I Monitor (undated).

This is just one of many publications that document serious inconsistencies between how Secretary Spellings has described her involvement in Reading First during her White House tenure and the observations of other at the Department. Additional examples include the following:

Education Secretary Margaret Spellings, who until 2005 was a White House domestic policy adviser, says the troubles occurred before her move to the Education Department. But Mike Petrilli, a former associate deputy secretary under Spellings' predecessor, Rod Paige, says Spellings "micromanaged the implementation of Reading First from her West Wing office." Greg Toppo, Textbook scandal reaches Congress; Democrats will spell out possible conflict-of-interest case in program, USA Today, Apr. 16, 2007 (attached as Exhibit G).

[Secretary Spellings] denied accusations from a former political appointee at the department, Michael Petrilli, who said she had essentially run Reading First from her post as domestic policy adviser at the White House. Mr. Petrilli is now a vice president at a nonprofit education research foundation. Diana J. Schemo, Oversight Is Set for Beleaguered U.S. Reading Program, N.Y. Times, Mar. 15, 2007 (attached as Exhibit H).

"Margaret Spellings was involved in [Reading First] from day one in her role as domestic-policy adviser," ... Ms. Spellings has not yet responded to those allegations. Scathing Report Casts Cloud Over 'Reading First'; Federal officials encouraged use of specific programs, inspector general finds, Education Week, Oct. 4, 2006 (attached as Exhibit I).

"Secretary Spellings responded to the report by blaming other department employees and noting that the events occurred before she took over the Department," Harkin said. "However, as President Bush's domestic policy adviser, she exerted enormous control over Department activities. A former Department official, Michael Petrilli, said this week that 'she micromanaged the implementation of Reading First from her West Wing office.'" SEN. HARKIN CALLS ON DEPARTMENT OF EDUCATION SECRETARY SPELLINGS TO DISCLOSE INVOLVEMENT IN READING FIRST SCANDAL, U.S. Fed News, Sept. 28, 2006 (Attached as Exhibit J).

As these examples indicate, there is an ongoing dispute between Mr. Petrilli and Secretary Spellings's accounts of her involvement with Reading First. The only documentary evidence so far released to the public, quoted in Exhibit 1 to CREW's March 28, 2007 FOIA request, suggests that Secretary Spellings, at the very least, was involved in discussions regarding publishers interested in Reading First programs in New York City. The released email states "CAN YOU FORWARD TO MARGARET? WE HAVE TO DISCUSS PUBLISHERS

TODAY WITH MARGARET. WE HAVE BEEN MEETING WITH SOME CEOs FROM THE INDUSTRY AND THEY WANT TO PLAY BALL." Email from Reid Lyon, National Institutes of Child Health and Human Development, to Beth Ann Bryan, Senior Advisor to the Secretary, U.S. Department of Education (Jan. 30, 2003) (emphasis in original) (attached as Exhibit K); See also Exhibit 1 to FOIA Request. The email's author, Dr. Reid Lyon, has confirmed that the "Margaret" to whom he referred in the email is then-Domestic Policy Advisor Margaret Spellings. See Brownstein & Hicks, Title I Monitor (undated).

Department records and Mr. Petrilli's statements clearly conflict with Secretary Spellings's congressional testimony about her involvement in Reading First. CREW's fee waiver request and initial appeal, which relied explicitly on these articles and documentary evidence, described the issues it seeks to illuminate with "reasonable specificity" and is not based solely on "conclusory allegations." Judicial Watch v. U.S. Dep't of Energy, 310 F. Supp. 2d 271, 290-91 (D.D.C. 2004). Moreover, the records CREW seeks will go beyond the "he-said, she-said" that makes up the current public record on this subject by providing documentation illuminating the actual level of Secretary Spellings' involvement in Reading First during her White House tenure.[1]

Finally, the Department has challenged CREW's assertion that "little is known" about the Department's contacts with educational publishers, relying on three internet links to demonstrate that the Department's contacts with educational publishers has already been examined in the public sphere. The first link is expired, and the second and third links connect the reader to a recent report put out by Senator Edward Kennedy's office and a USA Today article covering that report. The Kennedy report focused on the financial interests of Reading First Technical Assistance Center ("TAC") employees and their ties to publishers during their service at the TACs. As stated clearly in the USA Today article: "The [Kennedy] report zeroed in on four people who directed the program's regional Technical Assistance Centers." Nancy Zuckerbrod, More conflicts disclosed in Reading First program, Associated Press, as published in USA Today, May 9, 2007 (emphasis added) (attached as Exhibit L). The Department contacts CREW seeks – with several companies not even mentioned in the Kennedy report – are categorically and obviously distinct from those cited and attached to the Kennedy report. Presenting this argument as a rationale for denying CREW's fee waiver request strains the bounds of good faith. CREW's FOIA request is vastly different in scope and focus from Senator Kennedy's report.

The records CREW seeks in items 2 and 3 will likely contribute significantly to the public's understanding of the extent to which publishers were in contact with Department and administration personnel during the Reading First development and grant process. Furthermore,

---

[1] CREW notes that on May 1, 2007, Rep. George Miller, Chairman of the House Committee on Education and Labor, also requested records of communications between the Department and the White House on Reading First and other matters. See Letter from Hon. George Miller, Chairman, to Hon. Margaret Spellings, Secretary, U.S. Department of Education (May 1, 2007) (attached as Exhibit M).

the public will likely gain significant knowledge about the extent and nature of the contacts between individuals like Ms. DiMarco and Department officials. Little is known about the Department's contacts with publishers with respect to the types of records CREW requested; to the extent these records go beyond Reading First, they will still shed light on the operations of the federal government, and therefore meet the public interest requirement for a fee waiver.

## CONCLUSION

The documents CREW has requested will amplify the information already in the public domain and help answer the remaining questions raised by the conflicting comments of Michael Petrilli and Secretary Spellings and the limited universe of emails thus far disclosed. Accordingly, disclosure of the information CREW seeks will contribute significantly to the public's understanding of how the Department of Education has operated the Reading First program, how the Department operates with respect to educational publishers, and related issues of literacy policy. As a court found recently under similar circumstances, CREW satisfies the criteria for a public interest fee waiver where, *inter alia*, it is able to explain "with reasonable specificity how [the documents sought] would increase public knowledge of the functions of government." CREW v. Dep't of Health and Human Services, No. 05-1127, 2006 U.S. Dist. LEXIS 95700, at *22 (D.D.C. Sept. 8, 2006). Here, CREW has met and exceeded that standard.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver. Accordingly, we request that you reverse the Department's determination to deny CREW a fee waiver.

Sincerely,

Daniel C. Roth
Counsel
Citizens for Responsibility and
    Ethics in Washington
(202) 408-5565
droth@citizensforethics.org

-7-

# Exhibit H



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

ASSISTANT SECRETARY

**SEP 0 6 2007**

Daniel C. Roth, Esq.
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, DC 20005
(and via e-mail to: droth@citizensforethics.org )

Re: FOIA Appeal—Request No. 07-00517-F (Fee Waiver)

Dear Mr. Roth:

I am writing in response to your June 21, 2007 letter appealing the Department's June 8, 2007
denial of CREW's request for a waiver of fees in connection with its March 28, 2007 request for
Department records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552,
administratively denominated Request No. 07-00517-F. I regret the delay in responding to your
appeal.

Background

Your Request No. 07-00517-F, as modified by e-mail communication dated May 21, 2007,
sought access to "any and all documents and records from January 20, 2001 to the present, in the
offices of: 1) The Secretary; 2) Senior Counselor; 3) Chief of Staff; 4) Deputy Secretary; 5)
Management Improvement Team; 6) Elementary and Secondary Education; 7) Institute of
Education Sciences; 8) Planning Evaluation and Policy Development; 9) Civil Rights; 10)
Innovation and Improvement; 11) Special Education and Rehabilitative Services; 12)
Management; 13) Chief Financial Officer; and 14) Communications and Outreach, in the
following categories:[1]

1. All communications . . . to, from, or referencing any member of the White House staff,
   including, but not limited to, then-Domestic Policy Advisor Margaret Spellings or
   Margaret LaMontagne, that mention or relate to Reading First, Early Reading First,
   "Scientifically Based Reading Research"/"Science Based Reading Research"/"SBRR," or
   DIBELS.

---

[1] Your request also sought access to a fourth category of documents: "To the extent not included in the above
request, . . . all documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks, and/or the Title I
Monitor. Your fee waiver appeal does not concern this aspect of your request because the Department has already
responded to it in full. Appeal, p. 2.

Page 2—Mr. Roth

2. All communications . . . , including calendar references and meeting notes, with the
   executives, employees, consultants, or contractors of the following educational
   publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA
   McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy
   Best), Cambium Learning, Sopris West, and IntelliTools.

3. All communications . . . , including calendar references and meeting notes, that mention
   or relate to contacts with the executives, employees, consultants, or contractors of the
   following educational publishers: Houghton Mifflin (including, but not limited to,
   Maureen DiMarco), SRA McGraw Hill, Pearson Scott Foresman, Voyager (including,
   but not limited to, Randy Best), Cambium Learning, Sopris West, and IntelliTools.

Your request also asked for a waiver of associated processing fees. Your fee waiver request and
a clarifying e-mail communication dated May 11, 2007[2] asserted: (1) that the records sought
concern the operations of the federal government; (2) that their disclosure to CREW would likely
contribute significantly to the public's understanding of the extent of White House involvement
in the administration of the Department's Reading First program (which enhancement CREW
would accomplish by analyzing the responsive records and sharing such analysis with the public
via memoranda, reports, or press releases, and/or by disseminating the responsive records on an
interactive website for public analysis and comment); and (3) that the request was made
primarily for non-commercial purposes.

The Department denied your fee waiver request by letter dated June 8, 2007,[3] on the ground that
you had not met your burden to demonstrate that disclosure of the records responsive to your
request would contribute significantly to public understanding of government operations or
activities. Specifically, the Department's fee waiver denial letter stated, in pertinent part:

> The Department's April 16, 2007 letter to you outlined in detail the legal standard for
> analyzing fee waiver requests and assessing whether a waiver or reduction of fees is
> appropriate; that standard is referred to and incorporated by reference herein.
>
> . . . [T]he Department assumes, for the sake of argument, that the documents responsive
> to items 1 through 3 of your FOIA request meet the first two elements of the public
> interest prong of the fee waiver analysis because they are presumed to relate to the
> Department's administration of the Reading First program. The Department has also
> concluded that, based upon the information contained in your May 11, 2007 e-mail, items
> 1 through 3 of your request meet the third element of the public interest prong of the fee
> waiver analysis. Nevertheless, the Department finds that you have not met your burden

---

[2]  Your May 11, 2007 e-mail communication was characterized by you as "an informal appeal" of the Department's
April 16, 2007 letter initially denying your fee waiver request.

[3]  The June 8, 2007 denial of your fee waiver request followed up on the following additional communications
between the parties: (1) the Department's April 16, 2007 letter initially denying your fee waiver request; (2) a
conference call in which the parties discussed CREW's possible narrowing of the scope of its FOIA request; (3)
your May 11, 2007 e-mail communication, informally appealing the Department's April 16, 2007 fee waiver denial;
and (4) your two e-mail communications dated May 14 and May 21, 2007, concerning modifications to CREW's
FOIA request.

Page 3—Mr. Roth

> with regard to the fourth element of the public interest prong of the fee waiver analysis,
> i.e., the requirement that disclosure of the records in question "contribute significantly" to
> public understanding of government operations or activities.

The Department found it unlikely that the public's understanding of the subject of the request –
the Department's administration of the Reading First program – would be significantly
enhanced, vis-à-vis its level of understanding prior to disclosure, because: (1) many of the
voluminous documents at issue in your fee waiver request could not in any way enhance the
public's understanding of the Reading First program, much less do so significantly, inasmuch as
they concern other program matters; (2) your fee waiver request argued that disclosure of the
documents at issue would clarify the public record with respect to alleged "significant
inconsistencies . . . as to the involvement of Secretary Spellings in the administration of Reading
First prior to her becoming Secretary of Education," but failed to demonstrate a nexus between
such alleged but unspecified "inconsistencies" and the contents of the documents at issue; and
(3) that several sources of information on the Department's contacts with educational publishers
already exist in the public domain, notwithstanding your argument to the contrary. Your appeal
ensued.

Decision on Appeal

*Based upon a careful review of the correspondence between the parties, the nature of your
request and the information it sought, the arguments asserted in your appeal, and applicable legal
precedent, I find that the Department properly denied your request for a fee waiver. The reasons
for my decision are set forth below.*

Legal Standard for Fee Waivers Under FOIA

The FOIA authorizes agencies to recover from requesters certain costs associated with
processing requests for access to government records. 5 U.S.C. § 552(a)(4)(A)(i) and (ii) (2000).
The statute further provides for the waiver of such fees in whole or in part where disclosure of
the information [requested] is in the public interest because it is likely to contribute significantly
to public understanding of the operations or activities of the government and is not primarily in
the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii) (2000); see also 34 C.F.R.
§ 5.64(a). The requester bears the burden of justifying entitlement to a fee waiver. See Casad v.
Department of Health and Human Services, 2003 U.S. Dist. LEXIS 13007 (D.D.C. June 20,
2003). As stated in the Department's April 16, 2007 letter, and discussed below, fee waiver
determinations turn on the consideration of six factors. To demonstrate entitlement to a waiver
of fees, a requester must not only request a waiver, but also address these factors in sufficient
detail to enable an agency to determine whether it can reduce or waive the fees. See Judicial
Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003). The Department may not waive or
reduce fees unless it makes the requisite findings regarding both the public interest and primary
interest. 34 C.F.R § 5.64(a).

Page 4—Mr. Roth

### Public Interest Prong

Once a requester has asserted a right to a waiver of fees, he or she must meet the first prong of the statutory test by supporting the request with evidence that establishes that disclosure of the information sought is in the public interest. 5 U.S.C. § 552(a)(4)(A)(ii) (2000). In order to determine whether the disclosure of the information responsive to a request furthers the narrow public interest cognizable under FOIA – i.e., significant contribution to increased public understanding of the operations of the government – the Department must consider the following four factors in sequence:

1. The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government" (in some instances, certain documents contained in records responsive to a request will meet this requirement while others will not);
2. In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the requested records must be meaningfully informative in relation to the subject matter of the request;
3. The disclosure must contribute to the "understanding of the public at large" as opposed to that of the individual requester or a narrow segment of interested persons; and
4. The disclosure must "contribute significantly" to public understanding of government operations or activities.

See Judicial Watch, Inc. v. Department of Justice, No. 03-5093, 2004 WL 980826 (D.C. Cir. May 7, 2004); see also 34 C.F.R § 5.64(b)(1) and (2). Only if a requester establishes all four elements of the public interest test outlined above, will the Department find that the first prong of the statutory requirement for a fee waiver has been satisfied.

### Primary Interest Prong

Where an agency determines that the public interest requirement for a fee waiver has been met, it may waive or reduce applicable fees only where it also finds that "disclosure of the information is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii) (2000). In order to determine whether this second requirement has been satisfied, the Department must consider the following two factors in sequence:

1. Does the request involve any "commercial interest of the requester" (if not, the requester satisfies the second prong of the statutory fee waiver test); and
2. If so, the agency must balance the requester's commercial interest against the identified public interest in disclosure for the purpose of ascertaining which is the "primary interest"; a fee wavier or reduction may be granted only where the public interest in disclosure is greater in magnitude than the requester's commercial interest.

See also 34 C.F.R Section 5.64(b)(3).

Page 5—Mr. Roth

Discussion

The Department concluded, for the purposes of its initial determination on your fee waiver request – and I do so here – that you had met your burdens as to Factors 1, 2, and 3 of the public interest prong of the two-part test outlined above. Nevertheless, the Department denied your fee waiver request based on a determination that you had failed to meet your burden, under Factor 4 of the public interest prong, to show how disclosure of the requested records will contribute "significantly" to the public's understanding of government operations and activities; in this regard, the initial decision noted that significance is measured by a likely enhancement of the public's understanding of the subject at issue as a result of the disclosure, compared to the public's level of understanding of that same issue prior to disclosure. D.C. Technical Assistance Org. v. Dep't of Housing and Urban Development, 85 F. Supp. 2d 46, 49 (D.D.C. 2000); see also Judicial Watch, Inc. v. U.S. Department of Justice, supra, 185 F. Supp. 2d at 62.[4]

Your appeal argues: (1) that the Department's denial was based in error on CREW's original March 28, 2007 request rather than on the "narrowed" request elucidated in your May 21, 2007 e-mail submission; (2) that the documents responsive to your request would significantly enhance public understanding relative to "serious inconsistencies" in the public record with respect to Secretary Spellings' involvement in Reading First prior to her tenure as Secretary; (3) that the information sought in Items 2 and 3 of the request "will likely contribute significantly to the public's understanding of the extent to which publishers were in contact with the Department and [A]dministration personnel during the Reading First development and grant process"; and (4) to the extent [the records sought] go beyond Reading First, they will shed light on the operations of the federal government, and therefore meet the public interest requirement for a fee waiver. For the following reasons, I do not find that any of these arguments states a basis for granting your appeal.

With respect to your first argument, it does appear that the Department's denial analyzed your fee waiver request in the context of your original March 28, 2007 request rather than the modified request submitted on May 21, 2007. However, your appeal mischaracterizes the modified request as, simply, "narrowed" in scope. Rather, while the modified request is narrower than the original in some respects (e.g., narrowed scope from Department-wide to 14 offices representing approximately one half of the Department's components; elimination of "any other issue related to reading instruction or education" from Item 1; elimination of catchall "including but not limited to" language in Items 2 and 3), it is significantly broader in other respects (e.g., the addition of new name search terms in all three items; the addition of a new program – Early Reading First – in Item 1; the addition of "calendar references and meeting notes" to Item 3). In any event, your argument fails even to address, much less effectively to challenge, the Department's finding that your request is overbroad to qualify for a fee waiver because many of the responsive documents are unrelated to the subject of your request – the Department's administration of the Reading First program. For example, the responsive time frame for all items of the request, commencing January 20, 2001, antedates by a year the creation of the Reading First program; and all items of the request seek access to communications

---

[4]  As CREW failed to meet its burden with respect to the public interest prong of the fee waiver test, it is unnecessary to analyze whether it has satisfied the requirements of the primary interest prong.

Page 6—Mr. Roth

concerning matters other than Reading First. That is true for CREW's March 28, 2007 request
and remains so for the May 21, 2007 modification.

Your first argument concludes:

> The Department cannot and does not argue that the records sought will not enhance the
> public's understanding of the operations of the federal government. This is all that the
> fee waiver provision of the FOIA requires of a requester that [sic] has shown that the
> information sought is not primarily in its commercial interest. See 5 U.S.C. §
> 552(a)(4)(A)(3).

June 21, 2007 Appeal, p. 4. The quoted passage both misstates the law (omitting the word
"significantly" from the cited statutory provision) and speaks to an element of the fee waiver test
not at issue (i.e., Factor 3 of the public interest prong, as to which the Department found CREW
had met its burden).

I also find your second argument – that the documents responsive to your request would
significantly enhance public understanding relative to "serious inconsistencies" in the public
record with respect to Secretary Spellings' involvement in Reading First prior to her tenure as
Secretary – unpersuasive. Initially, I note, notwithstanding the references in your submissions to
"serious inconsistencies" in the plural, the examples cited in fact represent statements regarding a
single inconsistency attributed to a number of different sources. In any event, this inconsistency
has been widely reported, as evidenced by the examples you have provided. However, none of
your submissions demonstrates how the documents responsive to your request – other than Item
1 documents that specifically reflect Ms. Spellings' involvement or lack of involvement with
Reading First before coming to the Department, if such documents exist – would enlighten the
public as to either the alleged inconsistency or the broader subject of the Department's
administration of the Reading First program.

Your third argument – that the information sought in Items 2 and 3 of the request "will likely
contribute significantly to the public's understanding of the extent to which publishers were in
contact with the Department and [A]dministration personnel during the Reading First
development and grant process" – is made for the first time on appeal. In any case, I find this
argument unpersuasive because it makes no connection between Department contacts with
educational publishers while Reading First was being developed and the Department's later
administration of the program. I note as well that this argument does not even suggest a
connection between documents responsive to Items 2 and 3 that are unrelated to Reading First
and the Department's administration of that program, much less show how the disclosure of such
documents would inform the public in a significant way about Reading First.

And finally, I find your argument that, to the extent the records sought go beyond Reading First,
they will shed light on the operations of the federal government, and therefore meet the public
interest requirement for a fee waiver, similarly without merit. Your argument is conclusory and
utterly lacking in specificity sufficient to meet the requester's burden: in essence, you state that
unidentified records will shed light on unspecified activities not of this Department but, rather, of
the "federal government." It follows, logically, that you fail to show how disclosure of such

Page 7—Mr. Roth

materials will increase public understanding of the Department's operations or activities in a significant way.

For all of these reasons, I must deny your appeal.

Right to Judicial Review

This letter constitutes exhaustion of the administrative remedies available to you under FOIA. You have the right to judicial review of this decision, pursuant to 5 U.S.C. § 552(a)(4), in the United States District Court for the district in which you reside, in which you have your principal place of business, in which the records are maintained, or for the District of Columbia.

Sincerely,

Michell Clark

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-2055 (JDB) |
| U.S. DEPARTMENT OF EDUCATION, | ) ) | |
| Defendant. | ) ) | |

JOINT STATUS REPORT

Plaintiff Citizens for Responsibility and Ethics in Washington and Defendant the United States Department of Education, by undersigned counsel, hereby respond to the Court's order of February 27, 2008, directing to them to file, no later than April 2, 2008, a joint status report regarding the status of their negotiations, and state as follows:

1. In this action, Plaintiff alleges that Defendant violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, when it determined that the FOIA request submitted by Plaintiff on May 11, 2007, and assigned Request No. 07-00655-F, did not reasonably describe the records sought. Plaintiff also alleges that Defendant violated the FOIA by denying Plaintiff's request for a fee waiver in connection with Request No. 07-00655-F. Finally, Plaintiff alleges that Defendant has violated the FOIA by engaging in a pattern and practice of failing to properly respond to Plaintiff's FOIA requests and requests for fee waivers.

2. Pursuant to the Court's order of February 27, 2008, proceedings in this action are currently stayed until April 2, 2008, to allow the parties to negotiate the scope of Plaintiff's FOIA request.

3. Pursuant to those negotiations, the parties have agreed that, for the sole purpose of resolving this action, Defendant will search the records of relevant personnel in the Office of the Secretary ("OS"), the Office of the Deputy Secretary ("ODS"), the Early Reading First and Early Childhood Educator Professional Development programs within the Office of Elementary and Secondary Education ("OESE"), and the Fund for Improvement in Education within the Office of Innovation and Improvement ("OII") — which are the departmental offices with staff members responsible for implementation of the No Child Left Behind Act generally and/or the above-specified programs — for records from January 20, 2001, to the present that contain the e-mail suffix "eop.gov" and the following terms:

    a. "Susan Landry" or "Susan Landry Moore" or

    b. "Children's Learning Institute" or "CLI" or

    c. "Center for Improving the Readiness of Children for Learning and Education" or "CIRCLE" or

    d. "Texas State Center for Childhood Development" or "SCECD" or

    e. "Texas Early Education Model" or "TEEM" or

    f. "mCLASS"

4. The parties have agreed that the search described in paragraph 3 represents the full scope of Plaintiff's request.

5. The parties have further agreed that, for the sole purpose of resolving this action, Defendant will grant Plaintiff a public interest fee waiver for the search described in paragraph 3.

6. To permit Defendant to conduct the above-described search, the parties request that the Court stay proceedings in this matter for an additional 60 days, through and including June 2, 2008,

by which date Defendant expects to produce nonexempt records, if any are located. In the interim, Defendant will produce nonexempt records, if any, on a rolling basis if the processing of those records is complete.

7. Thereafter, the parties will confer to determine whether there remain issues for the Court's resolution. Accordingly, the parties propose filing, no later than June 2, 2008, a further Joint Status Report advising the Court on the status of the above-described search, and, if it is complete, indicating whether Plaintiff will voluntarily dismiss this action or proposing a revised briefing schedule if unresolved issues remain.

For the foregoing reasons, the parties respectfully request that the Court stay proceedings in this case for an additional 60 days, through and including June 2, 2008, and direct the parties to file a further Joint Status Report no later than June 2, 2008. A proposed order is attached.

3

Date: April 2, 2008

Respectfully submitted,

ANNE L. WEISMANN
D.C. Bar. No. 298190

MELANIE SLOAN
D.C. Bar No. 434584
Citizens for Responsibility
    and Ethics in Washington
1400 Eye St. NW, Suite 450
Washington, DC 20005
Telephone: (202) 408-5565
Facsimile: (202) 588-5020

*/s/ Scott Allan Hodes*
SCOTT ALLAN HODES
D.C. Bar. No. 430375
P.O. Box 42002
Washington, DC 20015
Telephone: (301) 404-0502
Facsimile: (413) 641-2833
E-mail: infoprivacylaw@yahoo.com

*Counsel for Citizens for Responsibility
and Ethics in Washington*

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch

*/s/ Eric Beckenhauer*
ERIC B. BECKENHAUER
Cal. Bar No. 237526
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Telephone: (202) 514-3338
Facsimile: (202) 616-8470
E-mail: eric.beckenhauer@usdoj.gov

*Counsel for the U.S. Department of
Education*

4

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April 2008, I caused the foregoing document to be

served on Plaintiff's counsel of record electronically by means of the Court's CM/ECF system.

/s/ Eric Beckenhauer
ERIC B. BECKENHAUER

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY<br>AND ETHICS IN WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 07-2055 (JDB)

[PROPOSED] ORDER

For the reasons stated in the parties' Joint Status Report, it is hereby

**ORDERED** that this action is **STAYED** through and including June 2, 2008; and it is

**FURTHER ORDERED** that, no later than June 2, 2008, the parties shall file a Joint Status

Report advising the Court on the status of the agreed-upon search and whether issues remain for the

Court's resolution.

**SO ORDERED.**

Dated: _____        _____

JOHN D. BATES
United States District Judge

# Exhibit J



**U.S. Department of Justice**

Civil Division
Federal Programs Branch
20 Massachusetts Avenue N.W. Rm 7214
Washington, DC 20530

Jacqueline Coleman Snead
Trial Attorney

. Tel: (202) 514-3418
.Fax: (202) 616-8470

April 15, 2008

VIA FACSIMILE AND OVERNIGHT COURIER
William C. Holmes, Esq.
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, DC 20005

     Re:   *CREW v. Department of Education*, Case No. 07-963

Dear Cliff:

     This letter follows up on my March 25, 2008 voicemail and your subsequent response on April 4, 2008 regarding how to proceed in the above-captioned case. Following the Court's decision and order of March 10, 2008, the only remaining claim in this case is Count V of the Amended Complaint alleging that the Department of Education ("Department") violated its regulations and the Freedom of Information Act ("FOIA") by not granting CREW's request to waive the fees associated with processing its FOIA request for:

     (1) All communications of [fourteen specified Department][1] offices to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings or Margaret LaMontagne, that mention or relate to Reading First, Early Reading First, "Scientifically Based Reading Research"/"Science Based Reading Research"/"SBRR" or DIBELS.

---

    [1]    The identified offices are: "1) The Secretary, 2) Senior Counselor, 3) Chief of Staff, 4) Deputy Secretary, 5) Management Improvement Team, 6) Elementary and Secondary Education, 7) Institute of Education Sciences, 8) Planning Evaluation and Policy Development, 9) Civil Rights, 10) Innovation and Improvement, 11) Special Education and Rehabilitative Services, 12) Management, 13) Chief Financial Officer and 14) Communications and Outreach." Email from Dan Roth to ED FOIA Manager (May 21, 2007).

**U.S. Department of Justice**

Civil Division
Federal Programs Branch
20 Massachusetts Avenue N.W. Rm 7214
Washington, DC 20530

---

Jacqueline Coleman Snead
Trial Attorney

Tel: (202) 514-3418
Fax: (202) 616-8470

(2)  All communications of [fourteen specified Department] offices, including calendar references and meeting notes, with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and Intellitools.

(3)  All communications of [fourteen specified Department] offices, including calendar references and meeting notes, that mention or relate to contacts with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and Intellitools.

Email from Dan Roth to ED FOIA Manager (May 21, 2007). In my March 24, 2008 voicemail, I inquired as to whether CREW was interested in discussing ways to narrow the above requests in an effort to resolve Claim V without court involvement or in discussing a proposed briefing schedule for motions for summary judgment on the fee waiver denial.

On April 4, 2008, you contacted me and indicated that CREW was not interested in narrowing its request even though that course of action apparently was successful in *CREW v. Department of Education*, Case No. 07-2055. Indeed, only two days before your call, counsel for the parties in that action filed a joint stipulation to stay the proceedings to allow the Department sufficient time to conduct a search the parties negotiated. *See* Joint Status Report filed in *CREW v. Department of Education*, Case No. 07-2055 (Apr. 2, 2008).

As you probably know, the FOIA request in that action also seeks communications with the White House concerning a Department program. Since the Department is already conducting a search for White House communications pursuant to the Joint Status Report filed in *CREW v. Department of Education*, Case No. 07-2055 (Apr. 2, 2008), the Department, without waiving any of its defenses in *CREW v. Department of Education*, Case No. 07-963, has decided to include the terms in Request (1), *supra*, in the search that already is underway. Although you have identified fourteen Department offices in Request (1), the Department will limit its search to those offices reasonably likely to have White House correspondence related to the Reading First and Early Reading First programs. The

- 2 -

**U.S. Department of Justice**

Civil Division
Federal Programs Branch
20 Massachusetts Avenue N.W. Rm 7214
Washington, DC  20530

---

Jacqueline Coleman Snead
Trial Attorney

Tel:  (202) 514-3418
Fax: (202) 616-8470

Department expects to complete its search in early June and thereafter will produce any non-exempt, responsive information yielded by that search.[2]

    If Plaintiff is still unwilling to discuss narrowing the scope of requests (2) and (3), we are prepared to proceed with briefing motions for summary judgment on the fee waiver denial as to those requests since they will not be covered by the Department's search.  The weeks of May 19 and June 2 are not good for me.  Please propose some dates that would work for you.  I suggest we try to file a joint stipulation or briefing schedule with the Court early next week.  I look forward to hearing from you soon.

                    Sincerely,

                    JACQUELINE COLEMAN SNEAD
                        Trial Attorney
                    Federal Programs Branch
                        Civil Division

---

    [2]    In your email of April 4, 2008, you requested that the Department provide CREW with two hours of search time and 100 pages of copying to which CREW is "statutorily entitled."  Although the Department does not believe that CREW is so entitled because the Department did not determine that CREW was an "all others" requester under FOIA, the above-described search likely will more than satisfy that requirement were it applicable.

- 3 -

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND ETHICS)
IN WASHINGTON,                        )
                                      )
     Plaintiff,             )
                                      )
     v.                     )     Case No. 1:07CV00963-RMU
                                      )
UNITED STATES DEPARTMENT OF           )
EDUCATION,                            )
                                      )
     Defendant.             )
_____)

## DEFENDANT'S COUNTERSTATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 7.1(h), Defendant, United States Department of Education, by and through undersigned counsel, hereby submits this Counterstatement of Material Facts and responds to Plaintiff's Statement of Material Facts Not In Genuine Dispute.[1]

1. Defendant disputes the statement of facts in Paragraph 1 except that Plaintiff Citizens for Responsibility and Ethics in Washington ("Plaintiff") submitted a Freedom of Information Act ("FOIA") request to the Department dated March 28, 2007. For a true and accurate statement of the contents of that request, Defendant respectfully refers the Court to Exhibit A of the Declaration of Maria-Teresa Cueva ("Cueva Declaration" or "Cueva Decl."), attached hereto.

2. Defendant does not dispute the statement of facts in Paragraph 2 but respectfully refers the Court to Exhibit A of the Cueva Declaration for a complete and accurate statement of Plaintiff's fee waiver request.

3. Defendant disputes the statement of facts in Paragraph 3 and further disputes that the

---

[1]  Numbered paragraphs 1 - 11 correspond to the paragraphs in Plaintiff's Statement of Material Facts Not In Genuine Dispute.

statement is material to the issue before the Court.

4.  Defendant does not dispute the statement of facts in Paragraph 4.

5.  Defendant disputes the statement of facts in Paragraph 5.  Defendant respectfully refers the Court to Exhibit E of the Cueva Declaration for a true and accurate statement of the contents of Plaintiff's email dated May 21, 2007.

6.  Defendant does not dispute the statement of facts in Paragraph 6.

7.  Defendant disputes the statement of facts in Paragraph 7 except that the Department denied Plaintiff's request for a fee waiver on June 8, 2007.  Defendant respectfully refers the Court to Exhibit F of the Cueva Declaration for a true and accurate statement of the Department's denial.

8.  Defendant does not dispute the statement of facts in Paragraph 8.

9.  Defendant disputes the statement of facts in Paragraph 9.  On September 6, 2007, the Department upheld the June 8, 2007 denial of Plaintiff's fee waiver request, which Plaintiff appealed June 21, 2007.

10.  Defendant does not dispute the statement of facts in Paragraph 10.

11.  Defendant disputes the statement of facts in Paragraph 11 except that the phrase "not believe" appears in the April 15, 2008 letter from defense counsel to Plaintiff's counsel. Defendant respectfully refers the Court to Exhibit J of the Cueva Declaration for a complete and accurate statement of the contents of that letter.

## DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS

12. Plaintiff to date has not reasonably described the records sought in Items 2 and 3 of Plaintiff's FOIA request such that even if the fee wavier issue is resolved, the Department cannot begin to search for records responsive to those items. *See* Cueva Decl. ¶ 20.

13. Defendant has undertaken to search for records responsive to Item 1 of Plaintiff's request as part of a search that already is underway for White House communications related to a different aspect of the Reading First and Early Reading First programs pursuant to a joint stipulation of the same parties in *CREW v. Department of Education*, Case No. 07-2055. *See* Cueva Decl. Exhs. I & J.

14. Plaintiff refused Defendant's offer, on or about March 28, 2008, to discuss ways to narrow Plaintiff's FOIA request. *See* Cueva Decl. ¶ 21.

15. The Department has not begun processing Items 2 and 3 of Plaintiff's FOIA request. *See* Cueva Decl. ¶ 23.

Dated: May 8, 2008                    Respectfully submitted,

OF COUNSEL:                           GREGORY G. KATSAS
MARCELLA GOODRIDGE                    Acting Assistant Attorney General,
Attorney                              Civil Division
U.S. Department of Education

                                      JEFFREY A. TAYLOR
                                      United States Attorney

                                      ELIZABETH J. SHAPIRO
                                      Assistant Branch Director,
                                      Federal Programs Branch

                                        s/ Jacqueline Coleman Snead
                                      _____

3

JACQUELINE COLEMAN SNEAD
(D.C. Bar No. 459548)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm 7214
Washington, DC 20530
Tel: (202) 514-3418
Fax: (202) 616-8470
jacqueline.snead@usdoj.gov

**Counsel for the Department of Education**

4

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2008, a true and correct copy of the foregoing Defendant's

Counterstatement of Material Facts was electronically filed through the U.S. District Court for

the District of Columbia Electronic Document Filing System (ECF) and that the document is

available for viewing on that system.

                                           _____ s/ Jacqueline Coleman Snead _____
                                           JACQUELINE COLEMAN SNEAD