**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CITIZENS FOR RESPONSIBILITY | : | | |
| AND ETHICS IN WASHINGTON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0963 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 25, 27 |
| | : | | |
| UNITED STATES DEPARTMENT OF | : | | |
| EDUCATION, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This matter is before the court on the parties' cross-motions for summary judgment. The

plaintiff, Citizens for Responsibility & Ethics in Washington ("CREW"), moves for summary

judgment contending that the defendant, the U.S. Department of Education ("Education"),

improperly denied its request for a fee waiver under the Freedom of Information Act ("FOIA").

The plaintiff requests information concerning the extent of the White House's and commercial

publishers' involvement in the defendant's administration of the Reading First program, a

scientifically based reading research initiative of the No Child Left Behind Act.  Claiming that

there is public uncertainty about Reading First, the plaintiff argues that it is entitled to a waiver

of all fees associated with the processing of its FOIA request.  In response, the defendant has

filed a cross-motion for summary judgment, declaring that one of the plaintiff's document

requests is moot and that the remaining two requests fail to demonstrate a significant

contribution to the public's understanding of government operations or activities under FOIA.

Because one of the plaintiff's requests is moot, and the remaining requests satisfy FOIA fee waiver standards, the court grants in part and denies in part the plaintiff's motion for summary judgment and grants in part and denies in part the defendant's cross-motion for summary judgment.

## II. BACKGROUND

### A. Factual History

The plaintiff is a non-profit organization "committed to protecting the rights of citizens to be informed about the activities of government officials[,] . . . ensuring the integrity of government officials . . . and empowering citizens to have an influential voice in . . . the governmental decision-making process." Am. Compl. ¶ 7.  In pursuit of this mission, on March 28, 2007, the plaintiff requested from the defendant, under FOIA, documents and records dating from January 20, 2001 to the present in several categories, which the plaintiff narrowed in a May 21, 2007 e-mail[1] as follows:

> 1. All communications of [fourteen enumerated Department of Education] offices to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings or Margaret LaMontagne, that mention or relate to Reading First, Early Reading First, "Scientifically Based Reading Research"/"Science Based Reading Research"/"SBRR" or DIBELS.

> 2. All communications of the above-listed offices, including calendar references and meeting notes, with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and Intellitools.

---

[1]  The plaintiff's modified request and subsequent appeals did not include its March 28, 2007 request for a fourth category of documents – "all documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks, and/or the *Title I Monitor*" – because the defendant complied with this request on April 16, 2007.  Am. Compl., Ex. B.

3. All communications of the above-listed offices, including calendar references and meeting notes, that mention or relate to contacts with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited, to Randy Best), Cambium Learning, Sopris West, and Intellitools.

*Id.*, Exs. A at 1, E.  The plaintiff also requested a waiver of fees for the processing of its request, explaining that "the [requested] disclosures . . . are likely to contribute to the public's understanding of the extent of White House involvement in the administration of the Reading First program, an issue on which the public record is unclear."  *Id.*, Ex. A at 3, Attach. 1 at 1; *Id.*, Ex. G, Attachs. G-J (detailing accusations in the media that White House officials improperly influenced the defendant's administration of Reading First).  Finally, the plaintiff stated that its request was primarily for non-commercial purposes and explained its plan to "analyze the information responsive to [its] request, . . . share its analysis with the public, either through memoranda, reports or press releases . . . [and] disseminate any documents it acquires from this request to the public."  Am. Compl., Ex. A at 3.

In an April 16, 2007 letter, the defendant denied the plaintiff's fee waiver request, explaining that it did not demonstrate a significant contribution to the public's understanding of government operations or activities.[2]  *Id.*, Ex. B at 4.  Furthermore, the defendant determined

---

[2]   Both parties refer to this element in their fee waiver analyses as the fourth factor of the Department of Justice's ("DOJ") fee waiver regulation at 28 C.F.R. § 16.11(k)(2)(iv), which the DOJ has promulgated under FOIA.  *See Judicial Watch v. Dep't of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004).  This factor is nearly identical to the second factor of the defendant's fee waiver regulation, *see* 34 C.F.R. § 5.64(b)(2), as well as to the FOIA public-interest prong of the fee waiver provision, *see* 5 U.SC. § 552(a)(4)(A)(iii).  Accordingly, the court does not deem improper the parties' application of the DOJ regulation.  *Jarvik v. CIA*, 495 F. Supp. 2d 67, 71 n.2 (D.D.C. 2007) (quoting *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 613 (D.C. Cir. 1997) (observing that "the meaning of FOIA should be the same no matter which agency is asked to produce records")).

that the "information regarding [the extent of White House involvement in the administration of Reading First] already exists in the public domain." *Id.*

On May 11, 2007, the plaintiff informally appealed the defendant's April 16 denial of its fee waiver request to the defendant. *Id.*, Ex. D.  The plaintiff argued that the first request would clarify the significant inconsistencies between Secretary Spellings' description of her involvement in Reading First and others' observations of her involvement. *Id.*  With respect to the second and third requests, the plaintiff contended that the large amount of congressional, media and public attention paid to Reading First, as well as the public's limited knowledge about the defendant's contacts with educational publishers, indicated that the disclosures would significantly contribute to the public's understanding.  *Id.*, Ex. G, Attachs. G-J (explaining that although federal rules prohibit the defendant from endorsing any curriculum for Reading First, public records have suggested that the defendant's officers and contractors, on whom the defendant relied to advise states on Reading First, "steered" many states toward specific reading programs and testing instruments to which they had commercial ties).

On June 8, 2007, the defendant denied the plaintiff's May 11, 2007 appeal, stating that the plaintiff still had not demonstrated that the requested disclosure would significantly contribute to the public's understanding of government operations or activities.  Am. Compl., Ex. F at 2.  The defendant maintained that many of the documents responsive to the plaintiff's requests "could in no way enhance public understanding of the defendant's administration of [Reading First]" because the language in the plaintiff's requests and appeal was too broad.  *Id.* (noting that the request sought "voluminous records concerning a wide range of [Education] contacts and/or communications with the White House [and] the publishers" and documents concerning subjects beyond the scope of Reading First).  Furthermore, the defendant asserted

that the plaintiff failed to specify the "inconsistencies" it mentioned in its May 11 appeal and to explain how the requested disclosures would likely inform the public's understanding. *Id.* at 3. The defendant also provided three website links to challenge the plaintiff's contention that little was known about the defendant's contacts with the publishers. *Id.*

In response to the defendant's denial of the plaintiff's May 11 appeal, the plaintiff filed a second appeal with the defendant on June 21, 2007. *Id.*, Ex. G. Compliance with the first request, the plaintiff argued, would "go beyond the 'he-said, she-said' that makes up the current public record on [White House involvement in the operation of Reading First] by illuminating the actual level of . . . Spellings' involvement." *Id.* at 6. And the plaintiff argued that the records sought in the second and third requests would contribute significantly to the public's understanding of the extent to which publishers were in contact with the defendant and administration personnel during the Reading First development and grant process. *Id.* The plaintiff also argued that its requests would "amplify" information about Reading First's development and operation already in the public domain and "help answer the remaining questions raised by" previously released sources concerning Spellings' involvement in Reading First. *Id.* at 7. Finally, the plaintiff critiqued the defendant's reliance on the three websites because the first link was no longer available, and the second and third links focused only on the financial interests of Reading First Technical Assistance Center employees and their ties to publishers. *Id* at 6.

The defendant issued its final response to the plaintiff on September 6, 2007, again denying the plaintiff's fee waiver request for failure to demonstrate the requested disclosures' significant contribution to the public's understanding of government operations or activities. *Id.*, Ex. I at 3, 6-7. The defendant concluded that the plaintiff's request was overbroad because many

of the search terms in the requested items did not relate to the defendant's administration of Reading First and the responsive time frame for all requested items – beginning January 20, 2001 – preceded the creation of Reading First by a year. *Id.* at 5-6. In addition, according to the defendant, the plaintiff's contention that any requested documents beyond the scope of Reading First would shed light on the operations of the federal government was not specific enough to demonstrate a public interest within the meaning of the FOIA fee waiver provision. *Id.* at 6. Finally, the defendant informed the plaintiff that it had exhausted its administrative remedies and had a right to judicial review of the defendant's denial of its fee waiver request. *Id.* at 7.

### B.  Procedural History

The plaintiff filed this suit on May 23, 2007, under the Federal Records Act ("FRA"), 44 U.S.C. §§ 2901 *et seq.*, §§ 3101 *et seq.*, §§ 3301 *et seq.*, and FOIA, 5 U.S.C. § 552. *See* Compl. The plaintiff alleged five claims, the first four of which this court dismissed because the plaintiff lacked standing. *Id.*; Mem. Op. (Mar. 10, 2008). The only remaining claim is that the defendant's denial of the plaintiff's fee waiver request violated FOIA. Pl.'s Mot. for Summ. J. at 2. The plaintiff moved for summary judgment on this claim on April 24, 2008, maintaining that there is no genuine issue of material fact as to its entitlement to a fee waiver. *Id.* at 2, 14. In turn, the defendant filed a cross-motion for summary judgment on May 8, 2008, arguing that there is no genuine issue of material fact as to the validity of the defendant's denial of the plaintiff's fee waiver request. *See* Def.'s Cross-Mot. for Summ. J. The court now turns to the parties' cross-motions for summary judgment.

### III.  ANALYSIS

### A.  Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir.

1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. Legal Standard for Review of an Agency Denial of a FOIA Fee Waiver Request

Congress requires federal agencies under FOIA to furnish requested documents free of charge if disclosure of the requested information is (1) "in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). This is in keeping with the statute's purpose, which is "to remove the roadblocks and technicalities which have been used by . . . agencies to deny waivers." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. S16496 (Oct. 15, 1986) (statement of Sen. Leahy)).

A court must review *de novo* requests for FOIA fee waivers pursuant to § 552, limiting its judgment to the administrative record before the federal agency at the time of its decision. 5 U.S.C. § 552(a)(4)(A)(vii); *see also Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 648 (D.C. Cir. 1987) (holding that a requester could not, at the district court level, cure its failure to demonstrate a public interest before the agency). The requesting party alone bears the burden of showing, based on the administrative record, that its request satisfies the public interest prong. *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988). In so doing, the requester must "clear away any inferences that could cast doubt on his eligibility" for a fee waiver by describing with "reasonable specificity" how the requested disclosure will contribute significantly to the public's understanding. *Jarvik v. CIA*, 495 F. Supp. 2d 67, 71-72 (D.D.C. 2007) (internal citations

omitted) (explaining that a requester "must pinpoint the type of government activity he is investigating").

It is "difficult to discern a basis for the [requester's] assertions of a public interest [in cases in which] [a]ny benefit to the general public that might flow from furnishing the requested information is less than obvious." *Griffin*, 811 F.2d at 647. Hence, when a requester asserts a public interest, yet does so without reasonable specificity, an "agency may infer a lack of substantial public interest" and deny the requester's fee waiver request. *Larson*, 843 F.2d at 1483 (quoting *McClellan*, 835 F.2d at 1285); *see also Jarvik*, 495 F. Supp. 2d at 72 (stating that "'a modest showing' of a public interest will not suffice'" (quoting *McClellan*, 835 F.2d at 1287)).

### C.  The Court Grants in Part and Denies in Part the Plaintiff's Motion for Summary Judgment and Grants in Part and Denies in Part the Defendant's Cross-Motion for Summary Judgment

### 1.  The Plaintiff's Fee Waiver Request for the First Category of Documents is Moot

Before reviewing the merits of the defendant's denial of the plaintiff's fee waiver request, the court must address the defendant's argument that plaintiff's fee waiver request for the first set of documents is moot. In this request, the plaintiff seeks a fee waiver for the production of communications between the defendant's offices and the White House staff that mention or relate to Reading First, Early Reading First and other initiatives of the defendant. *See* Am. Compl., Ex. E. The defendant, however, argues that its decision to include the search for these

communications in a FOIA search in another case between the same parties[3] moots any dispute

as to the defendant's denial of the plaintiff's fee waiver request in this case.  Def.'s Cross-Mot.

for Summ. J. at 7 & n.2; *see also id.* at Attach. ("Cueva Decl."), Exs. I, J at 2.

The plaintiff, on the other hand, focuses on the fact that the defendant never granted the

plaintiff a fee waiver for the first set of documents, despite agreeing to include such documents

in its search in Civil Action No. 07-2055.  Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J.

and Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Reply") at 2.  Moreover, the plaintiff

declares that the defendant's grant of a fee waiver to the plaintiff in that case underscores the

defendant's "arbitrary approach" in failing to grant the plaintiff's fee waiver request in this case.

*Id.*

The court determines that the plaintiff's arguments are unfounded, because the plaintiff

has "'obtained everything that [it] could recover . . . by a judgment of this court in [its] favor.'"

*Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (quoting *Better Gov't Ass'n v. Dep't of State*, 780

F.2d 86, 91 (D.C. Cir. 1981)); *see also* Cueva Decl., Ex., J; Def.'s Reply at 2 (stating that the

plaintiff "knows [that the defendant] is already processing [the request], and [plans to produce]

any responsive documents yielded by that search . . . at no cost to Plaintiff").  "'[A]n agency's

decision to release documents to a FOIA requester without seeking payment from him moots the

requester's arguments that a denial of a fee waiver was substantively incorrect.'"  *Schoenman v.*

---

[3]     Civil Action No. 07-2055 is a FOIA action currently pending before another judge in this district. Pursuant to a joint status report filed by the parties on April 2, 2008 in Civil Action No. 07-2055, the defendant agreed to search the records of relevant personnel for documents from January 21, 2001, to the present, in several of its offices, including the offices of which Early Reading First is a part.  Jt. Status Report, *Citizens for Responsibility & Ethics in Wash. v. Dep't of Educ.*, No. 07-2055 (D.D.C. Apr. 2, 2008); *see also* Def.'s Cross-Mot. for Summ. J., Attach., Ex. I ¶ 3.  The report explained that these offices employed staff members responsible for the implementation of the No Child Left Behind Act and/or the Early Reading First and Early Childhood Educator Professional Development programs.  *Id.*  The defendant also agreed that it would grant the plaintiff a public interest fee waiver for the stipulated search.  *Id.* ¶ 5.

*FBI*, 2008 WL 4053457, at *11 (D.D.C. Sept. 1, 2008) (quoting *Hall*, 437 F.3d at 99).  By

granting the plaintiff a fee waiver request for the search stipulated in the joint status report in

Civil Action No. 07-2055, and then including in that search the request for the documents at

issue here, the defendant effectively granted the plaintiff a fee waiver for the request.  *See* Def.'s

Cross-Mot. for Summ. J. at 7; Cueva Decl., Ex. J.  Accordingly, the court holds that the

plaintiff's fee waiver request for the first set of documents is moot and grants the defendant's

motion for summary judgment with respect to that request.

### 2.   The Plaintiff Has Met its Burden with Respect to the Fee Waiver Requests For the Second and Third Categories of Documents

The court now turns to whether the plaintiff, under the two-pronged test for FOIA fee

waiver requests, has met its burden with respect to the second and third document requests.  The

plaintiff asserts that these requests were not primarily for its commercial interest.  Am. Compl.,

Exs. B, F, I at 5 n.4.  By failing to address this point, the defendant concedes it.  *See Twelve John*

*Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (noting that arguments not

addressed are treated as conceded); *Physicians' Comm.*, 480 F. Supp. 2d at 122 (determining that

"[t]he commercial interest prong will not be discussed here because [the agency] elected not to

pursue any argument under this prong of the analysis").  Because the commercial interest prong

of the fee waiver analysis is not at issue, the court turns to the public interest prong, which

requires the plaintiff to demonstrate that the disclosure of the requested information "is likely to

contribute significantly to public understanding of [government] operations or activities."  5

U.S.C. § 552(a)(4)(A)(iii).

Driven by media accounts that accuse the defendant of operating the Reading First

program unethically, the plaintiff seeks to inform the public's understanding of the nature of the

defendant's and publishers' roles in administering the program.  Pl.'s Mot. for Summ. J. at 7-9;

*see also* Am. Compl., Exs. E, G at 6.  The disclosures, the plaintiff states, will heighten the "public's understanding of how [the defendant] has discharged its statutory duties."  Pl.'s Mot. for Summ. J. at 9.  Consequently, the plaintiff maintains that its aim to examine and inform the public of the defendant's possible mismanagement of Reading First represents a sufficiently significant contribution to the public's understanding of government operations or activities.  *See* Am. Compl., Exs. A at 3, D, G at 6-7.

The defendant, however, declares that none of the plaintiff's submissions has described with "reasonable specificity" the significant contribution the requested records would make to the public's understanding of government operations or activities.  Def.'s Cross-Mot. for Summ. J. at 9-14.  The defendant deems the plaintiff's stated public interest too broad to "identify a subject about which the public's understanding could be enhanced" and too conclusory to explain a significant public contribution.  *Id.* at 2, 9.  More specifically, the defendant asserts that the request for all responsive documents after January 20, 2001, including subjects beyond the scope of the Reading First program, is overbroad.  *Id.* at 10.  Furthermore, the defendant argues that the plaintiff fails to "adequately explain the connection between the records requested and a significant contribution to the public's understanding."  Def.'s Cross-Mot. for Summ. J. at 12, 15 (arguing that the plaintiff cites to websites describing alleged associations between Reading First and educational publishers for the first time in its motion); Def.'s Reply at 6.  For the reasons explained below, the court rejects the defendant's arguments.

First, the defendant misinterprets the public interest prong of the FOIA fee waiver test as requiring the requester to describe with reasonable specificity the underlying substantive terms of its request instead of, or in addition to, the significant contribution that the request would have on the public understanding of government operations or activities.  The key inquiry with respect to

a FOIA fee waiver request is whether "dissemination of the requested information is likely to contribute significantly to citizens' understanding of the workings of their government." *Judicial Watch, Inc. v. Gen. Servs. Admin.*, 2000 WL 35538030, at \*11 (D.D.C. Sept. 25, 2000); *see also McClellan*, 835 F.2d at 1285.  Thus, a requester satisfies its burden by describing with reasonable specificity the link between the request and the enhancement of public awareness and understanding of governmental activities.  *Id.*  Here, the plaintiff has satisfied its burden by specifying, through reference to the administrative record alone, how disclosure of the requested documents will significantly contribute to the public's understanding of government operations. *See* Am. Compl., Ex. G at 6 (explaining that "[t]he records CREW seeks in items 2 and 3 will likely contribute significantly to the public's understanding of the extent to which publishers were in contact with [the defendant] . . . during the Reading First development and grant process"); *Id.*, Ex. A at 3 (stating that the plaintiff intends to "analyze the information responsive to [its] request, . . . share its analysis with the public, either through memoranda, reports or press releases . . . [and] disseminate any documents it acquires from this request to the public"). Unlike the plaintiff in *Jarvik*, who failed to meet his burden by asserting generally that the requested CIA reports would "help the public better evaluate the CIA," 495 F. Supp. 2d at 73, the plaintiff here has specifically described an identifiable subject of the requested disclosures – the role of commercial publishers in the defendant's operation of Reading First – that it intends to research, analyze and disseminate to the public, *see* Am. Compl., Exs. A at 3, D, G at 6.

In addition, the plaintiff's aim to elucidate the ties between the defendant and commercial publishers through its analysis and dissemination of the requested documents is particularly significant given Congress's intention to encourage "open and accountable government" under the FOIA fee waiver provision.  *Gen. Servs. Admin.*, 2000 WL 35538030, at \*11; *see also*

*Physicians' Comm.*, 480 F. Supp. 2d at 124 (explaining that the plaintiff's "description of a specific problem . . . and its impact on [the defendant's interagency group's] ability to fulfill a specific statutory mandate . . . satisfies the 'reasonably specific' standard, which is 'all that FOIA requires'" (quoting *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1313 (D.C. Cir. 2003)).  The documents that the plaintiff plans to make publicly available, coupled with the plaintiff's analysis thereof, will allow the public to make a more informed assessment of the "ethical propriety" and wisdom of the actions of the defendant's officials who administer the Reading First program.  *Cf. Gen. Servs. Admin.*, 2000 WL 35538030, at *11 (determining that "[w]idespread dissemination will most likely illuminate in greater detail the relationships and interactions between high elected officials, their campaign staff and their donors, as they may relate to a decision to spend the taxpayers' money").  Thus, as the plaintiff correctly states, the disclosures likely will result in the expansion of, and therefore a significant contribution to, the public's understanding of the potential conflicts of interest in the defendant's operation of Reading First.  In light of Congress's intent that federal agencies "liberally construe[] [FOIA] in favor of waivers for noncommercial requesters," the court determines that the plaintiff has squarely satisfied its burden with respect to the public interest prong.  *McClellan*, 835 F.2d at 1284 (quoting 132 Cong. Rec. S14298 (Sept. 30, 1986) (statement of Sen. Leahy)).

Lastly, contrary to the defendant's contention, the availability of information regarding the connection between the defendant and commercial publishers in previously released media sources[4] does not obviate the need for further dissemination by the plaintiff or undermine the plaintiff's satisfaction of the public interest prong.  *See Gen. Servs. Admin.*, 2000 WL 35538030, at *10 (reasoning that "the fact that . . . some of the requested information has been released to

---

[4]    *See* Am. Compl., Ex. G, Attachs. G-J, L (articles from *U.S.A. Today*, *N.Y. Times*, *Education Week*, and *U.S. Fed News* discussing conflicts-of-interest in the defendant's administration of the Reading First program).

sources other than requestor, does not necessarily mean that it is readily available to the public"). To the contrary, the plaintiff's "capability to [analyze and] distribute the information it receives" through memoranda, press releases, reports and its website, *see* Am. Compl., Exs. A at 3, D; Pl.'s Reply at 6, will further enhance the public's access to and understanding of commercial publishers' involvement in the defendant's administration of Reading First, which is all that the fee waiver provision requires, *see, e.g.*, *Judicial Watch*, 326 F.3d at 1315.

The records may also serve to clarify the scope of previously disclosed relations between the defendant and publishers. *See Forest Guardians v. U.S. Dep't of the Interior*, 416 F.3d 1173, 1181 (10th Cir. 2005) (determining that "[k]nowing that [an agency or agency program] permits the use of [a practice] is not the same as knowing the [details of that practice and the identities of specific persons involved]"). Even if some of the information concerning the defendant's operation of the Reading First program is already publicly available, the defendant's disclosure of the requested documents may supplement this information and thereby enhance the public's understanding of the issue. *See Gen. Servs. Admin.*, 2000 WL 35538030, at *10 (citing *Project on Military Procurement v. U.S. Dep't of the Navy*, 710 F. Supp. 362, 366 (D.D.C. 1989)); *see also Ctr. for Medicare Advocacy, Inc. v. U.S. Dep't of Health & Human Servs.*, 2008 WL 4294283, at *15 (D.D.C. Sept. 17, 2008) (noting that an agency must evaluate a fee waiver request "based on the potential contribution the requested information would have on the public's understanding, and not on the fact that some of the documents were publicly available"). Accordingly, the court holds that the plaintiff has met its burden under the public interest prong of the fee waiver test with respect to the second and third categories of requested documents and concludes that the defendant improperly denied the plaintiff's fee waiver requests for these documents.

**IV.  CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for summary judgment and grants in part and denies in part the defendant's cross-motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of January, 2009.


RICARDO M. URBINA
United States District Judge